ROBBINS GELLER RUDMAN
    & DOWD LLP
PATRICK J. COUGHLIN (111070)
CARMEN A. MEDICI (248417)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/685-6920 (fax)
patc@rgrdlaw.com
cmedici@rgrdlaw.com
    – and –
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

Attorneys for Plaintiff Lukas Pick

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| In re LENOVO ADWARE LITIGATION | ) ) ) | Case No. 5:15-md-02624-RMW |
| This Document Relates To: | ) ) ) | CLASS ACTION |
| ALL ACTIONS. | ) ) ) ) | PLAINTIFFS' JOINT NOTICE OF MOTION AND MOTION FOR THE APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL AND MEMORANDUM OF LAW IN SUPPORT THEREOF |

Date:          July 17, 2015
Time:          9:00 a.m.
Courtroom:  6 - 4th Floor
Judge:         Hon. Ronald M. Whyte

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................1

II.     BRIEF FACTUAL AND PROCEDURAL BACKGROUND ...........................3

III.    STANDARD FOR APPOINTING INTERIM CLASS COUNSEL ..................4

        A.      Proposed Interim Co-Lead Class Counsel Have Diligently Identified and
                Investigated the Claims and Potential Defenses in the Centralized Actions,
                and Otherwise Advanced the Interests of the Putative Classes .............................5

                1.      The Firms' Pre-Suit and Ongoing Investigations .........................................5

                2.      The Firms Have Demonstrated Their Ability to Advance the
                        Interests of the Putative Class in the Centralized Actions ...........................7

        B.      Proposed Interim Co-Lead Class Counsel Have Extensive Applicable
                Experience in Leading the Prosecution of Consumer Class Actions......................9

                1.      Robbins Geller's Knowledge of Applicable Law and Experience
                        Handling Complex Litigation ........................................................................9

                2.      Edelson's Knowledge of Applicable Law and Experience Handling
                        Complex Litigation .....................................................................................11

                3.      Robbins Geller and Edelson Have Successfully Worked Together
                        in the Past and Continue to Do So ...............................................................15

        C.      Robbins Geller and Edelson Are Prepared to Commit Substantial
                Resources to the Litigation and Have a Proven Track Record of
                Advancing Complex Cases Through Pre-Trial Resolution, Trial and Post-
                Judgment Appellate Proceedings.......................................................................15

        D.      Proposed Interim Co-Lead Class Counsel Will Maximize Efficiency .................18

IV.     CONCLUSION...................................................................................................18

# TABLE OF AUTHORITIES

**Page**

## CASES

*Freidus v. Barclays Bank PLC*,
    734 F.3d 132 (2d Cir. 2013)........................................................................17

*Glickenhaus & Co. v. Household Int'l*,
    No. 13-3532, 2015 WL 2408028 (7th Cir. May 21, 2015).......................9

*In re Enron Corp. Sec. Litig.*,
    206 F.R.D. 427 (S.D. Tex. 2002).............................................................16

*In re Sensa Weight Loss Litig.*,
    No. 11-CV-1650-YGR,
    2012 U.S. Dist. LEXIS 28178 (N.D. Cal. Mar. 2, 2012).........................4

*Kehoe v. Fid. Fed. Bank & Trust*,
    421 F.3d 1209 (11th Cir. 2009) ...........................................................2, 10

*Matrixx Initiatives, Inc. v. Siracusano*,
    _ U.S. _,131 S. Ct. 1309 (2011).............................................................17

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1624 (2013).........17

*White v. Experian Info. Solutions*,
    993 F. Supp. 2d 1154, *amended*,
    2014 U.S. Dist. LEXIS 61433 (C.D. Cal. May 1, 2014) .........................4

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
    Rule 23(g) .......................................................................................1, 4, 19
    Rule 23(g)(1)(A)........................................................................................4
    Rule 23(g)(2)..............................................................................................4
    Rule 23(g)(3)..............................................................................................4
    Rule 26 .......................................................................................................2

## SECONDARY AUTHORITIES

Manual for Complex Litigation (Fourth) (2004)
    §21.11.........................................................................................................4
    §21.271.......................................................................................................4
    §22.62.........................................................................................................4

1044736_1

PLAINTIFFS' NOTICE OF JOINT MOTION & JOINT MOTION FOR THE APPOINTMENT OF
INTERIM CO-LEAD CLASS COUNSEL & MOL IN SUPPORT THEREOF - 5:15-md-02624-RMW        - ii -

1    TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

2    PLEASE TAKE NOTICE that on July 17, 2015 at 9:00 a.m., in Courtroom 6, 4th Floor,

3 before the Honorable Ronald M. Whyte, of the above-entitled Court, located at 280 South 1st Street,

4 San Jose, CA 95113, Plaintiffs Lukas Pick and David Hunter will and hereby do, through

5 undersigned counsel, move the Court for an Order granting relief sought in their Joint Motion to

6 Appoint Interim Co-Lead Class Counsel.

7    Plaintiffs respectfully request the Court appoint Robbins Geller Rudman & Dowd LLP and

8 Edelson PC as Interim Co-Lead Class Counsel.

9    Plaintiffs in the consolidated actions captioned *Pick v. Lenovo (United States), Inc.*, No. 5:15-

10 cv-00068 (E.D.N.C.) (the "*Pick* Action") and *Hunter v. Lenovo (United States), Inc.*, No. 5:15-cv-

11 00819 (N.D. Cal.) (the "*Hunter* Action") (collectively, "the Actions"), hereby respectfully submit

12 this Joint Motion seeking an order appointing the law firms of Robbins Geller Rudman & Dowd

13 LLP ("Robbins Geller") and Edelson PC ("Edelson") and (collectively, "Proposed Interim Co-Lead

14 Class Counsel" or "the Firms") as Interim Co-Lead Class Counsel, pursuant to Fed. R. Civ. P. Rule

15 23(g). This memorandum of law is further supported by the Declaration of Mark Dearman in

16 Support of the Joint Motion for the Appointment of Interim Co-Lead Class Counsel ("Dearman

17 Decl.") and the following Memorandum of Law in Support Thereof.

18 **I.    INTRODUCTION**

19    There are currently 28 putative class actions pending before this Court arising out of

20 Defendants Lenovo (United States), Inc. ("Lenovo") and Superfish Inc. ("Superfish") (collectively,

21 "Defendants") installing and operating Superfish's "Visual Discovery" software (the "Software") on

22 millions of consumers' Lenovo computers without their knowledge or consent (the "Centralized

23 Actions" or "Actions"). While several plaintiffs' firms now seek to be appointed interim class

24 counsel in the Actions, the undersigned firms – Robbins Geller and Edelson PC – bring unique

25 perspective and experience, being two of the first in the country to have successfully litigated nearly

26 identical statutory and privacy claims related to, *inter alia*, the unauthorized interception of

27 consumers' online communications and activities. *See, e.g.*, *Harris v. comScore, Inc.*, No. 11-cv-

28 5807 (N.D. Ill.) (Edelson appointed lead class counsel, and secured adversarial class certification and

a $14 million classwide settlement with nearly $600 paid per claimant); *see also Kehoe v. Fid. Fed. Bank & Trust*, 421 F.3d 1209 (11th Cir. 2009) (Robbins Geller appointed lead counsel in $50 million settlement in case under federal Driver's Privacy Protection Act); *In re: Sony Gaming Networks and Customer Data Security Breach Litig.*, MDL No. 2258 (S.D. Cal.) (Robbins Geller appointed co-lead class counsel of 65 consolidated class actions that ultimately settled for over $15 million).

Indeed, as the Firms have demonstrated in the past, successful prosecution of these types of claims requires more than the traditional (and often inefficient) approach to consumer MDLs taken by many of the others here – where numerous plaintiffs' firms chase news reports, form large coalitions of attorneys, and simply await their appointment as lead counsel. Instead, they require: (i) an understanding of highly technical issues related to the design, development and underlying source code of the software at issue; (ii) a willingness to engage in early and open dialogues and informational exchanges with Defendants (and other plaintiffs) to secure information relevant to the operative facts, claims and potential defenses; and (iii) the ability to analyze all of that data and focus the issues to be litigated in ways that best position the plaintiffs to prevail on class certification and the merits.

With respect to the Centralized Actions, Robbins Geller and Edelson have already significantly advanced those interests. By way of example, they have consistently offered to share their views of the litigation with the other plaintiffs' firms and defense counsel – even as others now seeking leadership roles declined such invitations. And, while others insisted on proceeding with Rule 26 conferences in only a subset of the pending actions, Robbins Geller and Edelson reached an early agreement with Defendants on a reciprocal exchange of relevant information – including obtaining identification of the types of information intercepted by the Software, the scope of the putative Class, and the roles of third-parties in the design and development of the Software. The Firms were also able to secure Defendants' agreement to participate in an early mediation. And, they have consistently kept other plaintiffs' firms seeking to be appointed lead counsel informed of those efforts – including inviting them to participate in an early mediation as equals, offering to share with them the information their in-house experts had uncovered regarding the Software, and

1044736_1

PLTFS' JOINT NOTICE OF MOTION & MOTION FOR THE APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL & MOL IN SUPPORT THEREOF - 5:15-md-02624-RMW    - 2 -

1  offering to share their experiences in other similar cases, which they believe have been and will

2  continue to be helpful to the plaintiffs' litigation strategies here.

3        In light of their experience and expertise, and their demonstrated ability to advance the

4  interests of the putative Class in an efficient and collaborative way, Robbins Geller and Edelson

5  provide the best options for leading these cases.[1]  For these reasons, and as discussed further below,

6  the Court should appoint Robbins Geller and Edelson as Interim Co-Lead Class Counsel of the

7  Centralized Actions.[2]

8  **II.    BRIEF FACTUAL AND PROCEDURAL BACKGROUND**

9        The plaintiffs in the Centralized Actions assert claims against Defendants arising from their

10  intentional installation and concealment of Superfish's "Visual Discovery" Software on Lenovo's

11  consumer computers without users' knowledge or consent.  In particular, the Software intercepted

12  secured and unsecured electronic communications to and from the Lenovo computers, thereby

13  hijacking web sessions, invading consumers' privacy, and exposing consumers to various security

14  risks and threats.  In response, 28 putative class action complaints were filed in nine District Courts

15  throughout the country alleging various claims against Defendants, including violations of the

16  Federal Wiretap Act, state consumer protection statutes, the Stored Communication Protection Act,

17  and infringement upon the property interests of Class members.

18        Edelson filed the *Hunter* Action on February 23, 2015 (Dearman Decl., Ex. 3), and Robbins

19  Geller filed the *Pick* Action on February 24, 2015 (Dearman Decl., Ex. 4), just days after the initial

20  complaint was filed.  They were the third and fourth cases filed against Defendants in this litigation,

21  respectively.  On June 8, 2015, the United States Judicial Panel on Multidistrict Litigation entered an

22

23  ───────────────────────
[1]    Plaintiffs and their counsel in the following Centralized Actions also support the appointment of
24  Robbins Geller and Edelson as Proposed Interim Co-Lead Class Counsel: *Behren v. Lenovo (United States), Inc.*, No. 15-cv-01177 (N.D. Cal.); *Foster v. Lenovo (United States), Inc.*, No. 15-cv-00203-
25  (W. KY.); *Kim v. Lenovo (United States), Inc.*, No. 5:15-cv-01342 (N.D. Cal.); *Wong v. Lenovo (United States), Inc.*, No. 5:15-cv-01478 (N.D. Cal.).

26  [2]    In the event the Court's preference is to appoint individual lawyers rather than a firm, Robbins
27  Geller's team will be led by Patrick J. Coughlin, and Edelson's team by Jay Edelson.  The biographies of Messrs. Coughlin and Edelson are included in the respective firm resumes.  Dearman
28  Decl., Exs. 1 & 2.

PLTFS' JOINT NOTICE OF MOTION & MOTION FOR THE APPOINTMENT OF INTERIM CO-
LEAD CLASS COUNSEL & MOL IN SUPPORT THEREOF - 5:15-md-02624-RMW          - 3 -

1  order consolidating each of the actions pending against Defendants.  Dkt. No. 108.  As of June 23,

2  2015, each of the pending actions are in the process of being transferred to this Court.  Dkt. No. 109.

3  **III.    STANDARD FOR APPOINTING INTERIM CLASS COUNSEL**

4        "Rule 23(g)(3) grants the Court authority to appoint pre-certification 'interim' class

5  counsel . . . 'if necessary to protect the interests of the putative class,'" prior to class certification.

6  *White v. Experian Info. Solutions*, 993 F. Supp. 2d 1154, 1169, *amended*, 2014 U.S. Dist. LEXIS

7  61433 (C.D. Cal. May 1, 2014).[3]  Particularly where, as here, multiple related cases are pending,

8  "the selection and activity of class counsel are often critically important to the successful handling of

9  the class action."  Fed. R. Civ. P. 23(g) (Notes of the Advisory Committee); *see also* Manual for

10  Complex Litigation (Fourth) §21.271 (2004).  The Manual advises that:

11
        If . . . there are a number of overlapping, duplicative, or competing suits . . . and
        some or all of those suits may be consolidated, a number of lawyers may compete for
12      class counsel appointment.  In such cases, designation of interim counsel clarifies
        responsibility for protecting the interests of the class during precertification
13      activities, such as making and responding to motions, conducting any necessary
        discovery, moving for class certification, and negotiating settlement.
14

15  *Id.*, §21.11.  "Early organization of the counsel who have filed the various cases transferred or

16  consolidated for pretrial purposes is a critical case-management task."  *Id.*, §22.62.

17        In selecting interim class counsel, Rule 23(g)(2), requires the appointment of counsel "'best

18  able to represent the interests of the class.'"  *White*, 993 F. Supp. 2d at 1169-70.  Thus, the courts

19  typically consider:

20        (i)     the work counsel has done in identifying or investigating potential claims in
                  the action;

21        (ii)    counsel's experience in handling class actions, other complex litigation, and
22                the types of claims asserted in the action;

23        (iii)   counsel's knowledge of the applicable law; and

24        (iv)    the resources that counsel will commit to representing the class.

25  Fed. R. Civ. P. 23(g)(1)(A); *see also In re Sensa Weight Loss Litig.*, No. 11-CV-1650-YGR, 2012

26  U.S. Dist. LEXIS 28178, at *4-*5 (N.D. Cal. Mar. 2, 2012).

27

28  _____
    [3]    Citations are omitted and emphasis is added, unless otherwise noted.

1044736_1

PLTFS' JOINT NOTICE OF MOTION & MOTION FOR THE APPOINTMENT OF INTERIM CO-
LEAD CLASS COUNSEL & MOL IN SUPPORT THEREOF - 5:15-md-02624-RMW          - 4 -

As detailed below (and in their respective firm resumes), Proposed Interim Co-Lead Class Counsel easily satisfy each of these factors. They have diligently identified and investigated the claims and potential defenses in this matter, have unmatched experience successfully leading multidistrict litigation and similar consumer privacy and technology cases, and they have already demonstrated their ability (more than any of the other firms seeking to be appointed lead) to effectively and efficiently advance the interests of the putative Class here. Accordingly, they can appropriately be appointed Interim Co-Lead Class Counsel in the Centralized Actions.

**A.** **Proposed Interim Co-Lead Class Counsel Have Diligently Identified and Investigated the Claims and Potential Defenses in the Centralized Actions, and Otherwise Advanced the Interests of the Putative Classes**

**1.** **The Firms' Pre-Suit and Ongoing Investigations**

The Firms' suitability as co-lead counsel can first be traced to their initial investigation into the case. While other firms were content to simply "rel[y] . . . only on press reports about Superfish's vulnerability and Lenovo's actions,"[4] Edelson and Robbins Geller took time to ensure not only that press reports regarding Lenovo and Superfish's conduct were accurate, but also to uncover further details substantiating their clients' allegations that Defendants unlawfully intercepted their communications.

For instance, Edelson used network protocol analyzers to examine the web traffic from a Lenovo laptop on which the Superfish Software had been pre-installed. Dearman Decl., ¶8. That revealed that the Visual Discovery Software utilized third-party Komodia's Redirector application to intercept communications through its so-called "transparent local proxy" feature.[5] *Id.*, ¶8. From there, Edelson analyzed the Windows registry and file systems on the Lenovo laptop and discovered that the Software installed a "root certificate authority certificate" in the Windows operating system, which is what ultimately enabled the interception of users' encrypted web traffic and allowed for the

---

[4]    Gregg Keizer, *More lawyers swoop down on Lenovo, Superfish with class-action lawsuits in hand*, COMPUTERWORLD (Feb. 24, 2015), *available at* http://www.computerworld.com/article/2888453/more-lawyers-swoop-down-on-lenovo-superfish-with-class-action-lawsuits-in-hand.html.

[5]    The "local proxy" feature is essentially software installed on a user's computer that intercepts and forwards web traffic from the subject computer to the specified server, all without the user's knowledge or consent.

1    injection of advertisements onto users' computers.  *Id.*, ¶8.  Edelson further tested the security

2    vulnerabilities produced as a result of the Software's operation, and confirmed that remote attackers

3    would also be able to leverage Visual Discovery to intercept a user's encrypted web traffic – due in

4    large part to the fact that the Komodia proxy used the same private key (and weak passphrase) for

5    each and every Lenovo laptop on which the Superfish Software was installed. *Id.*, ¶8.

6         Likewise, Robbins Geller investigated in detail the mechanism and technology underlying

7    Superfish's operation. Instead of rote recitation of various websites or press releases, Robbins Geller

8    sought to understand Superfish from the ground up, researching and consulting with experts on the

9    operation of HTTPS security and the means by which Superfish undermined it.  *See* Dearman Decl.,

10   Ex. 4; *Pick* Compl., ¶¶ 15-32.  Understanding the business arrangement that Lenovo had with

11   Superfish further prepared Robbins Geller to litigate this case involving multiple, potentially

12   adversarial defendants.

13        As a result of those efforts, the Firms not only identified theories of liability left untouched

14   (or nearly so) in many of the other filed cases, they also provided a level of detail not present in the

15   other pleadings and have demonstrated a substantial working expertise with the relevant facts and

16   causes of action. For instance, and in contrast to other complaints filed in this MDL (which lacked

17   any allegations demonstrative of an understanding of ***how*** the Class's communications were

18   intercepted), the *Hunter* and *Pick* complaints exhibited a far deeper technical understanding and

19   analysis of Defendants' interception, explaining exactly what communications were intercepted, how

20   they were intercepted, and when they were intercepted.  *See* Dearman Decl., Ex. 3; *Hunter* Compl.,

21   ¶¶ 26-40; *id.*, Ex. 4, *Pick* Compl., ¶¶26-32.[6]

22

23

24

25

26

---

[6]    *Hunter's* complaint also identifies how the software underlying Superfish (*i.e.*, the Komodia
Redirector) boasts that it intercepts traffic on the local machine based on rules that the developer
defines.

PLTFS' JOINT NOTICE OF MOTION & MOTION FOR THE APPOINTMENT OF INTERIM CO-
LEAD CLASS COUNSEL & MOL IN SUPPORT THEREOF - 5:15-md-02624-RMW      - 6 -

1    From there, Robbins Geller and Edelson have continued their investigatory efforts beyond

2 the filing of their clients' respective complaints.  Most importantly, Robbins Geller and Edelson

3 have worked with Defendants to gain early access to relevant information, including:  (i) insurance

4 policies; (ii) lists of potential custodians of records and information; (iii) an approximation of the

5 total number of affected U.S. computers and consumers; (iv) a breakdown of the categories and/or

6 types of information the Superfish Software collected from Lenovo computers (and whether each

7 was disclosed to third parties); and (v) a description of any third-parties' roles in the events and

8 conduct giving rise to this Action.  Dearman Decl., ¶10.

9    Additionally, as part of their ongoing efforts, Robbins Geller and Edelson have been working

10 with the Electronic Frontier Foundation ("EFF"), a nonprofit organization established in 1990 to

11 defend civil liberties in the digital world.  *Id.*, ¶9.  The EFF is widely regarded as the preeminent

12 organization standing up for digital rights, and is a common partner of the ACLU in cases affecting

13 those civil rights.  As described on the EFF's website, the "EFF champions user privacy, free

14 expression, and innovation through impact litigation, policy analysis, grassroots activism, and

15 technology development . . . to ensure that rights and freedoms are enhanced and protected as our

16 use of technology grows." (*About EFF*, ELECTRONIC FRONTIER FOUNDATION, *available at* https://

17 www.eff.org/about (last visited June 23, 2015).)  Proposed Interim Co-Lead Class Counsel have also

18 retained experts in computer science and engineering to analyze the security issues raised in this

19 litigation.  *See id.*, ¶9.

20         **2.    The Firms Have Demonstrated Their Ability to Advance the
              Interests of the Putative Class in the Centralized Actions**

21

22    In addition to their substantial pre-filing and ongoing investigations, Robbins Geller and

23 Edelson have also demonstrated their ability to work efficiently and collaboratively – both  amongst

24 themselves and with the other plaintiffs' firms in the Centralized Actions – to advance the interests

25 of the putative Class. Among other efforts, the Firms have:

26         •    Coordinated many of the first conferences amongst the various plaintiffs' firms to
                discuss, *inter alia*:  (i) whether and where the Centralized Actions should proceed in
27              a coordinated fashion; (ii) early preservation and discovery protocols that could be

28

1044736_1

PLTFS' JOINT NOTICE OF MOTION & MOTION FOR THE APPOINTMENT OF INTERIM CO-
LEAD CLASS COUNSEL & MOL IN SUPPORT THEREOF - 5:15-md-02624-RMW                    - 7 -

applied in each of the cases; and (iii) other methods of advancing the litigation efficiently;

- Advocated amongst the plaintiffs for staying each of the Actions pending centralization, while at the same time working with Defendants to secure agreements on preservation, ESI and other discovery protocols, as well as early exchanges of relevant information in return for such an agreement to stay;[7]

- Met with Defendants' counsel to discuss and secure agreement on those issues – after other plaintiffs' firms rejected such proposals in favor of proceeding with case management procedures in only a subset of the cases pending in the Northern District of California;

- Exchanged discovery and preservation protocols with Defendants, as well as certain other information relevant to the Parties' respective claims and defenses – *e.g.*, insurance policies, identities of custodians of information, the approximate number of affected consumers, the type of information disclosed, and third-parties' roles in Defendants' conduct; and

- Secured Defendants agreement to participate in an early mediation that would focus upon, *inter alia*, likely issues in the litigation (*e.g.*, discovery, motion practice, and the like) and the potential for an early resolution of the Centralized Actions.[8]

*See id.*, ¶10.

And, although it quickly became clear that there would be at least two groups of plaintiffs' firms competing for leadership positions – some of whom ultimately refused to communicate or actively participate in the litigation with Proposed Interim Co-Lead Class Counsel – Robbins Geller and Edelson continued their efforts to streamline the 28 cases and keep the other plaintiffs firms informed of those efforts. *Id.*, ¶11. They attempted to and ultimately agreed to coordinate positions and briefing on the motion to consolidate and transfer before the JPML, sought to stay the Actions pending the JPML's decision, and (as described above) worked with Defendants to advance the litigation in ways that would apply to each and every action once centralized. *Id.*, ¶10.

---

[7] Despite Lenovo's stated position that Lenovo Group was not properly a party to the Centralized Actions and would not accept service of the pleadings in the case, Robbins Geller and Edelson were able to secure Lenovo Group's agreement to provide relevant information in discovery without limiting the plaintiffs' ability to later pursue claims against it.

[8] As alluded to above, the mediation ultimately did not proceed because, although Robbins Geller and Edelson invited other firms seeking to be appointed lead class counsel to participate in an early mediation, the firms ultimately declined. *See* Dearman Decl., ¶11.

PLTFS' JOINT NOTICE OF MOTION & MOTION FOR THE APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL & MOL IN SUPPORT THEREOF - 5:15-md-02624-RMW - 8 -

Thus, Proposed Interim Co-Lead Class Counsel's initial and ongoing efforts to identify and investigate the relevant facts, claims and potential defenses, and otherwise advance the interest of the putative Classes, demonstrates their leadership and commitment to the litigation and their determination to position the case to secure maximum recovery and protections for the Class.

### B.    Proposed Interim Co-Lead Class Counsel Have Extensive Applicable Experience in Leading the Prosecution of Consumer Class Actions

#### 1.    Robbins Geller's Knowledge of Applicable Law and Experience Handling Complex Litigation

Robbins Geller is widely recognized as one of the most successful class action litigation firms in the world, with 200 attorneys in 10 offices, including San Francisco.  The Firm is unsurpassed in experience and success serving as lead counsel in class actions, having recovered more than $45 billion collectively for millions of consumers and investors.  *See* Dearman Decl., Ex. 1.

Robbins Geller is routinely named among the leading class action firms by virtually every study published by unaffiliated third parties.  For example, in May 2015, Chambers USA gave Robbins Geller its highest ranking, praising it as the "preeminent plaintiff firm."  Similarly, in comparing the dollar value of recoveries by all plaintiffs' firms for 2014, Institutional Shareholder Services' recent "Top 50 Report" named Robbins Geller as its highest ranked firm, noting that it recovered over $300 million more than the second place firm.  To be sure, Robbins Geller attorneys secured the largest ever recovery in a securities class action in *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (S.D. Tex.) (Harmon, J.) ($7.3 billion); the largest ever post-verdict judgment in *Jaffe v. Household Int'l, Inc.*, No. 02-C-5893 (N.D. Ill.) (Guzman, J.) ($2.46 billion)[9]; the largest ever antitrust settlement in *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 1:05-md-01720 (E.D.N.Y.) ($5.7 billion; final approval granted; appeal by objectors pending); the largest ever options backdating recovery in *In re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 06-cv-1691 (D. Minn.) ($925 million); the largest ever opt-out (aggregated individual) recovery in *In re*

---

[9]    On May 21, 2015, the United States Court of Appeals for the Seventh Circuit remanded on very narrow issues. *Glickenhaus & Co. v. Household Int'l*, No. 13-3532, 2015 WL 2408028 (7th Cir. May 21, 2015).

1   *WorldCom Sec. Litig.*, No. 03 Civ. 8269 (S.D.N.Y.) ($657 million); the largest ever RMBS

2   purchaser class action recovery in *Luther v. Countrywide Fin. Corp.*, No. 12-cv-05125 (C.D. Cal.)

3   ($500 million); and the largest ever corporate takeover litigation recovery in *In re Kinder Morgan,*

4   *Inc. S'holders Litig.*, No. 06-C-801 (Kan. Dist. Ct., Shawnee Cnty.) ($200 million); and in *In re*

5   *Prudential Ins. Co. of Am. Sales Practices Litig.*, MDL No. 1061 (D.N.J.), Robbins Geller obtained a

6   settlement of $4 billion for deceptive sales practices in connection with the sale of life insurance

7   involving the "vanishing premium" sales scheme.  *See* Dearman Decl., Ex. 1.

8        Robbins Geller has unequaled experience in handling complex, nationwide class litigation,

9   including general consumer class actions as well as class actions specifically involving privacy

10  issues.  Robbins Geller has also led and secured recoveries for consumers in data privacy related

11  actions like the instant case.  For example:

12  - **Sony Data Breach.**  In the *In re: Sony Gaming Networks and Customer Data Security Breach Litig.*, MDL No. 2258 (S.D. Cal.), which spawned 65 separate actions eventually consolidated in the Southern District of California, Robbins Geller was appointed to serve as one of the Co-Lead Counsel and secured a recovery for the class valued at over $15 million. The settlement, granted final approval last month over no objections, was reached only after Plaintiffs defeated Sony's challenge to their standing – a landmark victory that has served as a blueprint for subsequent data breach cases, including *In re Target Corp. Customer Data Security Breaching*, MDL No. 2522 (D. Minn.), where Robbins Geller assisted Lead Counsel in defeating Target's motion to dismiss and settling the case.

18  - **Drivers' Privacy Protection Act.**  In this first of its kind consumer privacy case, Robbins Geller represented a class of drivers against a national bank that purchased private information in violation of a federal statute.  After appeals to the Eleventh Circuit and the United States Supreme Court, Robbins Geller successfully negotiated a $50 million all cash settlement. *Kehoe v. Fid. Fed. Bank & Trust*, 421 F.3d 1209 (11th Cir. 2005).

22  - **Trans Union Privacy Litigation.**  Robbins Geller served as Class Counsel in MDL proceedings against one of the nation's largest credit reporting agencies under the Fair Credit Reporting Act and various state laws challenging the sale of personal consumer credit information.  A class-wide settlement providing for a $75 million settlement fund and credit monitoring services was approved in September 2008. *In re Trans Union Corp. Privacy Litig.*, No. 00-cv-4729, MDL Dkt. No. 1350 (N.D. Ill.).

27

28

Robbins Geller has likewise achieved remarkable success for consumers in other cutting-edge consumer cases.  For example:

- **In re JP Morgan Chase Bank Home Equity Line of Credit Litigation.**  In a settlement valued between $3 and $4 billion, Robbins Geller successfully litigated a case against Chase Bank for unilaterally suspending consumer home equity line of credit accounts and harming consumers.  *In re JP Morgan Chase Bank Home Equity Line of Credit Litig.*, No. 1:10-cv-03647 (N.D. Ill.).

- **In re Pet Food Products Liab. Litig.**  Robbins Geller served as Co-Lead Counsel in MDL proceedings against some of the nation's largest pet food manufacturers, distributors, and retailers for the sale of contaminated pet food that injured or killed pets across North America.  A class-wide settlement of $24 million was approved in November, 2008.  *In re Pet Food Products Liab. Litig.*, No. 07-cv-02867, MDL No. 1850 (D.N.J.).

- **In re Morning Song Bird Food Litig.** Robbins Geller is currently litigating the nationwide class action against Scotts Miracle-Gro for Scotts' illegal marketing and sale of toxic bird seed. Robbins Geller has defeated Scotts' attempts at dismissal of the case, and continues to press forward after recently receiving an order certifying the class.  *In re Morning Song Bird Food Litig.*, No. 12cv1592 JAH (S.D. Cal.).

- **Fraser v. ASUS Computer Int'l.** As Co-Lead Counsel representing a class of consumers who purchased tablet computers that contained defective GPS and wi-fi technology, Robbins Geller achieved a settlement awarding both cash payments to class members and providing a replacement for the defective GPS.  *Fraser v. ASUS Computer Int'l*, No. 3:12cv00652 (N.D. Cal.) (Alsup, J.).

## 2. Edelson's Knowledge of Applicable Law and Experience Handling Complex Litigation

Recognized as a leader in plaintiffs' class and mass actions, with a particular emphasis on consumer, privacy, and technology class actions, Edelson is routinely appointed as class counsel in high-profile privacy class actions.  *See, e.g.*, *Paraggua v. LinkedIn Corp.*, No. 5:12-cv-3088 EJD (N.D. Cal. Aug. 29, 2012) (appointing Edelson as interim lead counsel of four consolidated data breach cases, and holding that his firm is "experienced in class action litigation and, in particular, in class action litigation involving technology and privacy"); *see also In re Facebook Privacy Litig.*, No. 10-cv-2389-JW, Dkt. No. 69 at 5 (N.D. Cal. Dec. 10, 2010) (appointing attorneys at the Edelson firm interim co-lead class counsel of nine consolidated class actions, citing the firm's "extensive experience in privacy litigation and commitment to the present action," and recognizing the Edelson firm as "pioneers in the electronic privacy class action field, having litigated some of the largest

1044736_1

PLTFS' JOINT NOTICE OF MOTION & MOTION FOR THE APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL & MOL IN SUPPORT THEREOF - 5:15-md-02624-RMW                    - 11 -

consumer class actions in the country on this issue"). Indeed, Edelson was class counsel in the largest adversarially certified privacy class action to date, which resulted in a $14 million, non-reversionary class settlement that paid nearly $600 to each claiming class member. *See Harris v. comScore, Inc.*, No. 11-cv-5807 (N.D. Ill.).

With a team of lawyers and computer forensics experts, Edelson has repeatedly demonstrated the dedication and resources that have led courts and commentators to recognize the firm for its "game-changing" privacy work and its "uncanny ability to come up with creative . . . arguments" and obtain "momentum-shifting rulings." Allison Grande, *Titan Of The Plaintiffs Bar: Jay Edelson*, LAW 360 (Oct. 1, 2014), *available at* http://www.law360.com/articles/581584/titan-of-the-plaintiffs-bar-jay-edelson; *see also, e.g.*, *Bernal v. Netflix, Inc.*, No. 5:11-cv-00820 EJD, 2011 U.S. Dist. LEXIS 89903, at *10 (N.D. Cal. Aug. 12, 2011) (appointing Edelson sole lead counsel due, in part, to Edelson's "significant and particularly specialized expertise in electronic privacy litigation and class actions"); Conor Dougherty, *Jay Edelson, The Class Action Lawyer Who May Be Tech's Least Friended Man*, N.Y. TIMES, Apr. 5, 2015, at BU1, available at http://www.nytimes.com/2015/04/05/technology/unpopular-in-silicon-valley.html ("[Edelson's] cases read like a time capsule of the last decade, charting how computers have been steadfastly logging data about our searches, our friends, [and] our bodies.").

This expertise has led to a series of favorable decisions and settlements in the privacy and technology class action fields, and elsewhere:

- Lead counsel on class action alleging that data analytics company obtained and sold customer data without consent. After winning adversarial class certification and completing merits discovery, case settled for $14 million, and numerous articles noted that the several-hundred dollar payout per class member stood in contrast to previous large-scale privacy suits, which generally provided no payment to class members;

- After winning a seminal decision in the 11th Circuit, reached the first two – and, to date, only – data breach class action settlements providing class members with cash without requiring a showing of identity theft or other post-breach injury;

- Lead counsel in *Robins v. Spokeo*, No. 10-cv-5306 (C.D. Cal.), currently before the United States Supreme Court. Commentators have called the case "the most important privacy class action and consumer case of the decade";

1044736_1

PLTFS' JOINT NOTICE OF MOTION & MOTION FOR THE APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL & MOL IN SUPPORT THEREOF - 5:15-md-02624-RMW                 - 12

- Lead counsel in three consolidated class actions under Michigan's Video Rental Privacy Act, where Edelson secured a groundbreaking decision holding that the act applied to and prohibited magazine publishers' disclosure of subscriber mailing lists, and negotiated the first class action settlement under that law;

- Lead counsel in over a half-dozen nationwide class action settlements collectively worth hundreds of millions of dollars involving claims of unauthorized charges on cellular telephones;

- Lead counsel in numerous text message spam class actions, including the seminal Ninth Circuit decision holding that TCPA's prohibitions applied to text messaging, as well as a $35 million settlement involving Jiffy Lube, a $20 million settlement with a for-profit college, and a $16 million settlement with 20th Century Fox, among others;

- Lead counsel in several class actions against the major banks for suspending home credit lines in the wake of the financial crash. Settlements collectively restored billions of dollars in credit lines;

- Lead counsel in *Wigod v. Wells Fargo*, No. 10-cv-2348 (N.D. Ill), the first case in the country to allow consumers standing to sue over claims for failure to honor home loan modification agreements. After one Circuit Judge noted that "prompt resolution" of the case was necessary "for the good of the country," the case settled, resulting in loan forgiveness and substantial cash payments.

*See* Dearman Decl., Ex. 2; *see also Halaburda v. Bauer Publishing Co.*, No. 12-cv-12831 (E.D. Mich.) (securing first ever class settlement under Michigan Video Rental Privacy Act ["VRPA"]); *Fox v. Time, Inc.*, No. 12-cv-14390 (E.D. Mich.) (securing the denial of three motions to dismiss in consolidated actions brought under the VRPA – each alleging unlawful disclosure of subscribers' personal information); *In re Netflix Privacy Litig.*, No. 11-cv-00379 (N.D. Cal.) (appointing Edelson sole lead counsel, and finally approving $9 million settlement); *In re Jiffy Lube Int'l Text Spam Litigation*, 847 F. Supp. 2d 1253 (S.D. Cal.) (appointing Edelson co-lead counsel and finally approving $35 million text spam settlement); *Ellison v. Steve Madden, Ltd.*, No. 11-cv-5935, Dkt. No. 73 at 9 (C.D. Cal. May 7, 2013) (noting that Edelson has "pioneered the application of the TCPA to text-messaging technology, litigating some of the largest consumer class actions in the country on this issue").[10]

---

[10]   *In re: Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, No. 09-cv-7670, Transcript of Proceedings (Dkt No. 127) at 17 (N.D. Ill. Apr. 4, 2012) (noting that Edelson's representation of its clients was "consistent with the highest standards of the profession" and "a

1044736_1

PLTFS' JOINT NOTICE OF MOTION & MOTION FOR THE APPOINTMENT OF INTERIM CO-
LEAD CLASS COUNSEL & MOL IN SUPPORT THEREOF - 5:15-md-02624-RMW          - 13 -

Beyond its demonstrated expertise with the claims at issue here, Edelson has been appointed by state and federal courts throughout the country to serve in leadership capacities – virtually always as lead or co-lead counsel in highly complex litigation, including in many high-profile MDLs. Indeed, Edelson's reputation for leadership in class action litigation – and its attorneys' ability to organize and work cooperatively with groups of plaintiffs' attorneys, as well as opposing counsel – has led courts nationwide to appoint the firm and its attorneys lead counsel in numerous high-profile cases. *See, e.g.*, *In re Advocate Data Breach Litig.*, No. 2013-CH-20390 (Del. Ch., Cook Ctny., Ill.) (appointing Edelson co-lead of nine consolidated healthcare data breach class actions, which were being prosecuted by twelve law firms); *LinkedIn*, 2012 U.S. Dist. LEXIS 123226, at *6 (appointing Edelson as lead class counsel of four consolidated data breach cases, and holding that his firm is "experienced in class action litigation and, in particular, in class action litigation involving technology and privacy [and had] taken a leadership role among counsel for the other plaintiffs"); *Birchmeier v. Caribbean Cruise Line, Inc.*, No. 12-cv-04069 (Dkt. No. 100) (N.D. Ill. April 17, 2013) (appointing Edelson as co-lead counsel of three consolidated cases in Telephone Consumer Protection Act case); *Netflix*, 2011 U.S. Dist. LEXIS 89903, at *10 (appointing Edelson as lead counsel of six consolidated class actions and holding that his firm's "significant and particularly specialized expertise in electronic privacy litigation and class actions, renders them superior to represent the putative class"); *Facebook*, No. 10-cv-02389-JW, Dkt. No. 69 at 5 (appointing attorneys of Edelson PC as interim co-lead class counsel of nine consolidated class actions, citing the firm's "extensive experience in privacy litigation and commitment to the present action"); *In re: JP Morgan Chase Bank Home Equity Line of Credit Litig.*, No. 1:10-cv-03647, Minute Entry (Dkt. No. 37) (N.D. Ill. July 16, 2010) (appointing Edelson as co-lead counsel of MDL involving nine class actions from seven different federal district courts).

model of what the profession should be and what the profession should do on behalf of people who have claims of this nature so as to have them resolved in a just, fair, and reasonable way").

1044736_1

PLTFS' JOINT NOTICE OF MOTION & MOTION FOR THE APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL & MOL IN SUPPORT THEREOF - 5:15-md-02624-RMW          - 14 -

### 3.   Robbins Geller and Edelson Have Successfully Worked Together in the Past and Continue to Do So

As outlined above, Edelson and Robbins Geller have extensive experience in litigating class actions involving privacy and other complex issues.  They also have a proven record of working cooperatively and efficiently with each other to successfully represent the interests of putative classes in other similar cases.

By way of example, Proposed Interim Co-Lead Class Counsel are together litigating other complex class action cases, including *In re Facebook Biometric Litig.*, No. 1:15-cv-03484 (N.D. Ill.) (Edelson and Robbins Geller are together representing plaintiffs in litigation against Facebook Inc. over the collection, storage, and use of biometric information without written consent) and worked as co-counsel in *In re Pet Food Prods. Liab. Litig.*, No. 07-2867 (D.N.J.) and *In re: JP Morgan Chase Bank Home Equity Line of Credit Litig.*, No. 1:10-cv-03647 (N.D. Ill.).

Accordingly, there should be no question that Robbins Geller and Edelson are well-suited to be appointed as Interim Co-Lead Class Counsel and that they have the ability to work efficiently, effectively and collaboratively to the benefit of the putative class.

### C.   Robbins Geller and Edelson Are Prepared to Commit Substantial Resources to the Litigation and Have a Proven Track Record of Advancing Complex Cases Through Pre-Trial Resolution, Trial and Post-Judgment Appellate Proceedings

Next, Proposed Interim Co-Lead Class Counsel have already devoted significant human and financial resources to representing the interests of the Class here, and they will continue to devote the necessary resources to effectively represent and advance the interests of the putative Class as the cases proceed.

For example, Edelson employs not only a team of lawyers (and accompanying support staff), but also full-time, in-house computer forensic investigators, who assisted with the investigation leading to the filing of this case and will remain actively involved in ongoing information gathering and discovery analysis.  *See* Dearman Decl., Ex. 2.  These resources, along with the firm's substantial subject-matter expertise, have allowed the firm to undertake in-house, highly complex review of novel and proprietary technology in the past, including the routine investigation and analysis of highly confidential and complex software source code.  *Id.*  Given its substantial

1044736_1

PLTFS' JOINT NOTICE OF MOTION & MOTION FOR THE APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL & MOL IN SUPPORT THEREOF - 5:15-md-02624-RMW                          - 15 -

1   experience in investigating and litigating complex technology and privacy class actions, Edelson

2   unquestionably has the resources necessary to diligently and efficiently prosecute Plaintiffs' and the

3   putative class's claims here.

4       Moreover, Robbins Geller's in-house technological capabilities boast an unparalleled high-

5   speed disk system capable of securely hosting more than 150 terabytes of data.  The secure system is

6   highly scalable and can host, onsite, a nearly limitless amount of data.  Robbins Geller also uses the

7   most advanced document review platforms.   Combined with Robbins Geller's disk storage

8   capabilities, the firm is able to host extremely large document productions and dramatically reduce

9   the cost paid to outside vendors, especially when many millions of documents may be produced. *See*

10  Dearman Decl., Ex. 1.

11      Robbins Geller's ability to endure and successfully resolve complex and cumbersome

12  litigation in large, multimillion dollar cases such as this litigation is emblematic of its history and

13  stature, as recognized by numerous federal and state courts.  *See, e.g.*, *In re Enron Corp. Sec. Litig.*,

14  206 F.R.D. 427, 454 (S.D. Tex. 2002) (appointing Robbins Geller as sole lead counsel, finding it a

15  "law firm with exceptional resources and capability to prosecute this action").   Additionally, in *Jaffe*

16  *v. Household Int'l, Inc.*, No. 02-C-05893 (N.D. Ill.), Robbins Geller's unmatched human and

17  financial resources allowed it to achieve the largest jury verdict *ever* returned in favor of a

18  shareholder class, following a six-week jury trial.  Many of Robbins Geller's recent successes have

19  involved settlement during trial or in the final days prior to trial.  *See, e.g.*, *Jones v. Pfizer Inc.*, No.

20  1:10-cv-03864 (S.D.N.Y.) (achieving a $400 million settlement mere days before the start of trial);

21  *In re Rural/Metro Corp. Stockholders Litig.*, No. 6350 (Del. Ch.) (achieving a post-trial judgment

22  resulting in a recovery of over $75 million in an award *TheStreet.com* described as stunning and

23  "one of the largest in the history of the Court of Chancery."); *In re St. Jude Medical, Inc. Sec. Lit.*,

24  Civ. No. 0:10-cv-00851 (D. Minn.) (securing a $50 million settlement on the eve of trial).  There is

25  no question that Robbins Geller has the strength to litigate the entirety of a complex class action.

26      In addition to its team of trial court litigators, Robbins Geller has an experienced and

27  formidable appellate department which has obtained numerous significant and favorable appellate

28  decisions.  For example, Robbins Geller achieved a sweeping victory for shareholders before the

Supreme Court *in Matrixx Initiatives, Inc. v. Siracusano*, _ U.S. _,131 S. Ct. 1309 (2011).  More recently, in March 2015, Robbins Geller won another case in the Supreme Court in *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, No. 13-435.  Robbins Geller has also achieved important appellate victories arising out of the subprime mortgage debacle.  For example, in September 2012, the Second Circuit vacated key parts of the District Court's dismissal of an action against Goldman Sachs on behalf of purchasers of Goldman Sachs mortgage-backed securities.  *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1624 (2013).  In August 2013, Robbins Geller obtained a major victory on behalf of investors in the Barclays Bank PLC Second Circuit Appeal.  *See Freidus v. Barclays Bank PLC*, 734 F.3d 132 (2d Cir. 2013).  Major news outlets, including *Reuters* and *The American Lawyer* called the decision a noteworthy victory for plaintiffs.

To be sure, the importance of selecting experienced law firms to represent the Class in these Actions is even more significant considering the resources and representation of Defendants. By way of example, as the world's largest manufacturer of consumer laptops, Lenovo is extremely well-capitalized[11] and has hired well-qualified defense counsel at Dykema Gossett PLLC who have a reputation for aggressively advocating on behalf of their clients. Likewise, Superfish's attorneys at Fenwick & West LLP have been recognized as some of the leading defense lawyers in the technology and privacy fields. Thus, to ensure the Class is capably represented in the face of such opposition, the Court should appoint aggressive, well-funded and experienced advocates willing to litigate these cases to their conclusion, up to and including trial and post-trial appeals, if necessary. As described above, Robbins Geller and Edelson have proven track records and possess the qualifications, resources, and ability to fulfill this important role and to guide this litigation to a successful conclusion.

---

[11]   As of the date of this submission, Lenovo enjoys a market capitalization of more than $120 billion.

1    **D.     Proposed Interim Co-Lead Class Counsel Will Maximize Efficiency**

2          Robbins Geller and Edelson are also committed to proceeding as efficiently as possible in

3    these actions – assigning the appropriate attorneys and staff to litigate the cases, coordinating their

4    efforts thus far so that there is no duplication of work, and allocating assignments in a manner that

5    best suits their respective firm's experience. And rather than seek a large complex structure of

6    attorneys and law firms, Proposed Interim Co-Lead Class Counsel seek the appointment of the two

7    Firms.[12] This streamlined structure will manage and execute a cost-effective, efficient and highly

8    capable prosecution of this matter.  Notwithstanding, the Firms have also demonstrated the ability to

9    coordinate the resources and abilities of other plaintiffs' firms involved in the Centralized Actions.

10   *See* §III.A.2, above.  These efficiencies have already begun to bear fruit.  For instance, avoiding the

11   need for Defendants to participate in separate case management conferences in nine different

12   districts, *see Sterling Int'l Consulting Grp. v. Lenovo (United States) Inc.*, No. 5:15-cv-00807-RMW,

13   Order (Dkt. No. 37) (N.D. Cal. May 12, 2015) (staying proceedings pending consolidation by the

14   JPML, despite *Sterling* counsel's exhortations), and securing Defendants' agreement on certain

15   discovery, preservation and ADR issues that could be applied to the cases as a whole prior to and

16   following centralization.  *See* §III.A.2, above.

17         If appointed as Interim Co-Lead Class Counsel, Robbins Geller and Edelson will continue to

18   work together, with the other plaintiffs' firms, and with defense counsel to advance the litigation as

19   efficiently as possible. For this reason too, the Firms should be appointed co-lead counsel of the

20   Centralized Actions.

21   **IV.    CONCLUSION**

22         In sum, Edelson and Robbins Geller are well qualified to prosecute this litigation.  They are

23   committed to working cooperatively and efficiently, and to expend all the time and resources

24   necessary to secure the very best outcome for Plaintiffs and the putative Class.  For these reasons,

25

26   ---

27   [12]   While Robbins Geller and Edelson believe this two firm co-lead structure is an efficient way to proceed, Proposed Interim Co-Lead Class Counsel are not opposed to working, within parameters that ensure efficiency and organization, with other law firms, including opposing movants and others who have expressed interest in contributing to the prosecution of the case.

28

1044736_1

PLTFS' JOINT NOTICE OF MOTION & MOTION FOR THE APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL & MOL IN SUPPORT THEREOF - 5:15-md-02624-RMW                    - 18 -

1   Plaintiffs respectfully request that the Court appoint the firms of Edelson and Robbins Geller as

2   Interim Co-Lead Class Counsel, pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

3   DATED:  June 23, 2015                    Respectfully submitted,

4                                            ROBBINS GELLER RUDMAN
                                                & DOWD LLP
5                                            PATRICK J. COUGHLIN
                                             CARMEN A. MEDICI
6

7

8                                                     s/ Carmen A. Medici
                                                    CARMEN A. MEDICI
9
                                             655 West Broadway, Suite 1900
10                                           San Diego, CA  92101
                                             Telephone:  619/231-1058
11                                           619/685-6920 (fax)

12                                           ROBBINS GELLER RUDMAN
                                                & DOWD LLP
13                                           SHAWN A. WILLIAMS
                                             Post Montgomery Center
14                                           One Montgomery Street, Suite 1800
                                             San Francisco, CA  94104
15                                           Telephone:  415/288-4545
                                             415/288-4534 (fax)
16

17   DATED:  June 23, 2015
                                             ROBBINS GELLER RUDMAN
18                                              & DOWD LLP
                                             PAUL J. GELLER
19                                           STUART A. DAVIDSON
                                             MARK J. DEARMAN
20

21

22                                                    s/ Mark J. Dearman
                                                    MARK J. DEARMAN
23
                                             120 East Palmetto Park Road, Suite 500
24                                           Boca Raton, FL  33432
                                             Telephone:  561/750-3000
25                                           561/750-3364 (fax)

26                                           Attorneys for Plaintiff Lukas Pick

27

28

1 | DATED:  June 23, 2015

EDELSON PC
JAY EDELSON
RAFEY S. BALABANIAN
BENJAMIN H. RICHMAN

_s/ Jay Edelson_
JAY EDELSON

350 North LaSalle Street, 13th Floor
Chicago, Illinois  60654
Telephone:  312-589-6370
(312) 589-6378 (fax)

Attorneys for Plaintiff David Hunter

## ATTESTATION OF CONCURRENCE IN FILING

Pursuant to the United States District Court for the Northern District of California's Civil L.R. 5-1(1)(3), Carmen A. Medici attests that concurrence in the filing of this document has been obtained.

DATED:  June 23, 2015

_s/ Carmen A. Medici_
CARMEN A. MEDICI

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 23, 2015, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on June 23, 2015.

<u>    s/ Carmen A. Medici                    </u>
CARMEN A. MEDICI

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:          cmedici@rgrdlaw.com

1044736_1

# Mailing Information for a Case 5:15-md-02624-RMW In Re: Lenovo Adware Litigation

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Rafey S. Balabanian**
  rbalabanian@edelson.com

- **James Jackson Bilsborrow**
  jbilsborrow@weitzlux.com

- **Robert W. Bishop**
  firm@bishoplegal.net

- **Howard Mitchell Bushman**
  hbushman@harkeclasby.com

- **Rodger R. Cole**
  rcole@fenwick.com,vpieretti@fenwick.com

- **Christopher Dalbey**
  cdalbey@weitzlux.com

- **Jay Edelson**
  jedelson@edelson.com

- **Sarah Clasby Engel**
  sengel@harkeclasby.com

- **Mark A. Friel**
  mfriel@stollberne.com,aarnold@stollberne.com

- **John S. Friend**
  louisvillelaw22@gmail.com

- **Robin L. Greenwald**
  rgreenwald@weitzlux.com

- **Lance August Harke**
  lharke@harkeclasby.com

- **Tyler Z. Korus**
  tyler@bishoplegal.net

- **James Dominick Larry**
  nlarry@edelson.com,cdore@edelson.com

- **Steve Douglas Larson**
  slarson@stollberne.com,aarnold@stollberne.com

- **Samuel Lasser**
  samlasser@hotmail.com

- **Jonathan Krasne Levine**
  jkl@pritzkerlevine.com,bc@pritzkerlevine.com

- **Frank Mari**
  fmari@bellroperlaw.com

- **Amir Cheyenne Missaghi**
  amissaghi@edelson.com

- **Adam M. Moskowitz**
  AMM@kttlaw.com

- **Robert J Neary**
  rn@kttlaw.com

- **Elizabeth Cheryl Pritzker**
  ecp@pritzkerlevine.com,jkl@pritzkerlevine.com,bc@pritzkerlevine.com,sy@pritzkerlevine.com

- **Benjamin Harris Richman**
  brichman@edelson.com

- **Michael J. Roper**
  mroper@bellroperlaw.com

- **Daniel James Stephenson**
  dstephenson@dykema.com,pgrace@dykema.com,svital@dykema.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`