1
2
3
4
5
6
7
8
9
10

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| In re LENOVO ADWARE LITIGATION | Case No. 5:15-md-02624-RMW |
| This Document Relates To:<br><br>ALL ACTIONS | <u>CLASS ACTION</u><br><br>PLAINTIFF JOEL FOSTER'S RESPONSE TO MOTIONS FOR APPOINTMENT OF INTERIM CLASS COUNSEL<br><br>Date:      July 17, 2015<br>Time:      9:00 a.m.<br>Courtroom: 6 – 4th Floor<br>Judge:     Hon Ronald M. White |

# TABLE OF CONTENTS

| | Page |
|---|---|
| I.  INTRODUCTION | 1 |
| II. BRIEF FACTUAL AND PROCEDURAL BACKGROUND | 2 |
| III. ARGUMENT | |
| Robbins Geller and Edelson are Uniquely Qualified to be Appointed Interim Lead Counsel Due to Their Experience in Similar Matters | 3 |
| Robbins Geller and Edelson's Work in Identifying the Class Claims, and Their Unique Resources, Further Demonstrate the Expertise They Can Bring to this Litigation | 7 |
| IV. CONCLUSION | 8 |

y

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page**

*Olmstead v. United States*, 277 U.S. 438, 478 (1928)     1

*Flores v. Velocity Express, Inc.*,
2013 U.S. Dist. LEXIS 77821 (N.D. Cal. June 2, 2013)     3, 4

*Four in One Co. v. SK Foods, L.P.*, 2009
U.S. Dist. LEXIS 28657 (E.D. Cal. Mar. 19, 2009)     3, 4

*Kehoe v. Fid. Fed. Bank & Trust*, 421 F.3d 1209 (11th Cir. 2005)     5

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012)     5, 6

*Harris v. comScore, Inc.,* 292 F.R.D. 579, 584 (D. Ill. 2013)     6, 7

**Statutes, Rules, and Regulations**

Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-22     2

Stored Communications Act 18 U.S.C. § 2701     2

Kentucky Consumer Protection Act, KRS § 367     2

Federal Rule of Civil Procedure 23(g)(3)     3

## **INTRODUCTION**

This case concerns "the right to be let alone -- the most comprehensive of rights and the right most valued by civilized men." *Olmstead v. United States*, 277 U.S. 438, 478 (1928) (J. Brandeis, dissenting).  While Justice Brandeis' dissent in Olmstead concerned privacy from the United States government, that right has been expanded by Congress through statutory enactments applicable to the case at bar. As has been thoroughly discussed by the early filings in this case, the instant matter is a large consumer class action, yet another entry in the growing realm of consumer privacy cases.  The class is nationwide and voluminous.  The highly technical nature of the underlying issues and facts require counsel with demonstrated expertise in similar matters.

Four motions have been filed by competing firms seeking leadership.  Each motion is advanced by impressive, capable attorneys; but, of the four motions, Robbins Geller and Edelson's stands out above the rest.  The firm making the present response on behalf of Plaintiff Foster did not submit any of these four motions, but feel compelled at this juncture to argue to this Court for Robbins Geller and Edelson to be appointed interim lead counsel.  Plaintiff Foster strongly urges appointment of Robbins Geller and Edelson because that most likely will lead to a successful resolution of the claims herein, be it by settlement or trial.

The other firms competing for appointment clearly have demonstrated track records of success.  However, not every firm has a demonstrated track record of success in consumer privacy litigation of this magnitude.  Surely, these other firms would be well suited to be lead counsel in other matters.  But the Class must have the advantage of having the best possible lead counsel for this matter specifically.

Robbins Geller and Edelson have conducted an impressive pre-filing investigation that likely saved substantial early discovery, and have openly shared that information with other firms.  Robbins Geller and Edelson have also developed a rapport with counsel for the Defendants; in fact, had other firms agreed, the Class already would have had the advantage of an early mediation. This would have provided an opportunity to learn the Defendants' position on various matters, as well as giving the Class an early opportunity to settle, while keeping

transactional costs low.  Even had the mediation not produced an early settlement, the information about the parties' positions on central issues would have been valuable, and the expense relatively negligible.  Without casting aspersions on any other firms, as we have no reason to believe any other firms are acting in anything less than good faith, attorneys for Plaintiff Foster do not believe that passing up this opportunity inured to the benefit of the Class.

For the reasons more fully set forth in Robbins Geller and Edelson's leadership motion and the present memorandum, given those two firm's unmatched experience in privacy and technology related lawsuits, their unparalleled record of results, and their demonstrated commitment to this case, Plaintiff Foster respectfully submits that Robbins Geller and Edelson's request that they be appointed Interim Co-Lead Class Counsel should be granted by this Court.

## **BRIEF FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Joel Foster is a citizen of the Commonwealth of Kentucky who purchased a Lenovo Yoga2 Pro laptop during the class period.  (*Foster* Dkt. 1, ¶ 11).  On March 11, 2015, Mr. Foster filed a class action suit alleging violations of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-22, the Stored Communications Act 18 U.S.C. § 2701, *et. seq.,* the Kentucky Consumer Protection Act, KRS § 367, *et. seq.,* and for various forms of common law relief.  (*Foster* Dkt. 1, ¶¶ 58-91).  Foster's class was consolidated by the MDL panel, and transferred to the Northern District of California on June 8, 2015.  (*In re Lenovo Adware Litigation,* Dkt. 1).

All of the consolidated actions are believed to arise from the same course of conduct engaged in by the Defendants Lenovo and Superfish.  Superfish's Visual Discovery software was installed on millions of Lenovo's computers; the majority of these computers landed in the hands of ordinary American consumers.  (*Foster* Dkt. 1, ¶¶ 16-18).  This has given the Defendants the ability to monitor, intercept, and utilize millions of communications on a daily basis.

To make matters worse, this software has created an additional grave security risk for consumers, as it has the capability of intercepting and decrypting secure requests from

HyperText Transfer Protocol Secure ("HTTPS") websites. This negates critical security features of banking, tax, remote desktop, and many government websites, further exposing consumers to attack. (*Id.* Dkt. 1 ¶ 17).

On June 23, 2015, Plaintiffs' counsel in seven of the Consolidated Actions filed motions to be appointed interim class counsel. Pritzker Levine, LLP, Cortchett, Pitre & Levine LLP, and Girard Gibbs LLP, counsel in the *Sterling International, JGX,* and *Estrella* actions, filed to be appointed interim co-lead counsel. Block & Leviton, LLP and Van Laningham Duncan PLLC, counsel in the *Wood* action, filed to be appointed, while the Joseph Saveri Law Firm, Inc., counsel in the *Babbitt* action also filed to be appointed. Robbins Geller and Edelson, counsel in the *Pick* and *Hunter* actions also have filed for appointment as interim co-lead counsel.[1]

## ARGUMENT

"Federal Rule of Civil Procedure 23(g)(3) authorizes district courts to designate interim counsel to act on behalf of a putative class before the final certification decision is made." *Flores v. Velocity Express, Inc*., 2013 U.S. Dist. LEXIS 77821, *29 (N.D. Cal. June 2, 2013). Moreover, "[i]n the absence of agreement between all involved counsel, the Court must itself endeavor to select counsel best able to represent the interests of the purported class." *Four in One Co. v. SK Foods, L.P*., 2009 U.S. Dist. LEXIS 28657, *11 (E.D. Cal. Mar. 19, 2009).

When deciding between the competing firms, the Court should consider four factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." *Flores,* 2013 U.S. Dist. LEXIS at 29.

The Foster attorneys have reviewed all four motions filed by all of the potential leadership firms, in which motions those firms have explained their credentials and positions. Friend Decl. ¶ 4. On review of all of the motions, the choice seems clear: Robbins Geller and

---

[1] For the sake of brevity and consistency, the firms seeking appointment as interim co-lead counsel will be referred to collectively hereinafter as "the competing firms."

RESP. TO MTNS. TO APPOINT                         CASE NO. 5:15-CV-00807-RMW
INTERIM CLASS COUNSEL                                                   3

1 Edelson are the best suited, best situated, and best choice to be interim lead counsel in this
2 matter.

### I. Robbins Geller and Edelson are Uniquely Qualified to be Appointed Interim Lead Counsel Due to Their Experience in Similar Matters

Again, there is no doubt that all of the firms who have moved for appointment as interim class counsel are highly accomplished. However, selecting interim class counsel is not simply a matter of looking at who has the most impressive resume in the abstract; in a case such as this, each firm is impressive. Rather, interim class counsel must be selected based upon who among these quality contenders is "best able to represent the interests of the purported class." *Four in One Co.*, 2009 U.S. Dist. LEXIS at 11.

In the *Four in One* litigation, an anti-trust class action, Judge Morrison C. England Jr. appointed Quinn Emanuel and Hausfeld LLP to be interim lead counsel out of multiple, well-qualified suitors. *Id.* at 14. In doing so, Judge England noted the following about the Quinn Emanuel firm:

> Significantly, too, the firm, and in particular Stephen Neuwirth, one of the attorneys proposed as a member of its representational team for this litigation, currently serves as co-lead interim counsel for direct purchase plaintiffs in both *In re Rail Fuel Surcharge Antitrust Litigation* (MDL 1869 (D.D.C.) (which involves purported anticompetitive conduct in connection with fuel surcharges assessed by the nation's four largest railroads) and *Universal Delaware Inc., et al. v. Comdata Corp.*, Civ. No. 07 1078 [13] (JKG (HSP (E.D. Pa.), an action alleging antitrust violations in the market for credit cards utilized by truck fleets at truck stops. Quinn Emanuel's combination of significant trial experience, experience in representing class action plaintiffs in analogous antitrust litigation, and its nationwide resources make it stand out in this Court's estimation after application of the Rule 23(g) factors enumerated above.

*Id.* at 13.

Judge England concluded that this specific related experience made Quinn Emanuel "stand out from the rest with regard to qualifications particularly applicable to [the] case." *Id.* at 14. This is also the circumstance with the Robbins Geller and Edelson firms in the instant matter.

Robbins Geller and Edelson's history in consumer privacy and technology class actions, documented in their motion, is compelling. Since a decade ago, in 2005, when this area of law was in its nascent stages, Robbins Geller has a chronicled history of excellence in this arena. Foster will highlight two of them here.

In the case of *Kehoe v. Fid. Fed. Bank & Trust*, 421 F.3d 1209 (11th Cir. Fla. 2005), Robbins Geller succeeded in overturning an adverse ruling at the District Court level in the Eleventh Circuit, where a unanimous panel ruled that a "plaintiff need not prove actual damages to recover liquidated damages for a violation of the DPPA." In *Kehoe* the defendant purchased the names and addresses of all individuals who had registered a vehicle less than three years old with the Florida DMV in Palm Beach, Martin, and Broward Counties. Over three years, the defendant purchased the names and addresses of roughly 565,600 citizens. *Id.* at 1210-1211. The defendant then sent mass solicitations to those individuals, violating their privacy. *Kehoe* was settled for $50 million dollars.

Another notable success was the case of *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942 (S.D. Cal. 2012). In that case, Robbins Geller was co-lead counsel. The *Sony Gaming* litigation resulted from hackers exploiting a problem in Sony's security, which allowed the hackers to access sensitive information of individuals using Sony's online gaming networks. *Id.* at 950-951. Sony sought dismissal of the claims on Article III standing grounds, arguing that, although sensitive information was compromised, the plaintiffs could not show how, or if, their personal information was actually used or seen by hackers. *Id.* at 957. The court rejected *Sony's* arguments, agreeing with the arguments advanced for the class that the risk of future harm conferred standing. *Id.* at 958.

The holding in *Sony Gaming* has been recognized as an important ruling for privacy law. In an article appearing in Law360, Pepper Hamilton privacy attorney Jeffrey Vagle noted that "[a] few years ago, the plaintiffs likely wouldn't have gotten past the standing stage." Allison Grande, *Sony Breach Ruling Provides Opening For Plaintiffs Bar,* Law360 (Jan. 22, 2014), *available at* http://www.law360.com/articles/503008/sony-breach-ruling-provides-opening-for-plaintiffs-bar. Mr. Vagle noted that courts were coming around to the proposition

that a data breach alone can confer standing on a plaintiff in the right circumstances. This is in no small part due to the work of firms who specialize in the area, such as Robbins Geller. Having a firm in the interim lead that has fought these battles and won would confer a substantial benefit on the class.

Edelson is similarly experienced, and has enjoyed great success in this field. Particularly relevant here, Edelson was lead counsel in *Harris v. comScore*, No. 11-cv-5807 (N.D. Ill.), a class action that bears strong similarities to the instant matter. In *Harris* the defendant installed software that could access and intercept user files and communications. Accordingly, the *Harris* litigation and the *Lenovo* litigation share several causes of action. *Harris v. comScore, Inc.,* 292 F.R.D. 579, 584 (N.D. Ill. 2013).

Eventually, Edelson led the way in *Harris* in securing a $14 million dollar settlement that would result in cash payouts to the class. Jay Edelson himself noted that "class members will be receiving actual cash….we're quite pleased." Andrew Scurria, *ComScore Pays $14M To Escape Massive Privacy Class Action,* Law360 (June 4, 2014), *available at* http://www.law360.com/articles/544569/comscore-pays-14m-to-escape-massive-privacy-class-action.

A blog entry by Ballard Spahr's Privacy and Data Security Group noted the success of the *Harris* litigation, and its impact on the privacy field, as follows:

> The holding in Harris v. comScore may contribute to an already increasing number of class action privacy suits under federal law. Historically, other circuits (including the Fourth Circuit) have found that putative class members lack standing to pursue class actions where there is no evidence of actual harm. Following similar holdings in recent Ninth Circuit cases, however, the Seventh Circuit's comScore opinion continues a trend in finding that statutory damages under federal privacy laws are sufficient to satisfy the commonality and predominance requirements of a Rule 23(b)(3) class. Whether other circuits will join the Seventh and Ninth Circuits remains an open, and important, question.

Daniel A. Nadel and Philip N. Yanella, *Seventh Circuit Upholds Privacy Class Action under Federal Law,* Ballard Spahr, LLP, (July 24, 2013), *available at*

*http://www.ballardspahr.com/alertspublications/legalalerts/2013-07-24-seventh-circuit-upholds-privacy-class-action-under-federal-law.aspx.*

Again this demonstrates how attorneys with expertise and experience in this area, such as the Edelson firm in the *Harris* case, have contributed greatly to a changing, more consumer-friendly landscape for privacy law in the United States. This putative class should likewise have the opportunity to benefit from such experienced leadership.

**II. Robbins Geller and Edelson's Work in Identifying the Class Claims, and Their Unique Resources, Further Demonstrate the Expertise They Can Bring to this Litigation.**

Out of all of the firms involved in this litigation, none have shown the same technological experience and acumen that the Robbins Geller and Edelson firms have demonstrated. This is further exhibited by the substantial leg work, and new-fashioned sleuthing, that was done by these firms on Lenovo's laptops.

The *Hunter* and *Pick* complaints were the first complaints in this matter that went beyond the "what" and into the "how." By way of example, the *Hunter* complaint was the result of an actual technical analysis of Lenovo's hardware. This gave Edelson information that the media did not have yet, and the vast majority of the class would not know, and likely saved a great deal of time and effort that would have been otherwise wasted in early discovery. Due to the fact that Edelson maintains "in-house computer forensic investigators" Edelson can provide certain critical support that no other firm in this case is likely to be able to provide. (DN 6 at 15).

Robbins Geller, likewise, boasts uniquely relevant resources. Robbins Geller has the capability to store more than 150 *terabytes* of data. Robbins Geller could actually store the entire Library of Congress on their hard drives. Fifteen times. Catherine Armitage, *Optimism shines through experts' view of the future*, The Sydney Morning Herald, (March 24, 2012), *available at* http://www.smh.com.au/national/optimism-shines-through-experts-view-of-the-future-20120323-1vpas.html. This kind of electronic muscle will save the putative class the expense and inconvenience of having to have offsite vendors store information, as this case could easily involve the production of millions of documents in any number of formats.

## **CONCLUSION**

Robbins Geller and Edelson are the best qualified firms to represent the interests of this particular putative class, given the subject matter and size of the case. Foster respectfully requests that this Court grant Robbins Geller and Edelson's Motion for their Appointment as Interim Co-Lead Counsel.

Dated: July 7, 2015                                              Respectfully Submitted

                                                                 BISHOP KORUS FRIEND, P.S.C.
                                                                 JOHN S. FRIEND

                                                                 s/John S. Friend
                                                                 John S. Friend

                                                                 Robert W. "Joe" Bishop
                                                                 Tyler Z. Korus
                                                                 6520 Glenridge Park Place
                                                                 Suite 6
                                                                 Louisville, KY  40222
                                                                 Telephone:  (502)425-2600
                                                                 firm@bishoplegal.net

                                                                 *Counsel for Plaintiff Foster*

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Email Notice List.

                                                                 s/ John S. Friend
                                                                 John S. Friend