LESLEY E. WEAVER (SBN 191305)
**BLOCK & LEVITON LLP**
492 9TH STREET, SUITE 260
OAKLAND, CA 94607
TEL:  (415) 968-8999
FAX:  (617) 507-6020
lweaver@blockesq.com

*Attorney for Plaintiffs*

[Additional Counsel on Signature Page]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| **IN RE: LENOVO ADWARE LITIGATION**<br><br>THIS FILING RELATES TO ALL ACTIONS | Case No. 5:15-MD-02624-RMW<br><br>***WOOD* PLAINTIFFS' COUNSEL'S OMNIBUS RESPONSE TO COMPETING MOTIONS TO APPOINT INTERIM LEAD COUNSEL**<br><br>Date: July 17, 2015<br>Time: 9:00 a.m.<br>Hon. Ronald M. Whyte |

## **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.    ARGUMENT.........................................................................................................2

    A.    Proposed Lead Counsel's Work In This Litigation Warrants A Leadership Role ...2

        1.    All Of the Movants Seeking Leadership Identified Ongoing Harm; Only Proposed Lead Counsel Took Action To Address That Harm .....................2

        2.    Proposed Lead Counsel's Complaint Demonstrates The Quality Of Their Investigation..........................................................................................4

        3.    As With Other Movants, Proposed Lead Counsel Participated In Limited, Highly Preliminary Discussions With Defendants Regarding Mediation and Other Matters ................................................................................6

        4.    Proposed Lead Counsel Will Maintain Reasonable Fees and Expenses ......6

        5.    Only Proposed Lead Counsel Have A North Carolina Presence .................9

        6.    The Appointment Of Lead Counsel Is Not—And Should Not Be—A Popularity Contest.................................................................................9

    B.    All Of The Moving Firms Are Highly Qualified And Proposed Lead Counsel Could And Would Work With Any Of The Movants.............................................10

III.    CONCLUSION....................................................................................................12

i

*WOOD* PLAINTIFFS' COUNSEL'S OMNIBUS RESPONSE TO COMPETING MOTIONS TO APPOINT
INTERIM LEAD COUNSEL
Case No. 5:15-MD-02624-RMW

# TABLE OF AUTHORITIES

**Cases**

*Il Fornaio (Am.) Corp. v. Lazzari Fuel Co., LLC*,
   2014 U.S. Dist. LEXIS 25518 (N.D. Cal. Feb. 27, 2014) ..........................................................9

*In re Air Cargo Shipping Services Antitrust Litigation*,
   240 F.R.D. 56 (E.D.N.Y. 2006) ..................................................................................................9

*In re Shop-Vac Mktg. & Sales Practices Litig.*,
   2013 U.S. Dist. LEXIS 7023 (M.D. Pa. Jan. 17, 2013) ..............................................................9

*Kurnick v. Starbucks Corp.*,
   No. C11-1985MJP (Transcript) (W.D. Wa. Feb. 13, 2012) .......................................................3

**Rules**

Fed. R. Civ. P. 23(g)(1)(A)(i) ...........................................................................................................3

**Other Authorities**

John Coffee Jr., *Rescuing The Private Attorney General: Why The Model of the Lawyer As Bounty Hunter Is Not Working*, 42 MD. L. REV. 215 (Winter 1983) ..................................10

Myriam Gilles and Gary Friedman, *After Class: Aggregate Litigation in the Wake of AT&T Mobility v Concepcion*, 79 U. CHI. L. REV. 623 (Spring 2012) ....................................10

*WOOD* PLAINTIFFS' COUNSEL'S OMNIBUS RESPONSE TO COMPETING MOTIONS TO APPOINT
INTERIM LEAD COUNSEL
Case No. 5:15-MD-02624-RMW

Van Laningham Duncan PLLC ("VLD" or "Van Laningham Duncan") and Block & Leviton LLP ("B&L" or "Block & Leviton" and, collectively with VLD, "Proposed Lead Counsel"), co-counsel for Plaintiffs in *Wood, et al. v. Lenovo (United States) Inc., et al.*, No. 5:15-CV-77-D (E.D.N.C.) (the "Wood Action"), submit this memorandum in response to the Motions of Ross M. Babbitt (the "*Babbitt* Motion"), Lukas Pick and David Hunter (the "*Pick* Motion" submitted by the "*Pick* Group"), and the Sterling Plaintiffs (the "*Sterling* Motion" submitted by the "*Sterling* Group") to appoint their respective counsel as Interim Co-Lead Counsel.

## I.   INTRODUCTION

Every firm that is seeking leadership in this case is well-qualified and capable of providing effective representation to Lenovo consumers. Each firm has lawyers with decades of experience in complex class action litigation who have recovered billions of dollars for clients (and the classes they represent).

If the Court wishes to appoint more than two firms to lead this litigation, Proposed Lead Counsel would be happy to work with any of the other movants. Indeed, Block & Leviton is currently acting in a co-leadership role in other matters with Cotchett Pitre and Robbins Geller and co-leading a case in which Pritzker Levine is acting as supporting counsel. The firm has previously acted as co-lead counsel with Girard Gibbs as well. Therefore, there is no dispute that Proposed Lead Counsel can work effectively and efficiently with any of the other well-qualified counsel.

More to the point, in this case, Proposed Lead Counsel sought immediate relief for the putative class, in a case where all plaintiffs agree that harm is immediate and ongoing. Yet only Proposed Lead Counsel expended the resources to seek injunctive relief, which the facts here clearly called for. Moreover, Proposed Lead Counsel's proposed fee schedule is the most reasonable. As a result, whatever size structure the Court decides to appoint, Proposed Lead Counsel deserve a lead role.

## II. ARGUMENT

### A. Proposed Lead Counsel's Work In This Litigation Warrants A Leadership Role

#### 1. All Of the Movants Seeking Leadership Identified Ongoing Harm; Only Proposed Lead Counsel Took Action To Address That Harm

Proposed Lead Counsel's focus, at every stage of this litigation, is to further the best interests of the Class. They will work actively and efficiently to protect the Class from harm and to otherwise advance the Class members' interests.

All movants alleged that Class members were suffering <u>ongoing</u> harm. Indeed, many other plaintiffs specifically included prayers for injunctive relief but, unlike the *Wood* plaintiffs and Proposed Lead Counsel, failed to take immediate steps to secure it. *See, e.g.*, *Hunter* Compl. at 20 (Ex. 3 (Docket No. 6-2 at 110) to Dearman Aff. (Docket No. 6-1)); *Pick* Compl. at 23 (Ex. 4 (Docket No. 6-2 at 136) to Dearman Aff. (Docket No. 6-1)); *Estrella* Compl. at 43 (Docket No. 1 in Case No. 3:15-CV-1044 (N.D. Cal.)).

From the *Sterling* Group:

- The *Sterling* plaintiff (represented by Pritzker Levine) alleged that, "[w]hile Lenovo now admits that the Superfish program creates a severe security risk for its customers who purchased notebook computers with the program preinstalled, **<u>Lenovo has not attempted to directly notify those customers</u>** to inform them that their computers are not secure." *Sterling* Compl. ¶ 42 (Docket No. 1 in Case No. 5:15-CV-87 (N.D. Cal.)) (emphasis added).

- The *Estrella* plaintiffs (represented by Girard Gibbs) alleged that the Superfish Software "**<u>exposes</u>** [Lenovo customers] to severe security risks …." *Estrella* Compl. ¶ 5 (Docket No. 1 in Case No. 3:15-CV-1044 (N.D. Cal.)) (emphasis added).

- Plaintiff JGX, Inc. (represented by Cotchett Pitre) alleged that "Plaintiff and the Class, to protect themselves and their confidential information, **are now forced** to spend time and money to delete the Superfish Software from their laptops." JGX, Inc. Compl. ¶ 54 (Docket No. 1 in Case No. 5:15-CV-1113 (N.D. Cal.)) (emphasis added).

From the *Pick* Group:

- The *Hunter* plaintiff (represented by the Edelson firm) alleged that "[a]nyone using [a publicly released program] at an airport, coffee shop, or another public place **can eavesdrop** on the confidential conversations of the potentially millions of consumers with the Superfish Surveillance Software <u>still installed</u> on their computers." *Hunter* Compl. ¶ 25 (Ex. 3 (Docket No. 6-2 at 97) to Dearman Aff. (Docket No. 6-1)) (emphasis added).

- The *Pick* plaintiff (represented by Robins Geller) alleged the "intercepti[on]" of "electronic communications sent or received by the [class members'] computers, from January 1, 2014 **through the present** …." *Pick* Compl. ¶ 2 (Ex. 4 (Docket No. 6-2 at 115) to Dearman Aff. (Docket No. 6-1)) (emphasis added). He also alleged that Defendants' conduct "has put the electronic information security of millions of Class members at risk. *Id.* ¶ 3.

The Babbitt Complaint alleged that:

- Superfish's 'visual discovery' form of adware … exposes the user to significant security risks from computer hackers and others." (*Babbitt v. Lenovo (United States) Inc., et al.*, No. 5:15-cv-01712, Docket. No. 1 ¶ 3 (N.D. Cal. Apr. 15, 2015) and "even if the Superfish program is disabled or uninstalled, this does not by itself remove the self-signed root certificate that creates the high security issues." (*Id.* ¶ 26).

Only the *Wood* plaintiffs and Proposed Lead Counsel took action to address the ongoing harm.[1] Proposed Lead Counsel moved for a preliminary injunction to require Lenovo to provide notification of the risk and instructions for removal to affected customers (as well as for expedited discovery to clarify the scope of potential ongoing harm). *See* Leviton Decl. ¶¶ 6-12 (Docket No. 3-2). After the *Wood* plaintiffs filed their motion, Lenovo finally attempted to directly notify some of its customers of the risks caused by Lenovo's pre-installation of Superfish on its customers' computers and how to remove the software. *See id.* ¶ 10.[2]

The *Wood* plaintiffs respectfully submit that this record and their actions speak louder than words.[3] The demonstrated leadership of Proposed Lead Counsel warrants their appointment here as Interim Co-Lead Counsel to continue to lead the pursuit of immediate injunctive relief and a final resolution of this case on behalf of putative Class members. *See* Fed. R. Civ. P. 23(g)(1)(A)(i).

---

[1] The *Sterling* plaintiffs and their counsel appear particularly interested, now, in maneuvering this case to a settlement as soon as possible. Docket No. 5 at 16-17. Proposed Lead Counsel, by contrast, believe that the purpose of civil litigation is to prepare disputes for resolution by a judge or jury, typically at trial, subject to their responsibilities to appropriately explore settlement issues, make recommendations to their clients on such matters, and ultimately follow their clients' settlement instructions.

[2] The North Carolina court did not have an opportunity to rule upon the Motion for Preliminary Injunction prior to the Judicial Panel on Multidistrict Litigation transferring all of the actions to this Court.

[3] Certain other movants, for example, speak about their efforts to stay this litigation. *See* Docket No. 5 at 3; Docket No. 6 at 8. Proposed Lead Counsel, however, do not "believe that postponements … settle cases," but rather that "deadlines settle cases." *Kurnick v. Starbucks Corp.*, No. C11-1985MJP (Transcript j) (W.D. Wa. Feb. 13, 2012) at 7:14-15.

      2.      *Proposed Lead Counsel's Complaint Demonstrates The Quality Of Their Investigation*

The Complaint and Amended Complaint filed by the *Wood* plaintiffs and Proposed Lead Counsel further demonstrate their ability to provide excellent representation to the Class as a whole. There are a number of other excellent complaints filed by other able counsel in the related cases, as well. The efforts by other counsel to distinguish their complaints meaningfully, however, fall short.

For example, the *Pick* Motion includes a recitation regarding the investigation performed by their attorneys and resulting allegations in the *Pick* and *Hunter* complaints. *See* Docket No. 6 at 5-6. While this work is commendable, it is undeniable that numerous published accounts by security researchers and journalists about the operation of Superfish software earlier this year contained all of the significant details that form the basis of all the complaints filed. These include the facts that Superfish "utilized third-party Komodia's Redirector application," that Superfish "installed a 'root certificate authority certificate,'" that "remote attacks would be able to leverage Visual Discovery to intercept a user's encrypted web traffic – due in large part to the fact that the Komodia proxy used the same private key (and weak passphrase) for each and every Lenovo laptop," and that Lenovo developed a business relationship with Superfish. *Id.* Similar allegations based on Proposed Lead Counsel's own investigation and review of public materials appear in the *Wood* plaintiffs' pleadings. *See* Docket No. 3-4 ¶¶ 48-50, 52-53, 60-61, 69. Furthermore, the *Pick* plaintiffs' argument that "other complaints filed in this MDL … lacked any allegations demonstrative of an understanding of ***how*** the Class's communications were intercepted," Docket No. 6 at 6 (emphasis in original), could not be directed at the *Wood* plaintiffs, who thoroughly explained Superfish's operation, *see* Docket No. 3-4 ¶¶ 41-55.

The *Babbitt* plaintiffs argue for appointment of their choice of counsel because of "claims which are unique to the Babbitt Complaint, including two claims under the federal [RICO] statute…." Docket No. 7 at 2. In fact, however, the *Wood* plaintiff *also included a RICO claim*, among many other state and federal law claims. *See* Docket No. 3-4 ¶¶ 92-95. The *Babbitt* plaintiffs also tout the fact that Mr. Babbitt "purchased his Lenovo computer directly from Lenovo.com." Docket No. 7 at 3. This is not a unique fact either, as one of the *Wood* plaintiffs, Ryan Tuckerman, also purchased his computer directly from Lenovo. *See* Docket No. 3-4 ¶ 22 and Leviton Response Dec., Ex. C.

4

*WOOD* PLAINTIFFS' COUNSEL'S OMNIBUS RESPONSE TO COMPETING MOTIONS TO APPOINT
INTERIM LEAD COUNSEL
Case No. 5:15-MD-02624-RMW

The *Sterling* Group discusses the fact that certain plaintiffs also sued Lenovo Group, Ltd., the Hong Kong-based parent of Lenovo (United States) Inc. *See* Docket No. 5 at 1; Docket No. 5-1 ¶ 3 (claiming that Pritzker Levine "was the first firm to identify a jurisdictional basis to name Lenovo Group Limited"). The naming of this additional defendant in some complaints is not a basis to grant the *Sterling* Motion here. Pritzker Levine's proposed co-counsel, Girard Gibbs, apparently concluded—like Proposed Lead Counsel and most other counsel—that the appropriate Lenovo party was Lenovo (United States) Inc., the entity that sold the computers at issue. *See Estrella* Compl. (Docket No. 1 in Case No. 3:15-CV-1044 (N.D. Cal.)) (not naming the Hong Kong entity).[4]

When Lenovo (United States) Inc. responded to the *Wood* plaintiffs' motion for preliminary injunction, it did not deny that it was the manufacturer and seller of the machines in question. *See generally* Docket No. 3-6. Instead, referring to itself throughout the response brief as "Lenovo," *id.* at 1, Lenovo (United States) Inc. confirmed that the Superfish software "shipped on <u>Lenovo devices</u>," and that "<u>Lenovo preloaded</u> the Software onto several models of IdeaPad laptops beginning in September 2014," *id.* at 4-5 (emphases added).[5]

It is unsurprising that capable lawyers, based on their own investigations and a lengthy public record, cast their allegations in slightly different terms with slightly different claims. The core factual and legal issues, however, are all the same. The *Wood* plaintiffs' pleadings demonstrate a capable and comprehensive take on the matter, and set the stage for effective litigation of the respective liabilities of

---

[4] This is not to say that the naming of this additional defendant is incorrect, but simply demonstrates that qualified counsel can take different, informed positions regarding litigation strategy.

[5] The *Wood* plaintiffs' counsel investigated this issue and discovered that, in July 2013, Lenovo (United States) Inc. admitted in another federal case that it sells the "U Series" of laptop computers. *See* Declaration of Jason M. Leviton In Support of Wood Plaintiffs' Counsel's Omnibus Response to Competing Motions to Appoint Interim Lead Counsel ("Leviton Resp. Decl."), Ex. A ¶ 2. Peter Hortensius, Lenovo's Chief Technology Officer and the face of its limited response to the Superfish crisis, works at the Morrisville, North Carolina headquarters of Lenovo. *See* LinkedIn: Peter Hortensius (accessed Mar. 22, 2015), https://www.linkedin.com/profile/view?id=201738093. (Efforts by other counsel to serve Lenovo Group, Ltd. at the Morrisville headquarters were rejected by a Lenovo attorney. *See* MDL No. 2624, Docket No. 52 at 6-7.) Moreover, Mr. Hortensius submitted a declaration in federal court that, at least as of April 2006, he was an employee of Lenovo (United States) Inc. Leviton Response Decl., Ex. B ¶ 1.

Lenovo (United States) Inc., Superfish, and any other parties shown to be responsible for the harm that has occurred (and the ongoing risks to Class members' information security).

      3.    *As With Other Movants, Proposed Lead Counsel Participated In Limited, Highly Preliminary Discussions With Defendants Regarding Mediation and Other Matters*

The *Pick* Group's Motion places significant emphasis on its counsel's discussions with Defendants regarding an early mediation. Docket No. 6 at 2, 8. After learning that certain counsel had raised the question of mediation with defense counsel, Proposed Lead Counsel spoke to defense counsel to inquire about those preliminary conversations. *See* Leviton Response Decl. ¶ 2. But—as the *Pick* Plaintiffs note—Defendants' consistent position was that they would only agree to participate in a mediation if *all* plaintiffs' firms did, which included well over twenty firms. *Id.* Proposed Lead Counsel was highly skeptical of such a potential resolution, but was willing to discuss the issue further if defense counsel were so inclined. Not surprisingly, the discussions ended as quickly as they started. *Id.* Proposed Lead Counsel had somewhat more productive conversations with defense counsel regarding a resolution of their PI Motion, but those too were ultimately unsuccessful.

      4.    *Proposed Lead Counsel Will Maintain Reasonable Fees and Expenses*

In addition to the other factors discussed here and in Proposed Lead Counsel's prior submission, the Court's Case Management Order (Docket No. 8 ¶ 16(f)) states that counsel's "ability to maintain reasonable fees and expenses" is one of the main criteria the Court will consider in the appointment of lead counsel. This factor also favors the appointment of Proposed Lead Counsel.

Proposed Lead Counsel are the *only* moving firms to have supplied the Court with information about their customary hourly rates. *None* of the competing movants offered similar information. Recent fee requests filed by competing movants in other cases, however, show that Proposed Lead Counsel's fees compare favorably:

6

*WOOD* PLAINTIFFS' COUNSEL'S OMNIBUS RESPONSE TO COMPETING MOTIONS TO APPOINT
INTERIM LEAD COUNSEL
Case No. 5:15-MD-02624-RMW

| HOURLY RATES (Sorted By Top Partner Rate) | | |
| --- | --- | --- |
| **Firm** | **Hourly Rate (Partners)** | **Hourly Rate (Associates)** |
| Saveri Law Firm (May 2015)[6] | $960 | $600-$465 |
| Cotchett Pitre (June 2015)[7] | $900-$500 | $415-$360 |
| Robbins Geller (November 2014)[8] | $860-$660 | $495-$335 |
| Girard Gibbs (May 2015)[9] | $845-$565 | $385-$350 |
| Edelson (March 2015)[10] | $685-$450 | $335 |
| Pritzker Levine (May 2015)[11] | $675 | $425 |
| *Block & Leviton*[12] | $650 | $495-$425 |
| *Van Laningham Duncan*[13] | $580-$450 | $300 |

---

[6] *In re High-Tech Employee Antitrust Litigation*, No. 5:11-cv-02509-LHK, Docket No. 1073-3 (N.D. Cal. May 7, 2015).

[7] *In re Hewlett-Packard Copmany Shareholder Derivative Litigation*, No. C-12-6003, Docket No. 365-4 (N.D. Cal. Jun. 19, 2015).

[8] *Negrete v. Allianz Life Ins. Co. of N. Am.*, 2:05-cv-06838-CAS-MAN, Docket No. 1259-3 at 1 (C.D. Cal. Nov. 7, 2014).

[9] *In re High-Tech Employee Antitrust Litigation*, No. 5:11-cv-02509-LHK, Docket No. 1069 ¶ 45 (N.D. Cal. May 7, 2015).

[10] *In re LinkedIn Privacy Litigation*, No. 12-cv-03088-EJD, Docket No. 141 at 15 (N.D. Cal. Mar. 30, 2015).

[11] *Il Fornaio (America) Corp. v. Lazzari Fuel Co., LLC*, 2015 U.S. Dist. LEXIS 66145 (N.D. Cal. May 20, 2015).

[12] Leviton Dec. ¶ 16(a)-(d).

[13] Docket No. 3-10 ("Duncan Dec.") ¶ 6(a)-(d).

Proposed Lead Counsel have also proposed to staff the case efficiently. Proposed Lead Counsel propose to assign four partners and three associates as lead attorneys—using less-expensive attorneys as necessary, including for low-level tasks such as first-level document review. *See* Leviton Dec. ¶¶ 16-17 and Duncan Dec. ¶ 6(a)-(d). The *Sterling* Group proposes to staff the case with seven partners and two associates. *See* Docket No. 5-1 ¶ 7 (Pritzker Levine will assign two partners and one associate); Docket No. 5-2 ¶ 8 (Girard Gibbs will assign two partners and one associate); Docket No. 5-3 ¶¶ 10-12 (Cotchett Pitre proposes to assign three partners). Neither the *Pick* Group nor Babbitt proposed any particular staffing arrangement.

In addition, Proposed Lead Counsel are willing to enter into a fee arrangement prior to the selection of Interim Lead Counsel. The proposed fee structure would be based on the size of the overall recovery as well as posture of the litigation when a settlement or judgment was reached. More specifically, Proposed Lead Counsel propose the following overall caps on any fee application:[14]

| AMOUNT OF RECOVERY | Commencement of Case to Start of Fact Discovery | Discovery Through Briefing on Summary Judgment Motions | Pre-Trial Proceedings & Trial Through Verdict | Post-Verdict Through Appeal |
|---|---|---|---|---|
| **$0-25 Million** | 19% | 22% | 29% | 32% |
| **$25-50 Million** | 17% | 20% | 25% | 29% |
| **$50-100 Million** | 15% | 18% | 23% | 27% |
| **$100-150 Million** | 13% | 16% | 22% | 25% |
| **$150-250 Million** | 11% | 14% | 19% | 21% |
| **More than $250 Million** | 10% | 12% | 17% | 19% |

---

[14] The proposed caps on any fee application are progressive—*i.e.*, like income tax brackets—to avoid misalignment between counsel's incentives and those of the putative Class as recoveries approach the various thresholds.

### 5. Only Proposed Lead Counsel Have A North Carolina Presence

While each group seeking leadership has a presence in California (where Superfish is headquartered), Proposed Lead Counsel are the only group with a presence in North Carolina (where Lenovo (United States) Inc. is headquartered). Van Laningham Duncan is headquartered in Greensboro—approximately an hour's drive from Lenovo's headquarters in Morrisville—which will maximize Proposed Lead Counsel's efficiency in the discovery process, and will also reduce costs to the Class.

### 6. The Appointment Of Lead Counsel Is Not—And Should Not Be—A Popularity Contest

Finally, the *Sterling* Plaintiffs' Motion relies heavily on their claim to represent "84 of the 104 plaintiffs in 19 of the 27 actions that are now part of this MDL litigation[.]" Docket No. 5 at 1. But "appointment of counsel is not supposed to be a popularity contest, and the number of attorneys supporting a given candidacy is not included among the factors set forth in Rule 23(g)." *In re Shop-Vac Mktg. & Sales Practices Litig.*, 2013 U.S. Dist. LEXIS 7023, at *10-11 (M.D. Pa. Jan. 17, 2013); *see also In re Air Cargo Shipping Services Antitrust Litigation*, 240 F.R.D. 56, 58 (E.D.N.Y. 2006) (although support from other attorneys may serve as "some measure of the respect [candidates] command," the "appointment is not supposed to be a popularity contest").

There are important policy considerations that caution against courts deferring to a popular vote.[15] Among other things, deferring to the result of a popular vote encourages counsel to devote time to coalition-building instead of litigating on behalf of class members. *See Il Fornaio (Am.) Corp. v. Lazzari Fuel Co., LLC*, 2014 U.S. Dist. LEXIS 25518, at *9 (N.D. Cal. Feb. 27, 2014) ("holding 'conferences' … and having lunch" with other plaintiffs' firms does not provide a significant benefit to the class). Deferring to a popular vote also encourages vote-trading across cases based on the interests of the

---

[15] Proposed Lead Counsel are not suggesting that these practices occurred here, but rather that such a popularity contest can lead to problematic practices.

lawyers, not the class. *See* Myriam Gilles and Gary Friedman, *After Class: Aggregate Litigation in the Wake of AT&T Mobility v Concepcion*, 79 U. CHI. L. REV. 623, 670 (Spring 2012) ("law firms vie with one another for lead counsel positions, cutting coalition deals based not on operational merits but on the terms of the last coalition deal and the one before that.").[16]

### B. All Of The Moving Firms Are Highly Qualified And Proposed Lead Counsel Could And Would Work With Any Of The Movants

All of the firms that have sought leadership roles in this litigation are highly qualified. All have recovered billions for clients in complex litigation and propose to staff this matter with highly qualified individual attorneys. Should the Court desire a broader leadership structure than the two-firm structure that Proposed Lead Counsel propose, Proposed Lead Counsel would be happy to share a leadership role with any of the other movants. There are many pre-existing relationships that would facilitate such a collaboration:

**Block & Leviton and Cotchett Pitre** share or have shared co-leadership roles in two of the three cases mentioned by Mr. Edling in his declaration: *In re BP Securities Litigation*, MDL No. 10-md-2185 (S.D. Tex.) and *Shephard v. Lowe's, HIW, Inc.*, 12-cv-03893 (N.D. Cal.) (White, J.). Block & Leviton and Cotchett Pitre are also working together—with Mr. Edling and Mr. Leviton as lead attorneys—in litigation against 23andMe, Inc. (*see Livingston v. 23andMe, Inc.*, CPF-14-513943 (Cal. Sup. Ct.)). There is no question that Cotchett recognizes Block & Leviton's qualifications. *See Lowe's*, 12-cv-03893, Docket No. 41 at 14 (brief signed by Mr. Edling stating "Plaintiff's chosen counsel is experienced and qualified in class action litigation. In fact, Block & Leviton was certified to represent the general contractor class in Massachusetts and the firm's attorneys collectively have more than 50 years of class

---

[16] Deferring to a popular vote can also encourage make-work assignments to generate lodestar for firms supporting the leadership. *See* John Coffee Jr., *Rescuing The Private Attorney General: Why The Model of the Lawyer As Bounty Hunter Is Not Working*, 42 MD. L. REV. 215, 263-264 (Winter 1983) (lead counsel can award "titles and fabricated assignments … to form a majority coalition and organize the steering committee.").

action experience, recovering more than $1 billion on behalf of various classes over the years.").

**Block & Leviton and Girard Gibbs** worked together as co-lead counsel in *In re Cole Credit Property Trust III, Inc. Derivative and Class Litigation*, No. 24-C-13-001563 (Md. Cir. Ct.). Thus, there is no question that Girard Gibbs recognizes Block & Leviton's credentials.

**Block & Leviton and Robbins Geller** have been successfully working together as co-lead counsel in *In re Onyx Pharmaceuticals, Inc. Shareholder Litigation*, No. CIV523789 (Cal. Sup. Ct.) since 2013. There is no question that Robbins Geller recognizes Block & Leviton's credentials. *See In re Onyx Pharmaceuticals, Inc. Shareholder Litigation*, No. CIV523789 (Cal. Sup. Ct. Mar. 6, 2014) (Plaintiff's Motion for Class Certification) (brief signed by Robbins Geller; stating that "the attorneys at Block & Leviton have been highly decorated by courts around the nation. With decades of complex litigation experience, they have successfully prosecuted class and private actions on behalf of individual and institutional [plaintiffs], recouping billions of dollars[.]").

**Block & Leviton and Pritzker Levine** are working together in *In re: Domestic Drywall Antitrust Litigation*, 13-MD-2437 (E.D. Pa.), a long-running litigation in which Block & Leviton is acting as co-lead counsel for indirect purchaser plaintiffs and the Pritzker firm is serving as supportive counsel.

Furthermore, Van Laningham Duncan's experience as trial counsel in bellwether cases in MDL No. 2187, *In re C.R. Bard, Inc., Pelvic Repair System Products Liability Litigation*, demonstrates the firm's ability to work effectively in the context of complex multi-district litigation with a large leadership structure.

In short, as set forth in their opening papers, Proposed Lead Counsel have the resources necessary to act together as lead counsel but have no objection to working with other movants, if the Court finds that a broad leadership structure is appropriate. Whatever size leadership the Court determines is appropriate, however, Proposed Lead Counsel deserve a seat at the table to continue pursuing the significant actions that they have already taken on behalf of the Class.

### III. CONCLUSION

For all the foregoing reasons, the Court should appoint Proposed Lead Counsel as interim lead counsel.

Respectfully submitted,

This the 7th day of July, 2015.

**BLOCK & LEVITON LLP**

/s/ Lesley Weaver
Lesley Weaver (SBN 191305)
492 9th Street, Suite 260
Oakland, CA 94607
Tel: (415) 968-8999
Fax: (617) 507-6020
Lesley@blockesq.com

Jason M. Leviton
Steven P. Harte
Joel A. Fleming (SBN 281264)
**BLOCK & LEVITON LLP**
155 Federal Street
Boston, MA 02110
Telephone: 617-398-5600
Facsimile: 617-507-6020
Jason@blockesq.com
Steve@blockesq.com
Joel@blockesq.com

Alan W. Duncan
N.C. State Bar No. 8736
Stephen M. Russell, Jr.
N.C. State Bar No. 35552
**VAN LANINGHAM DUNCAN PLLC**
300 N. Greene St., Suite 850
Greensboro, NC 27401
Tel: (336) 645-3320
Fax: (336) 645-3330
aduncan@vldlitigation.com
srussell@vldlitigation.com

*Counsel for Plaintiffs*