Joseph R. Saveri (State Bar No. 130064)
Matthew S. Weiler (State Bar No. 236052)
Kevin E. Rayhill (State Bar No. 267496)
JOSEPH SAVERI LAW FIRM, INC.
505 Montgomery Street, Suite 625
San Francisco, California 94111
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
mweiler@saverilawfirm.com
krayhill@saverilawfirm.com

Daniel R. Karon (pro hac vice pending)
Beau D. Hollowell (pro hac vice pending)
KARON LLC
700 W. Saint Clair Ave.
Cleveland, OH 44113
Telephone: (216) 551-9175
Facsimile: (216) 241-8175
dkaron@karonllc.com
bhollowell@karonllc.com

Vincent J. Esades (pro hac vice pending)
James W. Anderson (pro hac vice pending)
HEINS MILLS & OLSON PLC
310 Clifton Ave.
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
vesades@heinsmills.com
janderson@heinsmills.com

*Attorneys for Individual and Representative Plaintiff Ross M. Babbitt*

[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| In re LENOVO ADWARE LITIGATION<br><br>This document relates to:<br><br>ALL CASES | Lead Case No. 5:15-md-02624-RMW<br><br>**PLAINTIFF ROSS M. BABBITT'S OMNIBUS REPLY IN SUPPORT OF MOTION TO APPOINT INTERIM CLASS COUNSEL** |
|---|---|

## I. INTRODUCTION

The Joseph Saveri Law Firm ("JSLF" or the "Firm") has filed a Motion to be appointed Plaintiffs' Interim Class Counsel or, in the alternative, to appoint Joseph R. Saveri of JSLF and Daniel R. Karon of Karon LLC to the Interim Class Counsel Executive Committee ("Executive Committee"). Dkt. 7. In that Motion, JSLF emphasized the quality of the work it has done on this case, its track record of experience and success in complex class actions, its knowledge of the applicable law, and the resources it can and will bring to bear in pursuing this action. JSLF also stated its opinion that in order to conserve resources and prosecute this action in the most efficient way possible, the leadership structure for the Plaintiffs should be small, made up of one or at most two firms.

Several other parties in this action, including Defendant Lenovo (United States), Inc. ("Lenovo"), have filed responses to that motion. The Firm wishes to address some of the points raised in those responses.

## II. PROCEDURAL HISTORY

On April 15, 2015, JSLF filed a complaint on behalf of Plaintiff Ross M. Babbitt in the action captioned *Babbitt v. Lenovo (United States), Inc. et al.*, Case No. 5:15-cv-01712-RMW (N.D. Cal.). That action was consolidated for pretrial purposes with other similar actions in this action by order issued by this Court on June 24, 2015 in the first filed case, *Sterling International Consulting Group v. Lenovo (United States) Inc. et al*, Case No 5:15-cv-00807-RMW. Dkt. 41. On June 24, 2015, JSLF filed a Motion to Appoint Interim Class Counsel, which was one of four such motions. Dkt. 7. On July 7, 2015 responses were filed by:

- K & L Gates LLP on behalf of Defendant Lenovo, Dkt. 16;
- Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Edelson PC ("Edelson") on behalf of Plaintiffs Lukas Pick and David Hunter, Dkt. 18;
- Bishop Korus Friend, P.S.C. on behalf of Plaintiff Joel Foster (supporting Robbins Geller and Edelson's Motion to Appoint Interim Co-Lead Class Counsel), Dkt. 19;
- Van Laningham Duncan PLLC ("Van Laningham") and Block & Leviton LLP ("Block & Leviton") on behalf of Plaintiff Wood, Dkt. 20; and,

- Cotchett, Pitre, & McCarthy LLP ("Cotchett"), Girard Gibbs LLP ("Girard Gibbs"), and Pritzker Levine LLP ("Pritzker Levine") on behalf of Plaintiffs Sterling International Consulting Group, Rhonda Estrella, Sonia Ferezan, John Whittle, Alan Woyt, and JGX, Inc. d/b/a Lefty O'Doul's, Dkt. 21.

The Joseph Saveri Law Firm now files this reply.

## III. ARGUMENT

### A. Appointment of JSLF as Sole Lead Counsel Has Several Advantages

On its own, or in collaboration with one or more of the other firms who wish to be appointed, the Joseph Saveri Law Firm should be appointed Interim Class Counsel under Rule 23(g)(3). In the interests of efficiency the appointment of JSLF as Interim Lead Counsel, rather than one of the competing applications that have several firms in the leadership structure, is warranted here.

First, a smaller leadership team will streamline prosecution of this class action and ensure that the case will be managed efficiently to the benefit of the parties, the class and the Court. *See In re Hp Power Plug & Graphic Card Litig.*, Case No. C-06-02254 RMW, 2008 U.S. Dist. LEXIS 111427, at *9-10 (N.D. Cal. July 8, 2008) ("approving three firms as lead counsel risks unnecessary duplication of effort and inefficiency . . . . [¶] One reason for appointing lead counsel, preferably one or two firms, is to minimize coordination efforts and to create efficiencies."). While this is true even in the largest complex litigation, this is even more true here. In this JPML proceeding, each of the pending complaints alleges claims against essentially two defendants. While, of course, the defendants in this action may dispute the facts or applicable law—and raise affirmative defenses—proof of liability is relatively straightforward. A smaller leadership team is appropriate given the scope of the case.

JSLF has experience working productively with the firms who have filed applications, and would welcome their contributions as part of a leadership team or participation as part of an Executive Committee.[1]

[1] JSLF notes that certain briefs filed in opposition to the initial leadership applications denigrate the results obtained by one of the firms who have submitted an application. *See e.g.* Dkt. 18 at p. 6 (describing settlements achieved by Girard Gibbs as "paltry recoveries, at best," stating that due to its lack of relevant experience the Van Laningham firm "cannot be the best option for representing the proposed class," and accusing JSLF and other firms of "simply parrot[ing] news reports and press releases" in their complaints). We view this exercise as unwarranted and divisive. Among other things,

Second, it is important to note that JSLF will work closely with Heins Mills & Olson, P.L.C. ("Heins Mills"). Currently, Heins Mills is lead counsel in the *In re Target Corporation Customer Data Security Breach Litigation*, MDL No. 2522 (D. Minn.). This significant privacy class action litigation concerns a large data security breach made by Target Corporation. Heins Mills has successfully prosecuted this litigation; on March 19, 2014, Judge Magnuson gave preliminary approval to a settlement for up to $10 million. *In re: Target Corporation Customer Data Security Breach Litigation*, MDL No. 14-2522 (PAM/JJK), (D. Minn.), Dkt. 364. Heins Mills has filed the present case with the JSLF in this District because it knows of no better firm to work with on this matter. Heins Mills has worked with JSLF in a number of complex cases and has observed JSLF's elite litigation performance and ability to manage a case such as this efficiently and expeditiously. [2] There is little doubt that firms outside this District with actionable claims will participate under the leadership of JSLF in this case.

Third, JSLF was one of only two firms to advance a RICO theory of liability here,[3] and it was the only firm to advance a claim for civil conspiracy. This is not an ordinary consumer privacy or products liability case. Rather, the allegations here concern a scheme by Lenovo and Superfish to embed harmful software that hijacks the advertisements run on a consumer's computer. That this adware is harmful and diminished the value of the computer is bad enough, but treble damages are appropriate here in light of the scheme to install this software and reap advertisement revenue.

**B. Lenovo Understates its Exposure Here.**

Although the concerns in a contest for Interim Class Counsel are ordinarily limited to plaintiff's counsel and the court, Lenovo has taken the somewhat unusual step of weighing in even though it is one

---

such comparisons are difficult as each case has its own characteristics: facts and applicable law differ as well as the ability of wrongdoers to provide redress to those injured.

[2] The Robbin Geller Response notes that JSLF is a very successful "***antitrust***" law firm. Dkt. 18 at p. 6 (emphasis in original). Far from a criticism, we of course take that as recognition of expertise in a complex challenging area of the law in which only a small group of lawyers and law firms succeed. Antitrust cases are paradigms of complex litigation and present a host of complex legal and procedural issues, and significant management challenges. Privacy and consumer cases present similar issues but are seldom as complex. For example, here, as noted, there are only two defendants. In addition, the JSLF lawyers have extensive experience handling consumer cases.

[3] Block & Leviton also propounded RICO claims. Dkt. 3-4, ¶¶ 92-95.

of the defendants. Lenovo offers few defenses to the scheme to mine data from unwitting computer purchasers, but instead tries to convince the Court this is a case with limited exposure. Dkt. 16 at p. 3.

JSFL addresses some of these points below.

**1. Lenovo Faces Significant Exposure.**

Contrary to Lenovo's assertions, Defendants' exposure here is not minimal. The installation of the adware in question, which Defendants monetized by selling advertising space on consumers' Internet browsers, diminished the value of consumers' computers. This was not simple negligence: this was an intentional scheme to hijack consumers' computers to favor advertisers selected by Superfish, and delivered in machines manufactured by Lenovo. Mr. Babbitt seeks statutory, punitive, and RICO treble damages as well as disgorgement[4] and other equitable remedies the Court may order to address this intentional wrongdoing, which is an unprecedented and cynical exploitation of consumers.

**2. Mr. Babbitt's RICO Claims Are Valid.**

Lenovo states that the RICO claims pursued by Mr. Babbitt are "beyond the pale." Dkt. 16 at 5, fn. 2. It is remarkable that Lenovo would try to intercede with respect to the issue of leadership of plaintiff's counsel in order to limit liability. In addition to being premature, this statement is wrong. It is understandable that RICO liability, which allows treble damages for schemes such as that at issue, is troubling to Lenovo. But where, as here, there was a scheme to harm consumers by omitting material facts about the nature of their computers, which had been designed to track their Internet use and sell ad space on consumers' own browsers, RICO liability should not be dismissed based simply on the protestations of the exposed party. And more to the point, leadership of the class should not be awarded to the firm or firms who would the least aggressively pursue claims for redress. It would raise serious questions if Lenovo were able to choose their adversary.

---

[4] *See, Meister v. Mensinger*, 230 Cal. App. 4th 381, 398-399 (Cal. App. 6th Dist. 2014) ("[A] person acting in conscious disregard of the rights of another should be required to disgorge all profit because disgorgement both benefits the injured parties and deters the perpetrator from committing the same unlawful actions again.")

Mr. Babbitt has pled two alternative predicate acts at the heart of this scheme to rent out space on his Internet browser with embedded adware that had the potential to seriously harm his computer.[5]

**a. Defendants Lenovo and Superfish Violated The Federal Computer Fraud and Abuse Act (18 U.S.C. § 1030(a)(5)(A)), a Predicate Offense Under 18 U.S.C. 1961(1).**

18 U.S.C. § 1961(1) enumerates the predicate offenses that form the basis for racketeering activity. Included among these predicate offense is "any act that is indictable under any provision listed in section 2332b (g)(5)(B)." 18 U.S.C. § 2332b enumerates certain acts that it defines as "Federal crime[s] of terrorism," including violations of 18 U.S.C. § 1030, the Computer Fraud and Abuse Act.

18 U.S.C. § 1030(a)(5)(A) prohibits anyone from "knowingly caus[ing] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally caus[ing] damage without authorization, to a protected computer." "Damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. 1030(e)(8). A "protected computer" is one that is "used in or affecting interstate or foreign commerce or communication of the United States." 18 U.S.C. 1030(e)(2)(B). "'[A]s both the means to engage in commerce and the method by which transactions occur, the Internet is an instrumentality and channel of interstate commerce.'" *Multiven, Inc. v. Cisco Sys.*, 725 F. Supp. 2d 887, 891, 2010 U.S. Dist. LEXIS 73885, *9 (N.D. Cal. 2010) (quoting *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007))

The facts as alleged by virtually all Plaintiffs show that Defendants Lenovo and Superfish engaged in conduct (the installation of the Superfish adware into Plaintiffs' Lenovo computers) of an enterprise (their mutual scheme to profit from the adware) through a pattern of racketeering activity (the transmission of the fraudulent SSL certificate into Plaintiffs' Lenovo computers, in violation of the Computer Fraud and Abuse Act). These acts caused injury to Plaintiffs because the vulnerabilities in the computers made them less valuable, meaning Plaintiffs overpaid.

[5] "To state a civil RICO claim under Section 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (i.e., "predicate acts"), (5) causing injury to plaintiff's business or property." *Ally Bank Nat'l Title Ins. Co. v. Castle*, 2012 U.S. Dist. LEXIS 118452, at *34 (N.D. Cal. Aug. 20, 2012).

**b. Defendants Lenovo and Superfish Committed Wire Fraud in Violation of 18 U.S.C. § 1343, a Predicate Offense Under 18 U.S.C. 1961(1).**

"Wire fraud has three elements: (1) a scheme to defraud; (2) use of the wires in furtherance of the scheme; and (3) a specific intent to deceive or defraud. Each use of the wires constitutes a separate violation of the wire fraud statute. In general, to be in furtherance of a scheme, the charged mailing or wire transmission need not be an essential element of the scheme, just a 'step in the plot.'" *United States v. Shipsey*, 363 F.3d 962, 971 (9th Cir. 2004) (citations omitted); *see also* 18 U.S.C. § 1343. "Mail and wire fraud can be premised on either a nondisclosure or an affirmative misrepresentation. A nondisclosure, however, can support a fraud charge only when there exists an independent duty that has been breached by the person so charged." *Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1082 (9th Cir. 2015) (citations omitted). The complaint must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Id.* "§ 1343 does not require an intent to cause pecuniary loss," but only the intent to deceive or cheat. *United States v. Treadwel*l, 593 F.3d 990, 998 (9th Cir. Cal. 2010)

With regard to the wire fraud claim, as merchants in a commercial transaction with Plaintiffs, Defendants had an independent duty to inform Plaintiffs of the vulnerability of their computers under the covenant of good faith and fair dealing[6], the implied warranty of merchantability,[7] and New York and California common law. Defendants knew that the Superfish adware made Plaintiffs' Lenovo computers vulnerable to attack, and thus less valuable, yet they intentionally withheld this information from Plaintiffs in their scheme to defraud Plaintiffs, knowing that Plaintiffs would have been less likely to purchase the computers had they known of the adware's pernicious effects. Each transmission between Plaintiffs' computers and Superfish's server was an act of wire fraud in violation of 18 U.S.C. § 1343, and thus a predicate act in violation of RICO. These acts formed a straightforward pattern of racketeering activity in violation of RICO.

---

[6] "There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Comunale v. Traders & General Ins. Co.*, 50 Cal. 2d 654, 658 (1958).

[7] Codified at Cal. Comm. Code § 2314; Cal. Civ. Code § 1791.1(a), 1794.

Plaintiff Babbitt's RICO claims are facially plausible. Contrary to Lenovo's assertions, the RICO claims brought on Mr. Babbitt's behalf demonstrate that the Class as a whole would benefit greatly from the sophistication and expertise brought by the JSLF team. These claims differentiate the Babbitt Complaint from the other claims in this case.

**C. JSLF has Performed Unique and Valuable Work Developing Potential Claims in This Case.**

The Robbins Geller Response states that JSLF "rel[ies] wholeheartedly on news reports and Lenovo's press releases," and that its Complaint "do[es] not appear to include ***any*** allegations derived from an independent pre-suit investigation." Dkt. 18 at p. 11 (emphasis in original). [8] In fact, JSLF has done extensive factual and legal research in developing the case for its client. Specifically, JSLF researched the network of investors and advertisers who have supported and profited from Defendants illegal acts, to determine the extent of the enterprise. Moreover, unlike Robbins Geller, JSLF had the expertise to recognize that fraudulent transmissions over the internet constitute wire fraud, and that wire fraud is a predicate offense for RICO. The firm's research on this issue led to the addition of an additional RICO claim based on the predicate offense of violating the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. Complaint, ¶¶ 136-148. This research has added a significant amount of value to this case.

Rule 23(g) specifies that courts should look at the "work counsel has done in identifying or investigating potential claims in the action" and "counsel's knowledge of the applicable law," among other things. Robbins Geller claims that its work developing the facts of this case distinguish it from the other firms seeking a leadership role. Yet its "investigation" does not appear to have unearthed any original information. Indeed, the factual allegations in Robbins Geller's Complaint include 36 citations to articles found on the Internet and lack even a single allegation that appears to be derived from

---

[8] In their Reply filed on July 13, 2015, Robbins Geller has engaged in hyperbolic and ill-suited rhetoric, claiming "The Babbitt Movants failed to file a response and it is unclear whether they are still seeking appointment. In any event, their lack of relevant experience highlighted in the Response (Dkt. No. 18 at 6) and *utter lack of action taken for the benefit of the class* remain as fatal impediments to their leadership bid." (Emphasis added.) This characterization is untrue and misplaced, and rings all the more hollow in light of Robbins Geller's overstated claims about its own "investigation." This claim is also made in the Pritzker Levine Reply filed on July 13, 2015, and rings equally hollow. To its credit, JSLF saw no need to attack other firms, multiply the proceedings or submit unnecessary court filings.

independent research. Dkt. 6-2, Ex. 4. Even if Robbins Geller had unearthed some unique fact, investigating the facts is only significant if one understands how to apply the law to the facts to develop valid claims that will survive motion practice and maximize the value of the case for the Plaintiffs. The Joseph Saveri Law Firm has applied its experience and its superior knowledge of the applicable law to bring a more complete set of claims, with a better chance of success, that have added more value to the Plaintiffs' claims. Putting aside the work done by JSLF to develop the scheme liability, a theory which Robbins Gellar does not pursue on behalf of the class, a full blown investigation of the type described in their briefs is premature without the benefit of the discovery, and is little more than an attempt to buttress a race to the courthouse with rhetoric concerning fact development that is best done under the auspices of this Court once leadership issues have been resolved.

**D. The Court Should Appoint the Law Firm That Will be Best Able to Represent the Interests of the Class as Interim Class Counsel, not the Firm That Will do the Work for Less.**

The Application filed by Block & Leviton and Van Laningham submits a bid for attorneys' fees in this matter. Dkt. 20 at p. 6-8. This Court has not asked for bids, and no such bidding is warranted here.

Federal Rule of Civil Procedure 23(g)(1)(A) enumerates the factors a court must consider when appointing Class Counsel:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

Additionally, a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The 2003 Committee Notes to Rule 23 state that "the primary responsibility of class counsel . . . is to represent the best interests of the class." Accordingly, this court's decision appointing Interim Class Counsel should be based on the factors and considerations enumerated above. *See,* L. Bebchuk, *The Questionable Case For Using Auctions To Select Lead Counsel*, 80 Wash. U. L.Q. 889-

899, (2002) (concluding that competitive bidding would not serve the best interests of the class because it tends to "attach too little weight to nonprice, qualitative dimensions" and does not "give sufficient weight to the need to provide the class counsel with appropriate incentives").

Rule 23(h) addresses the issue of attorneys' fees in a class action. It states that a court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." The Comments to Rule 23(h) state "[i]n a class action, the district court must ensure that the amount and mode of payment of attorney fees are fair and proper . . . . One fundamental focus is the result actually achieved for class members." Thus, while the two decisions are not completely separate, subdivisions (g) and (h) of Rule 23 make clear that a court's paramount consideration when appointing class counsel is the quality of the representation the class will receive. When the case reaches its conclusion, the court retains control over the award of attorneys' fees and "*must ensure*" that the fees are "fair and proper" based on, among other things, the quality of the representation received by the class.

After some trial and error several years ago with respect to the use of auction techniques for choosing Interim Class Counsel, such efforts have been largely abandoned or ignored. For good reason. First, the techniques, as noted above, do not align with the requirements of Rule 23(g)(1). Second, it is difficult to determine the appropriate procedure for conducting such an "auction." In order to conduct a legitimate and fair auction, each potential "bidder" must know the parameters of the bidding and there must be a predetermined bidding process. Third, bidding elevates quantitative aspects of the provision of legal services while neglecting or disregarding quality and therefore promotes false economies. The low bidder should not necessarily be chosen to serve as Interim Class Counsel. Indeed, once selected, the low bidder has every incentive to cut corners, pursue false economies and not to prosecute the case. Without the correct incentives, bidding will likely produce a level of fees that does not best serve the class's interests. It is far better simply to apply the requirements of Rule 23(g)(3), as courts routinely do.

Viewed through the lens of the Rule 23(g) factors and based on its record in complex class actions and the quality of the research it brought to this case in particular, as reflected in the

Babbitt Complaint, the Joseph Saveri Law firm is the best choice to serve as Interim Class Counsel. Once the case has concluded, the Court can determine what a fair attorney's fee is.

**E. Appointment of JSLF to the Executive Committee Is Unchallenged.**

Should the Court be inclined to select other qualified counsel to serve as Interim Lead Counsel in this litigation, JSLF requests that Joseph R. Saveri and Dan Karon be appointed to the Executive Committee.

## IV. CONCLUSION

The Joseph Saveri Law Firm has performed significant work in shaping this case to date. With its experience, knowledge and resources, the Joseph Saveri Law Firm is the strongest candidate to represent the interests of the Plaintiff Class and to guide this case to a successful conclusion. For this reason and the reasons stated above, the Joseph Saveri Law Firm respectfully requests that the Court appoint it Interim Class Counsel.

Dated: July 13, 2015

JOSEPH SAVERI LAW FIRM, INC.

By: *s/ Joseph R. Saveri*
Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Matthew S. Weiler (State Bar No. 236052)
Kevin E. Rayhill (State Bar No. 267496)
JOSEPH SAVERI LAW FIRM, INC.
505 Montgomery Street, Suite 625
San Francisco, California 94111
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
mweiler@saverilawfirm.com
krayhill@saverilawfirm.com

Daniel R. Karon (pro hac vice pending)
Beau D. Hollowell (pro hac vice pending)
KARON LLC
700 W. Saint Clair Ave.
Cleveland, OH 44113
Telephone: (216) 551-9175
Facsimile: (216) 241-8175
dkaron@karonllc.com
bhollowell@karonllc.com

Vincent J. Esades (pro hac vice pending)
James W. Anderson (pro hac vice pending)
HEINS MILLS & OLSON PLC
310 Clifton Ave.
Minneapolis, MN 55403

Telephone: (612) 338-4605
Facsimile: (612) 338-4692
vesades@heinsmills.com
janderson@heinsmills.com
Derek G. Howard (State Bar No. 118082)
HOWARD LAW FIRM
42 Miller Ave.
Mill Valley, CA 94941
Telephone: (415) 432-7192
Facsimile: (415) 524-2419
derek@dhowlaw.com

*Attorneys for Individual and Representative Plaintiff Ross M. Babbitt*