JONATHAN K. LEVINE (SBN 220289)
jkl@pritzkerlevine.com
ELIZABETH C. PRITZKER (SBN 146267)
ecp@pritzkerlevine.com
BETHANY CARACUZZO (SBN 190687)
bc@pritzkerlevine.com
PRITZKER LEVINE LLP
180 Grand Avenue, Suite 1390
Oakland, CA 94612
Telephone: (415) 692-0772
Facsimile:  (415) 366-6110

DANIEL C. GIRARD (SBN 114826)
dcg@girardgibbs.com
ELIZABETH A. KRAMER (SBN 293129)
eak@girardgibbs.com
ANDRE M. MURA (SBN 298541)
amm@classlawgroup.com
GIRARD GIBBS LLP
601 California Street, Suite 1400
San Francisco, CA 94104
Telephone: (415) 981-4800
Facsimile:  (415) 981-4846

STEVEN N. WILLIAMS (SBN 175489)
swilliams@cpmlegal.com
ALEXANDRA P. SUMMER (SBN 266485)
asummer@cpmlegal.com
STEPHANIE D. BIEHL (SBN 306777)
sbiehl@cpmlegal.com
COTCHETT, PITRE & McCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile:  (650) 697-0577

*Plaintiffs' Interim Co-Lead Counsel*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTHERN CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| IN RE: LENOVO ADWARE LITIGATION | Case No. 5:15-md-02624-RMW |
| This Document Relates to All Cases | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| | Date: September 23, 2016<br>Time: 9:00 a.m.<br>Judge: Ronald M. Whyte<br>Courtroom: 6, 4th Floor |

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................1

ARGUMENT ..........................................................................................................................2

I.       Key Common Questions Predominate And Warrant Class-Wide Consideration.......................2

         A.       Lack of Consent Can and Will Be Established Through Common Proof. ....................2

         B.       Lenovo's Knowledge Can And Will Be Established Through Common Proof. .............3

         C.       Deception, Reliance, and Injury May Be Established Class-Wide................................4

         D.       Individual Experiences Are Not Relevant To Core Liability Questions Which
                  Predominate. ..................................................................................................................5

II.      Plaintiffs' Damages Model Is Sound. ......................................................................................8

III.     Named Plaintiffs are Typical and Adequate. .........................................................................11

IV.      A Class Action Is Superior. ....................................................................................................13

V.       Named Plaintiffs Have Standing And the Class Is Appropriately Defined. ...........................14

VI.      The Indirect Purchaser Class Is Manageable and Ascertainable. ...........................................14

CONCLUSION....................................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Ades v. Omni Hotels Mgmt. Corp.*
  46 F. Supp. 3d 999 (C.D. Cal. 2014)...................................................................11

*Amchem Products, Inc. v. Windsor*
  521 U.S. 591 (1997).....................................................................................7

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*
  133 S. Ct. 1184 (2013)..................................................................................1

*Bateman v. AMC, Inc.*
  623 F.3d 708 (9th Cir. 2010)..........................................................................10

*Birdsong v. Apple, Inc.*
  590 F.3d 955  (9th Cir. 2009)..........................................................................14

*Butler v. Sears, Roebuck and Co.*
  702 F.3d 359 (7th Cir. 2012)............................................................................8

*Campbell v. Facebook Inc.*
  315 F.R.D. 250 (N.D. Cal. 2016)..................................................................3, 10

*Comcast Corp. v. Behrend*
  133 S. Ct. 1426 (2013)..................................................................................9

*Ellis v. Costco Wholesale Corp.*
  657 F.3d 970 (9th Cir. 2011).............................................................................1

*Hatfield v. Halifax PLC*
  564 F.3d 1177 (9th Cir. 2009).........................................................................15

*Holloway v. Full Spectrum Lending*
  2007 WL 7698843 (C.D. Cal. June 26, 2007) ..................................................11

*In re Carrier IQ, Inc.*
  78 F. Supp. 3d 1051 (N.D. Cal. 2015) ............................................................14

*In re ConAgra Foods, Inc.*
  90 F. Supp. 3d .........................................................................................9, 10

*In re Google Inc. Gmail Litig.*
  2014 WL 1102660 (N.D. Cal. Mar. 18, 2014)....................................................3

*In re Inter-Op Hip Prosthesis Liab. Litig.*
  204 F.R.D. 330 (N.D. Ohio 2001) ....................................................................7

*In re Pharmatrak, Inc.*
  329 F.3d 9 (1st Cir.2003) ................................................................................2

*In re Zynga Privacy Litig.*
  750 F.3d 1098 (9th Cir. 2014)........................................................................14

ii

*Keegan v. Am. Honda Motor Co.*
  284 F.R.D. 504 (C.D. Cal. 2012) ........................................................... 5, 6

*Khoday v. Symantec Corp.*
  2014 WL 1281600 (D. Minn. Mar. 13, 2014) ........................................ 9, 10

*Kim v. BMW of Manhattan, Inc.*
  819 N.Y.S.2d 848 (Table) (N.Y. Sup. Ct. 2005) ........................................ 11

*Krueger v. Wyeth, Inc.*
  310 F.R.D. 468 (S.D. Cal. 2015) ............................................................ 15

*Leyva v. Medline Indus. Inc.*
  716 F.3d 510 (9th Cir. 2013) .................................................................. 9

*Petersen v. Costco Wholesale Co.*
  312 F.R.D. 565 (C.D. Cal. 2016) ............................................................ 15

*Pulaski & Middleman, LLC v. Google, Inc.*
  802 F.3d 979 (9th Cir. 2015) .................................................................. 9

*Silbaugh v. Viking Mag. Servs.*
  278 F.R.D. 389 (N.D. Ill. 2012) .............................................................. 2

*Tait v. BSH Home Appliances Corp.*
  289 F.R.D. 466 (C.D. Cal. 2012) ...................................................... 4, 5, 6

*Torres v. Mercer Canyons Inc.*
  2016 WL 4537378 (9th Cir. Aug. 31, 2016) ...................................... 1, 7, 14

*Vista Mktg., LLC v. Burkett*
  2016 WL 425165 (11th Cir. 2016) ......................................................... 10

*Wal-Mart Stores, Inc. v. Dukes*
  131 S. Ct. 2541 (2012) .......................................................................... 1

*Wolin v. Jaguar Land Rover N. Am., LLC*
  617 F.3d 1168 (9th Cir. 2010) ....................................................... 4, 6, 11

*Yokoyama v. Midland Nat. Life. Ins. Co.*
  594 F.3d 1087 (9th Cir. 2010) ........................................................... 8, 10

**Rules**

Fed. R. Civ. P. 23 .................................................................................... 1

**Statutes**

Cal. Civil Code § 1559 ........................................................................... 15

iii

**INTRODUCTION AND SUMMARY OF ARGUMENT**

"[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013). Courts must "examine the merits of the underlying claim in this context, only inasmuch as it must determine whether common questions exist; not to determine whether class members [can] actually prevail on the merits of their claims." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011) (citation omitted).

This lesson is lost on Lenovo. In opposing certification, Lenovo repeats many of the same arguments it raised in its motion to dismiss—though now these arguments are framed as alleged failures of proof. This attempt to "turn class certification into a mini-trial," *id.*, is doomed to fail, not least because Lenovo's slanted rendering of the facts cannot be squared with the evidence. More fundamentally, courts should not engage alleged failures of proof as a matter of class certification. *Torres v. Mercer Canyons Inc.*, No. 15-35615, 2016 WL 4537378, at *10 (9th Cir. Aug. 31, 2016).

In an attempt to argue the merits, Lenovo suggests this is a suit about whether some third-party hacker broke into all of Plaintiffs' computers. No, this is a consumer protection suit against Lenovo and Superfish for *their* decision to hide the important fact that the laptops at issue were pre-installed with VisualDiscovery malware. Their concealment of that fact violated electronic-privacy laws and caused consumers to pay far more for the laptops than they would have had the malware been disclosed as the law requires. Consumers have received no remuneration for this harm caused by Defendants' conduct, and they can do so only as a class because the stakes are too small, and the expert costs too large, to prosecute individual suits.

When Plaintiffs' true legal theory is considered alongside class certification standards, it is evident that the class device is the best method to adjudicate this case fairly and efficiently. Class treatment is justified because Plaintiffs' legal theories raise common issues "central to the validity of each one of the claims" which can and should be resolved "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2012). What Lenovo knew or didn't know about VisualDiscovery; what Lenovo did or didn't disclose about VisualDiscovery; what information VisualDiscovery did or did not collect—these questions are common to the class and may be established through common proof, and

they predominate because of their relative importance. On these questions, the "all purchaser" classes will prevail or fail in unison, and the litigation will catapult forward or stop dead in its tracks. This is an outcome Lenovo should welcome, for if it had any confidence in the merits, it would support certification and seek summary judgment against the claims of all affected consumers.

Lenovo's other arguments against certification are similarly unavailing. Plaintiffs are adequate representatives, the harm they have suffered is identical to the harm suffered by all class members, and they have standing to bring this class action. Further, Plaintiffs propose a sound method for calculating damages that correlate with their theories of Defendants' wrongdoing. Certification should be granted.

## ARGUMENT

## I.   Key Common Questions Predominate And Warrant Class-Wide Consideration.

Plaintiffs demonstrated in their opening papers that the proposed "all purchaser" class is sufficiently cohesive to warrant adjudication by representation. (*See* Mot. at 8-25). Lenovo's response is scattershot. It claims to identify individual issues which it says predominate. All are predicated on mischaracterizations of the record and misapply or ignore controlling law. None alters the conclusion that it would be more efficient to decide the critical issues in this case on a class basis as opposed to deciding all issues in separate trials.

### A.   Lack of Consent Can and Will Be Established Through Common Proof.

Lenovo argues that consent is an individualized issue which defeats predominance. But there is *no* evidence that any consumer expressly or impliedly consented to the operation of VisualDiscovery, and therefore no basis for Lenovo "to realistically argue that individual issues regarding consent outweigh the commonality." *Silbaugh v. Viking Mag. Servs.*, 278 F.R.D. 389, 393 (N.D. Ill. 2012). Consumers were kept in the dark about what VisualDiscovery was or did. (*See* Mot. at 5-7). For instance, the initial pop-up screen and any terms of service did not disclose these practices and were highly misleading and contained falsehoods. Therefore, consumers could not *actually* consent to the practices challenged here because they were never told and had no basis to learn about VisualDiscovery technology. *See In re Pharmatrak, Inc.*, 329 F.3d 9, 19 (1st Cir.2003) ("Consent may be explicit or implied, but it must be actual consent rather than constructive consent."). In any event, lack of consent can be established class-wide because, to the extent Defendants notified Class members about

2

VisualDiscovery at all, they did so only through a uniform pop-up that ensured VisualDiscovery would be activated unless Class members affirmatively opted out (which the pop-up gave them no reason to do). That pop-up uniformly failed to disclose what VisualDiscovery was actually doing. Also, whether such a disclosure was misleading in violation of California and New York law may be determined by an objective standard, and thus is amendable to generalized proof. (*See*, *infra*, I.C.)

Lenovo is also wrong to suggest that courts always find that individual issues of consent defeat predominance. (*See* Opp. at 17.) This case mirrors *Campbell v. Facebook Inc.*, 315 F.R.D. 250 (N.D. Cal. 2016), in which there was also a "dearth of evidence regarding implied consent" to the practices alleged to have violated electronic-privacy statutes. *Id*. at 267. The court rejected Facebook's argument that "implied consent as a defense [ ] could potentially raise individual issues," because, "based on the current state of the evidence, those individual issues remain just that—potential." *Id*. at 266-267.

*In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014), is not to the contrary. As the court in *Campbell* explained, in the *Gmail* case there was extensive evidence that "some class members likely viewed" disclosures which *described* the interceptions at issue. *Id*. at 266.  Here, as discussed, the record shows the opposite—Lenovo never told consumers what VisualDiscovery technology did, and the pop-up screen and terms of service did not describe or inform consumers about practices challenged here. On this record, then, the possibility that implied consent as a defense could potentially raise individual issues is purely theoretical.

Finally, Lenovo tells the Court that the "consent of either party to a communication destroys a wiretap claim," and that online stores to which VisualDiscovery directed consumers "'consented' to Superfish's intervention." (Opp. at 16). This argument has nothing to do with class certification and everything to do with whether Plaintiffs have stated a claim. In any event, Plaintiffs have not asserted a federal wiretap claim against Lenovo; they have asserted a California wiretap act claim against Lenovo, and it is an all-party consent law. Therefore, the consent of others is immaterial because Plaintiffs can (and will) establish, through common proof, that consumers did not consent.

### B.    Lenovo's Knowledge Can And Will Be Established Through Common Proof.

Plaintiffs have alleged that, at all relevant times, Defendants knew but failed to disclose that VisualDiscovery risked the security and privacy of the class's private information and data, and

negatively affected the performance of its laptops. What Defendants knew or did not know about VisualDiscovery during the class period is thus a critical common question that may be answered class-wide. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010).

Lenovo does not argue that its knowledge of alleged privacy issues changed over time, though it does dispute that there ever was a privacy violation. It does say, however, that it is "beyond dispute" (Opp. at 19) that its knowledge of VisualDiscovery's security and performance issues changed over time. Lenovo's point does not concern class certification standards; it is a reprisal of Lenovo's motion to dismiss. Even assuming for argument's sake that Lenovo's knowledge about security and performance (but not privacy) "changed" over time, Plaintiffs allege—and the record evidence shows—that Lenovo knew enough about VisualDiscovery and what it did such that it had a duty to disclose these material facts before selling *any* laptops with VisualDiscovery malware. The Declaration of former Superfish CEO Adi Pinhas supports this; he states he told Feng Lee at Lenovo how VisualDiscovery worked before Lenovo sold any laptop with this technology.  Declaration of Adi Pinhas, ¶¶ 5, 9-10.[1]

Because Defendants' knowledge about VisualDiscovery is a critical question that may be answered for all class members in one fell swoop, the question of knowledge predominates. *See Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 481-482 (C.D. Cal. 2012) rejecting argument that proof of exclusive knowledge or active concealment requires individual inquires that predominate such that they defeat class certification).

### C.    Deception, Reliance, and Injury May Be Established Class-Wide.

In an argument directed at Plaintiffs' consumer protection claims, Lenovo argues that "whether, and for whom, the laptops performed as advertised" is a highly individualized issue which renders class certification inappropriate. (Opp. at 17). But Plaintiffs have not alleged misrepresentations in advertising. (Opp. at 18 (conceding this point)). Plaintiffs' theory is that Defendants' *omissions* violated the CLRA, UCL, and NYGBL. Those omissions were uniform and consistent—Defendants did not disclose to any Class member during the class period that they had pre-installed VisualDiscovery malware on Lenovo's computers or that VisualDiscovery would put the security and privacy of

---

[1] The Pinhas Decl. is attached as Ex. 1 to the Reply Decl. of Jonathan K. Levine in Support of Plaintiffs' Motion for Class Certification.  Hereinafter, "Ex. __" refers to an exhibit to the Levine Reply Decl.

Plaintiffs' and the Class's data and communications at risk or materially impede their computers' operating performance. Those omissions caused all class members to suffer the same harm—they all overpaid for a Lenovo laptop loaded with malware. Accordingly, Lenovo's "unremarkable" suggestion that "it is difficult to certify a class where class members are not all exposed to the same representations" simply "has no relevance to the present case," which concerns omissions. *See Tait*, 289 F.R.D. at 482.

Lenovo also suggests that individualized issues of deception, reliance, and injury predominate. (Opp. at 19). As proof, Lenovo notes some users said they liked their laptops in online reviews, and some benefited from its features. (Opp. at 17). This argument, however, misapprehends consumer protection law as well as the significance of this evidence at the class certification stage.

Plaintiffs' consumer protection claims may be proven through generalized evidence because these three statutes ask whether Defendants' conduct—here, a failure to disclose—was likely to deceive a hypothetical "reasonable consumer." *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. at 541 ("The touchstone of [the UCL, CLRA, and NYGBL] is whether a reasonable person would have found the relevant omission misleading."). Given this objective standard, the alleged omissions, whether material or immaterial, would be so equally for all consumers composing the Class. Also, because it is undisputed that all Class members received the same information from Defendants regarding VisualDiscovery—which is to say, *no* information—the record permits an inference of common reliance. *Id.* at 542. That some Class members may have liked their computers (but not necessarily VisualDiscovery), or that some Class members may have experienced varying degrees of performance degradation, security risks, or privacy intrusions, does not change the fact that Defendants withheld material information *at the point of sale* and does not foreclose class-wide consideration of the common questions Plaintiffs have identified. *Keegan*, 284 F.R.D. at 533 (holding UCL, CLRA, and NYGBL omission claims could be established through common evidence even though "class vehicles experienced varying degrees of tire wear").

## D. Individual Experiences Are Not Relevant To Core Liability Questions Which Predominate.

Finally, Lenovo points to a number of "differences" among class members and laptops to

suggest individual proof will be needed to establish liability. (*See* Opp. at 15-16, 19.) To that end, Lenovo notes that not all people use their computers in the exact same way and that not all of the laptops are literally identical. What Lenovo cannot dispute, however, is that Plaintiffs have common evidence showing that every single class laptop was sold with VisualDiscovery malware and that the malware had the same potential disruptive effects on every one of those laptops.  Thus, even if it were true, for example, that VisualDiscovery worsens performance more on a computer used mostly for gaming than it would on a computer used mostly for word processing, *how* a particular class member uses his laptop has nothing to do with *how much* that laptop was *worth* at the point of sale.

In other words, Lenovo's argument treats plaintiffs' actual legal theory as all but beside the point.  Plaintiffs' legal theory is that each Class member was injured at the point of sale by paying too much for laptops pre-installed with VisualDiscovery, *because laptops infected with malware are worth less than laptops free of malware.* Just like a computer with better performance features is worth more in the market (regardless of how any particular person intends to use it), a computer plagued with malware is worth less. Lenovo ignores this core focus of Plaintiffs' case in opposing certification and its argument should therefore be rejected. *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 530 (C.D. Cal. 2012) (Ninth Circuit precedent "requires that courts accept plaintiffs' theory of relief as it is stated").

Even if Lenovo were correct, and Plaintiffs' legal theory somehow hinged on how much utility or satisfaction a particular consumer derived from using their laptop, the differing impacts on security or performance would be relevant only "to the extent of [plaintiffs'] damages and not whether [they] possess the same interest and suffered the same injury as the class members." *Wolin*, 617 F.3d at 1173 ("[P]roof of the manifestation of a defect is not a prerequisite to class certification."); *see also Keegan*, 284 F.R.D. at 479 (rejecting argument that variations in the ways in which an alleged defect manifests defeats predominance, and certifying CLRA, UCL and NYGBL omission claims); *Tait*, 289 F.R.D. at 466 ("the harm for which Plaintiffs sue is not the actual manifestation of [mold in washing machines], but for Defendant's failure to disclose the Washers' propensity to develop [mold]").[2] So long as

---

[2] And to the extent the impact of VisualDiscovery malware on security and performance would be relevant to damages—it would be relevant *only if* Plaintiffs' common overpayment damages model

Plaintiffs can prove that a reasonable person would have found Defendants' omission misleading, they will establish key elements of their consumer claims (materiality/causation and reliance) for all class members, thereby advancing the litigation.[3]

Critically, the common liability questions would predominate even if the extent of damages varied and introduced questions which outnumbered them. This is because "[p]redominance is not . . . a matter of nose-counting. Rather, more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres*, 2016 WL 4537378, at *5 (citation omitted); *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 345 (N.D. Ohio 2001) ("common issues need only predominate, not outnumber individual issues"). Is it more efficient to decide the common questions Plaintiffs have identified on a class basis or all issues in the case in individual trials*? See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615-16 (1997) (recognizing predominance is about efficiency). Here, it cannot be gainsaid that a class action is the more efficient procedure for adjudication because answers to these common questions will help drive the resolution of this litigation for all class members. Given these core common questions, the Court should hold that "individualized issues [do] not overwhelm an overall finding of predominance." *Torres*, 2016 WL 4537378, at *6.

Not only are Lenovo's arguments legally flawed, the record contains class-wide proof showing that uniform impacts on security, privacy, and performance in both VisualDiscovery versions. Lenovo does not disagree that the privacy implications were the same, but it says the security risk changed over time. For instance, Lenovo tells the Court the HTTPS security vulnerability existed only through September 2014, but that is false. It was actually present until the program was uninstalled from computers (i.e. February 2015). Just last week, through the deposition of Feng Lee, Plaintiffs obtained testimony confirming that Lenovo created a 'whitelist' of HTTPS sites on which VisualDiscovery would inject ads after that date, including Google and Amazon, the first and fourth most visited

---

proves insufficient and class members choose to come forward individually and prove other consequential damages.

[3] Lenovo barely discusses Plaintiffs' other claims, but they too are susceptible to common proof, as discussed in Plaintiffs' opening brief. See Mot. at 15-17 (statutory unlawful-access claims), 17 (trespass), 18 (negligence).

websites in the U.S.  Contrary to what Lenovo would have the Court believe, then, the HTTPS issue was not resolved in September 2014.

Also, Plaintiffs expert Dr. Rubin has concluded that one security vulnerability that existed in the first version of VisualDiscovery also existed in the second. (ECF 130-9, ¶ 66).  The same is true for performance impact; Plaintiffs' evidence shows that there was a negative performance impact for different computers and both versions of VisualDiscovery. (*Id.*, ¶¶ 77-82).

For its part, Lenovo has always treated purchasers of laptops pre-installed with VisualDiscovery the same. It tested VisualDiscovery on a few laptops and extrapolated those results to its entire product line because the effect on performance could be measured globally. It published a "security alert" warning all purchasers of the "high" risk posed by VisualDiscovery. The security warning was not limited to certain purchasers during certain time periods or particular versions of VisualDiscovery. (What company would warn—and anger—a subset of its consumers if they faced no security risk?) Lenovo also offered antivirus software to all purchasers of laptops pre-installed with VisualDiscovery without differentiating between versions of VisualDiscovery or when the laptops were purchased. And VisualDiscovery was removed from all versions of all laptops because of consumer complaints, without regard to the version of VisualDiscovery installed or the date of purchase. Class treatment of all purchasers of Lenovo laptops preinstalled with VisualDiscovery is therefore perfectly consistent with Lenovo's own common treatment of these same consumers.

If, as the case develops, the evidence shows large differences in the two versions of VisualDiscovery, then the court "may wish to create subclasses; but that possibility is not an obstacle to certification of a single [ ] class at this juncture" for direct, indirect, and California purchasers. *Butler v. Sears, Roebuck and Co*., 702 F.3d 359, 363 (7th Cir. 2012).

## II.    Plaintiffs' Damages Model Is Sound.

Lenovo argues individualized damages issues preclude class certification. (Opp. at 20). But binding Ninth Circuit precedent holds that "damage calculations alone cannot defeat certification." *Yokoyama v. Midland Nat. Life. Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010). Still, and contrary to Lenovo's submission, Plaintiffs, in their motion, showed their "damages stemmed from the defendant's actions that created the legal liability," *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987–

88 (9th Cir. 2015), and they "[can] feasibly and efficiently be calculated once the common liability questions are adjudicated," *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).

Lenovo's criticisms of Plaintiffs' damages methodology are without merit. It argues, for instance, that Plaintiffs are seeking a "full refund." *False*—as Plaintiffs' damages expert Bruce McFarlane explains in his rebuttal, the "model isolates the loss in value/overpayment for the period of time at issue." (*See* Ex. 2 at ¶ 4). Lenovo also argues that the damages model assumes the computer had "zero" positive value for a period of time. (Opp. at 20). *False*— the model "does not assume the computer had zero positive value for any period." Ex. 2 at ¶ 4. In addition, Lenovo argues that the model ignores "mountains" of evidence showing no consumer was harmed—a point its expert Thomas R. Varner, Ph.D. parrots. *False*—McFarlane "offers a methodology to measure damages, not expert testimony on correct value of particular variables within the methodology, or the amount of damages."[4] (*See* Ex. 2 at ¶ 5). McFarlane goes on to rebut each point raised by Lenovo's expert Varner.

Lenovo also criticizes the conjoint analysis Plaintiffs' expert Steve Gaskin proposes. According to Lenovo, courts do not accept conjoint analysis because it looks only at a consumer's willingness to pay in a manner that is divorced from the marketplace, and that is precisely why Gaskin's model fails. (Opp. at 23.) To the contrary, Gaskin's analysis accounted for a number of supply-side factors (*See* Ex. 3 at ¶¶ 3-5). And "[c]onjoint analysis is regularly used in litigation to translate the 'relative importance' of a product feature into a price premium paid by consumers," and its use has not been an obstacle to certification of classes in other cases courts." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1027 (C.D. Cal. 2015). As an example of conjoint analysis which properly accounts for supply and demand, *ConAgra* cited *Khoday v. Symantec Corp.*, No. CIV. 11-180 JRT/TNL, 2014 WL 1281600 (D. Minn. Mar. 13, 2014). In *Khoday*, the court found that a damages model that employed conjoint analysis to estimate the "relative value of [ ] product feature[s] and thus the price premium consumers paid for a particular feature," satisfied *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). *Id.* at *10-11, 32-33. The conjoint analysis proposed comparing "the relative importance (*i.e.*, partworth) of different product features to isolate the price premium attributable to a particular feature." *In re ConAgra Foods, Inc.*, 90

---

[4] By contrast, Varner engages in rank speculation about the evidence in the record. It is especially inappropriate that most of his declaration simply rehashes the facts set forth Lenovo's opposition brief.

F. Supp. 3d at 1026–27 (discussing *Khoday*, 2014 WL 1281600, at *10-11, 32-33). Plaintiffs' expert Gaskin has proposed the *same* conjoint analysis here that the courts in *ConAgra* and *Khoday* concluded appropriately accounted for supply and demand in estimating the relative value of the offending product feature and the effect on pricing for that particular feature. (*See* Ex. 3 at ¶ 12). Indeed, Gaskin *was* plaintiffs' conjoint expert in *Khoday*. His methodology is beyond reproach and should be accepted here as it was before.

Lenovo's final objection is to statutory damages. Despite being 'fixed' by several statutes at issue here, Lenovo contends that class certification should be denied because statutory damages present individualized questions and would result in damages disproportionate to actual harm. But under Ninth Circuit precedent, it would be reversible error to deny certification for these reasons. *Yokoyama*, 594 F.3d at 1094 (reversible error to deny certification because damages present individualized issues); *Bateman v. AMC, Inc.*, 623 F.3d 708, 711 (9th Cir. 2010) (reversible error to deny certification because of enormity of damages, even if disproportionate to harm).

Lenovo's sole authority for denying class certification because statutory damages present individualized issues and would be (it speculates) disproportionate to actual harm is *Campbell v. Facebook, Inc.*, 315 F.R.D. at 268-69. But *Campbell*, in addition to being contrary to Ninth Circuit precedent, is distinguishable. In *Campbell*, the court concluded that "little, if any, harm" had occurred for violations of electronic-privacy statutes. *Id.* at 269. Thus, in the court's view, any aggregate award of statutory damages would be disproportionate, and "sorting out those disproportionate damages awards would require individualized analyses that would predominate over common ones. *Id.*

Here, by contrast, there is no basis to conclude at this time that many (let alone any) members of the "all purchaser" class suffered no injury for privacy violations, when record evidence supports the allegation that VisualDiscovery collected the content of each class member's communications without authorization. (ECF 130-9 (Rubin Decl.), ¶¶ 74-76). If the Plaintiffs establish violations of statutory privacy laws, then they would be entitled to seek statutory damages, even if they ultimately are unable to show actual damages with mathematical precision. *See Vista Mktg., LLC v. Burkett*, No. 14-14068, 2016 WL 425165, *12 (11th Cir. 2016) (ECPA does not require a showing of actual damages for entitlement to statutory damages); *Ades v. Omni Hotels Mgmt. Corp.*, 46 F. Supp. 3d 999, 1018 (C.D.

Cal. 2014) (same, under CIPA). Likewise, under the NYGBL, if Plaintiffs can prove injury stemming from Lenovo's unfair competition, but their damages are less than the statutory minimum, they will still be entitled to the minimum amount of statutory damages. *Kim v. BMW of Manhattan, Inc.*, 819 N.Y.S.2d 848 (Table) (N.Y. Sup. Ct. 2005).

In all, there is no basis on this record to conclude that statutory damages per violation cannot "be determined based upon defendant's conduct in the aggregate." *See Holloway v. Full Spectrum Lending*, No. CV 06-5975 DOC RNBX, 2007 WL 7698843, at *5 (C.D. Cal. June 26, 2007). And it would be reversible error to credit Lenovo's arguments about statutory damages and deny certification.

## III.   Named Plaintiffs are Typical and Adequate.

Lenovo argues that Plaintiffs are atypical because they suffered varying degrees of performance degradation, security intrusions, or privacy violations. Lenovo's arguments are misguided. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin*, 617 F.3d at 1175.

Contrary to Lenovo's arguments, Plaintiffs are typical of other class members. They, like all prospective class members, were injured by the same omissions and unauthorized collection of communications. They and the class seek to recover under the same legal theories, and Lenovo has identified no defenses that are unique to them. The degree of performance degradation, security intrusions, or privacy violations "goes to the extent of their damages and not whether named [Plaintiffs] 'possess the same interest and suffer[ed] the same injury as the class members.'" *Wolin*, 617 F.3d at 1175 (citation omitted). None of the named Plaintiffs have received the relief they seek for themselves and the class, (*see* Opp. at 14 (noting a named Plaintiff's brother-in-law did))—though plaintiff-specific remedies would not defeat typicality. *Wolin*, 617 F.3d at 1175.

Lenovo's challenge against the named Plaintiffs—that some computers performed worse than others, or were slightly different versions—is the same made against each and every other putative class member—no one was harmed at the point of sale because VisualDiscovery was benign, did not cause any security, privacy, or performance issues, and has been shut down. This broad attack has nothing to do with typicality and everything to do with the merits and extent of damages. And even if it

11

did, VisualDiscovery was not benign for anyone—it was widely panned as malware because it is malware. The named Plaintiffs, like the putative class, were all duped into buying computers with the malware installed, thus paying more than fair market value. That some named Plaintiffs had the first version of VisualDiscovery, and others the second, does not make them atypical of a class composed of consumers who might have had either—especially when the evidence shows that security, privacy, and performance issues existed for both versions.

For similar reasons, the Plaintiffs are adequate class representatives. They have no conflicts with other members of the class. They have vigorously pursued relief on behalf of the class and will continue to do so. Lenovo does not say otherwise.

Lenovo's other arguments are unavailing. The named Plaintiffs overwhelmingly used their computers for personal purposes. Ex. 4 (73:21-74:2); Ex. 5 (28:17-29:5); Ex. 6 (18:1-:4, 25:10-:19). Plaintiff Whittle used his computer primarily for a start-up business but also for personal use.

Whittle is an adequate representative. Desperate to rid itself of the CFAA claim, Lenovo accuses Whittle of not having a computer with VisualDiscovery. But it offers no proof—just speculation. All the evidence points Whittle's way. Lenovo was loading VisualDiscovery onto laptops when Whittle's was manufactured (September 1, 2014) and purchased (November 2014). Ex. 7 (44:23-45:3, 166:3-:18); ECF 130-9 (Rubin Decl.), at ¶¶ 32-35. He purchased the G50-70 model, which is an affected model. ECF 95-3 (Compl.) at ¶ 81. And he reported experiencing the very problems VisualDiscovery is alleged to have caused. Ex. 7 (71:7-:18, 141:8-:17).

Lenovo says Whittle's laptop was refurbished.  But refurbished computers differ from new computers in that they may have "minor cosmetic wear"; the specifications do not differ and in fact are certified to be the same as new ones.[5] Lenovo also says Whittle did not remember seeing VisualDiscovery's one-time opt-out window, so he must not have had the malware.  But neither could other named Plaintiffs recall the pop-up; Lenovo does not accuse any of them of not having a laptop without VisualDiscovery. Ex. 5 (48:2-51:12); Ex. 4 (99:22-100:9, 101:9-:22); Ex. 6 (55:15-:20). So

---

[5] *See Buy Windows Laptops and Chromebooks*, Lenovo (last viewed Sept. 9, 2016) *available at* http://outlet.lenovo.com/outlet_us/laptops/#facet-1=2,3 (follow "Condition definition: Refurbished" hyperlink).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
CASE NO. 5:15-md-02624-RMW

Whittle's failure to recall doesn't prove Lenovo's point. If anything, it corroborates the allegation that VisualDiscovery was hidden quite effectively, and the one-time pop-up window was not an adequate disclosure.  ECF 95-3 (Compl.) at ¶¶ 69-70, 112. In addition, Lenovo blames Whittle's performance problems on a faulty motherboard (though it has no other explanation for security or privacy). This is irrelevant. If, as the evidence shows, Whittle had a laptop with VisualDiscovery, then he overpaid for a computer loaded with malware, just like all other class members.

Lenovo also accuses Whittle of not having any lost profits and calls his tax business imaginary. *Not true.* He was employed at State Farm, but left in April 2014 to start his own business, JW Tax Preparation. Ex. 7 (28:14-:21, 101:18-:24).  He researched the industry and competition and developed a detailed business plan. *Id.* (101:25-102:4, 108:15-:18, 115:17-117:2, 122:1-123:20).  He opened a bank account, rented office space and purchased equipment and supplies, took tax preparation courses for the necessary certifications, registered with the IRS, and purchased tax preparation software. *Id.* (18:12-19:5, 62:16-:24, 64:17-65:9, 103:25-104:15, 106:10-107:25, 109:12-:19, 114:25-115:4, 120:20-121:16, 132:12-133:1, 137:24-138:18).  But the computer functioned so poorly it was "unusable," even after several attempts by Lenovo to fix it, and the performance issues made completing the return far too time-intensive for Whittle to operate the business.  *Id.* (76:14-92:16, 130:16-131:7).  When he found out his computer model was flagged as having the security risk, he decided not to complete any returns with the Lenovo laptop because he did not want to jeopardize client social security numbers.  *Id.* (128:23-129:7).

## IV.    A Class Action Is Superior.

Plaintiffs have already demonstrated that a class action is superior. (Mot. at 24-25). Lenovo disagrees, because, in its view, the putative class has already received all the relief it should expect, and a class action is duplicative and unnecessary. Lenovo is mistaken. The putative classes of consumers have never been offered any remediation for their overpayment or the unauthorized collection of their communications. The objectives of affected consumers have not been met, nor can they effectively be met through individual suits, but they can be met through the class device.

**V.      Named Plaintiffs Have Standing And the Class Is Appropriately Defined.**

Lenovo reprises many of the same arguments on standing it advanced in its motion to dismiss. None are new, and all fail for the same reasons discussed in briefing on that motion. That is not to say, that Plaintiffs are relying on allegations of standing. The evidence fully supports the named Plaintiffs' standing, and thus they meet their burden under Article III at the class certification stage.[6]

Once more, Lenovo's arguments do not address Plaintiffs' standing to sue because they lost money or property when overpaid for laptops with malware due to Lenovo's deceit.[7] Economic harm is a classic Article III injury. *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1065 (N.D. Cal. 2015). The classes are objectively defined to include all purchasers of Lenovo laptops with VisualDiscovery. The evidence confirms Lenovo did not communicate to any class member that the laptops were loaded with VisualDiscovery or that it was malware. Thus, all suffered the same injury, and all have standing to sue.[8]

Lastly, the class is defined in such a way that anyone within it would have standing. It is defined by objective criteria—the purchase of an affected laptop. No one in the class would have known that VisualDiscovery was pre-installed or what it did, because Lenovo did not disclose this fact to the putative class, and when it did warn consumers that VisualDiscovery posed a high security risk, it stopped installing the program on laptops.

**VI.     The Indirect Purchaser Class Is Manageable and Ascertainable.**

There are no unmanageable choice-of-law issues. The parties agree that New York law applies to the Direct Purchaser class; California law applies to the California class; and all other claims arising under the laws of other states have been tolled in the interim. This structure "overcome[s] the state law

---

[6] Article III requires that one named Plaintiff satisfy the standing requirements. *Torres*, 2016 WL 4537378, at *8 n.6. It does not require that each member of the class submit evidence of personal standing. *Id*. To the extent Lenovo suggests otherwise, it has misstated the law.

[7] This case is not *Birdsong v. Apple, Inc.*, 590 F.3d 955  (9th Cir. 2009). There, "plaintiffs allege[d] that Apple [ ] sold more than 100 million iPods, [but] they [did] not claim that they, or anyone else, [ ] suffered or [were] substantially certain to suffer hearing loss from using an iPod." *Id*. at 961. The injury was speculative and hypothetical. *Id*. Here, the omission is material.

[8] Lenovo does not address Ninth Circuit precedent holding that statutory privacy violations of the are sufficient to establish Article III injury. *In re Zynga Privacy Litig*., 750 F.3d 1098, 1105 n.5 (9th Cir. 2014).

14

variation problems and present[s] a manageable option for the litigation moving forward." *Petersen v. Costco Wholesale Co.*, 312 F.R.D. 565, 582 (C.D. Cal. 2016) (certifying nine single-state sub-classes).

The parties disagree only on whether California law may apply to the Indirect Purchaser class. The Business Partnership Agreement ("BPA") between Lenovo and Superfish states, "This Agreement will be governed by the laws of the State of California." *See* ECF 95-3 (Compl.) at ¶ 123. Lenovo and Superfish mutually promise that "the Software" will not contain "harmful code," the parties will make "best efforts to comply with all applicable data privacy laws," and will do so "to protect the privacy and legal rights of End Users." *Id.*, ¶¶ 124-125. Indirect Purchaser class members (*i.e.*, End Users) are thus intended third-party beneficiaries to the BPA and, as such, can enforce the choice-of-law clause in the agreement on a class-wide basis. *See Hatfield v. Halifax PLC*, 564 F.3d 1177, 1183 (9th Cir. 2009) (citing Cal. Civil Code § 1559).

Lenovo says in passing that indirect purchasers are not ascertainable. It offers no details. It does not respond to Plaintiffs' explanation of how indirect purchasers could be identified. And it never acknowledges that, "[u]nder the law of [the Ninth Circuit], it is enough that the class definition describes a set of common characteristics sufficient to allow an individual to determine whether she is a class member with a potential right to recover." *Krueger v. Wyeth, Inc.*, 310 F.R.D. 468, 475 (S.D. Cal. 2015) (internal quotations marks and citation omitted). The Indirect Purchaser class is appropriately defined and its class members are ascertainable.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' motion for class certification should be granted.

Dated: September 9, 2016

Respectfully submitted,

**PRITZKER LEVINE LLP**

*/s/ Jonathan K. Levine*

Jonathan K. Levine (SBN 220289)
Elizabeth C. Pritzker (SBN 146267)
Bethany Caracuzzo (SBN 190687)
180 Grand Avenue, Suite 1390
Oakland, California 94612
Telephone: (415) 692-0772

15

Facsimile:  (415) 366-6110
jkl@pritkzkerlevine.com
ecp@pritzkerlevine.com
bc@pritzkerlevine.com

**GIRARD GIBBS LLP**

*/s/ Elizabeth A. Kramer*
Daniel C. Girard (SBN 114826)
Elizabeth A. Kramer (SBN 293129)
Andre M. Mura (SBN 298541)
601 California Street, Suite 1400
San Francisco, CA 94104
Telephone: (415) 981-4800
Facsimile:  (415) 981-4846
dcg@girardgibbs.com
eak@girardgibbs.com
amm@classlawgroup.com

**COTCHETT, PITRE & McCARTHY, LLP**

*/s/ Alexandra P. Summer*

Steven N. Williams (SBN 175489)
Alexandra P. Summer (SBN 266485)
Stephanie D. Biehl (SBN 306777)
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile:  (650) 697-0577
swilliams@cpmlegal.com
asummer@cpmlegal.com
sbiehl@cpmlegal.com

*Plaintiffs' Interim Co-lead Counsel*

1

## **ATTESTATION**

2        I, Elizabeth A. Kramer, am the ECF User whose identification and password are being used to

3  file this Plaintiffs' Reply in Support of Motion for Class Certification to Civil L.R. 5-1(i)(3), I attest

4  under penalty of perjury that concurrence in this filing has been obtained from all counsel.

5

6  DATED:  September 9, 2016                    /s/ *Elizabeth A. Kramer*

7                                              Elizabeth A. Kramer

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
CASE NO. 5:15-md-02624-RMW