1  JONATHAN K. LEVINE (SBN 220289)
   jkl@pritzkerlevine.com
2  ELIZABETH C. PRITZKER (SBN 146267)
   ecp@pritzkerlevine.com
3  BETHANY CARACUZZO (SBN 190687)
   bc@pritzkerlevine.com
4
   PRITZKER LEVINE LLP
5  180 Grand Avenue, Suite 1390
   Oakland, CA 94612
6  Telephone: (415) 692-0772
   Facsimile: (415) 366-6110
7

8

9  DANIEL C. GIRARD (SBN 114826)          STEPHANIE D. BIEHL (SBN 306777)
   dcg@girardgibbs.com                    sbiehl@cpmlegal.com
10 ELIZABETH A. KRAMER (SBN 293129)       COTCHETT, PITRE & McCARTHY, LLP
   eak@girardgibbs.com                    San Francisco Airport Office Center
11 ANDRE M. MURA (SBN 298541)             840 Malcolm Road, Suite 200
   amm@classlawgroup.com                  Burlingame, CA 94010
12 GIRARD GIBBS LLP                       Telephone: (650) 697-6000
   601 California Street, Suite 1400      Facsimile: (650) 697-0577
13 San Francisco, CA 94104
   Telephone: (415) 981-4800
14 Facsimile: (415) 981-4846
15

16 *Class Counsel*

17
                  UNITED STATES DISTRICT COURT
18             FOR THE DISTRICT OF NORTHERN CALIFORNIA
                        OAKLAND DIVISION
19

20 IN RE: LENOVO ADWARE LITIGATION         Case No. 4:15-md-02624-HSG

21 This Document Relates to All Cases      **PLAINTIFFS' NOTICE OF MOTION
                                           AND MOTION FOR PRELIMINARY
22                                         APPROVAL OF CLASS ACTION
                                           SETTLEMENTS; MEMORANDUM OF
23                                         POINTS AND AUTHORITIES IN
                                           SUPPORT THEREOF_____**
24
                                           Date: September 20, 2018
25                                         Time: 2:00 p.m.
26                                         Hon. Haywood S. Gilliam, Jr.
                                           Courtroom 2, Fourth Floor
27

28

## TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................1

II.    OVERVIEW OF THE LITIGATION .................................................................2

       A.     Procedural History ...................................................................................2

              1.     Settlement with Superfish ............................................................2

              2.     Continued Litigation Against Lenovo ..........................................3

              3.     Class Certification and Subsequent Litigation ............................3

              4.     Settlement with Lenovo ................................................................4

III.   THE PROPOSED SETTLEMENT AND SCHEDULE OF EVENTS...............4

       A.     Settlement Terms and Conditions ...........................................................4

       B.     Notice and Settlement Administration .....................................................5

IV.    LEGAL ARGUMENT ........................................................................................8

       A.     Certification of the Proposed Settlement Class Is Appropriate. ............8

              1.     Rule 23(a) Is Satisfied..................................................................8

                     (a)     The Class Members Are Too Numerous to Be Joined. ...........8

                     (b)     The Action Involves Common Questions of Law or Fact. ......8

                     (c)     Plaintiffs' Claims Are Typical of Those of the Class. ............9

                     (d)     Plaintiffs and Their Counsel Will Fairly and Adequately Protect the
                             Interests of Class Members. .........................................................9

              2.     Rule 23(b)(3) Is Satisfied............................................................10

                     (a)     Common Questions of Fact and Law Predominate. ..............10

                     (b)     A Class Action Is the Superior Method for Resolving These Claims. ...13

       B.     Preliminary Approval of the Settlement Is Warranted. .........................13

              1.     The Settlement Resulted from Informed, Arm's-Length Negotiations. .............14

              2.     The Settlement Treats the Class Members Fairly and Equally...........14

              3.     The Settlement Falls Within the Range of Possible Approval. .........15

              4.     Experienced Counsel Recommend Approval. ....................................17

       C.     The Proposed Notice and Notice Program Should Be Approved...................17

       D.     Class Counsel Should Be Appointed as Settlement Class Counsel................18

V.     CONCLUSION..................................................................................................19

i

# TABLE OF AUTHORITIES

**Cases**

*Abdullah v. U.S. Sec. Assocs.*
   731 F.3d 952 (9th Cir. 2013) .................................................................................10

*Ades v. Omni Hotels Mgt. Corp.*
   2014 WL 4627271 (C.D. Cal. Sept. 8, 2014) ..........................................................11

*Allapattah Servs., Inc. v. Exxon Corp.*
   188 F.R.D. 667 (S.D. Fla. 1999)
   *aff'd*, 333 F.3d 1248 (11th Cir. 2003)
   *aff'd*, 545 U.S. 546 (2005) ....................................................................................11

*Amchem Prods. v. Windsor*
   521 U.S. 591 (1997) ...............................................................................................10

*Astiana v. Kashi Co.*
   291 F.R.D. 493 (C.D. Cal. 2013) ..............................................................................9

*Bellinghausen v. Tractor Supply Co.*
   2014 WL 1289342 (N.D. Cal. Mar. 20, 2015) ........................................................17

*Bias v. Wells Fargo & Co.*
   312 F.R.D. 528 (N.D. Cal. 2015) ...........................................................................10

*Briseno v. ConAgra Foods, Inc*
   844 F.3d 1121 (9th Cir. 2017) ..........................................................................17, 18

*Cargill, Inc. v. Souza*
   201 Cal. App. 4th 962 (2011) .................................................................................12

*Class Plaintiffs v. City of Seattle*
    955 F.2d 1268 (9th Cir. 1992) ...............................................................................13

*Day v. AT & T Corp.*
   63 Cal. App. 4th 325 (1998) ...................................................................................11

*Ehret v. Uber Techs., Inc.*
   148 F. Supp. 3d 884 (N.D. Cal. 2015) ...............................................................10, 11

*Evon v. Law Offices of Sidney Mickell*
   688 F.3d 1015 (9th Cir. 2012) .................................................................................9

*Gascho v. Global Fitness Holdings, LLC*
   2014 WL 1350509 (S.D. Ohio Apr. 4, 2014) .........................................................16

iii

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998) ............................................................... 13

*Harris v. Vector Mktg. Corp.*
   2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ........................................ 14

*In re Heritage Bond Litig.*
   546 F.3d 667 (9th Cir. 2008) ................................................................. 13

*In re Hyundai & Kia Fuel Econ. Litig.*
   881 F.3d 679 (9th Cir. 2018) ................................................................. 11

*In re LinkedIn User Privacy Litig.*
   2015 U.S. Dist. LEXIS 123130 (N.D. Cal. Sept. 15, 2015) .................... 15

*In re Lumber Liquidators Chinese-Mfd. Flooring Durability Mktg. & Sales Practice Litig.*
   2017 WL 2911681 (E.D. Va. July 7, 2017) ............................................ 12

*In re Magsafe Apple Power Adapter Litig.*
   2015 WL 428105 (N.D. Cal. Jan. 30, 2015) .......................................... 18

*In re Online DVD-Rental Antitrust Litig.*
   779 F.3d 934 (9th Cir. 2015) ................................................................. 18

*In re Packaged Ice Antitrust Litig.*
   2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ..................................... 16

*In re Painewebber Ltd. P'ships Litig.*
   171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................... 17

*In re Shell Oil Refinery*
   155 F.R.D. 552 (E.D. La. 1993) ............................................................ 15

*In re Tableware Antitrust Litig.*
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................ 13

*Lane v. Facebook, Inc.*
    696 F.3d 811 (9th Cir. 2012) ............................................................... 10

*Linney v. Cellular Alaska P'ship*
   1997 WL 450064 (N.D. Cal. July 18, 1997)
   *aff'd*, 151 F.3d 1234 (9th Cir. 1998) .................................................... 14

*McCrary v. Elations Co.*
   2016 WL 769703 (C.D. Cal. Feb. 25, 2016) ......................................... 18

*Mendez v. C-Two Grp., Inc.*
   2017 WL 1133371 (N.D. Cal. Mar. 27, 2017) ....................................... 14

iv

*Mirkin v. Wasserman*
  5 Cal. 4th 1082 (1993) ...................................................................................................11

*Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*
  221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................................17

*Nedlloyd Lines B.V. v. Superior Court*
  3 Cal. 4th 459 (1992) .....................................................................................................11

*Nicholson v. UTI Worldwide, Inc.*
  2011 WL 1775726 (N.D. Ill. May 10, 2011) ...............................................................10

*Nicodemus v. Saint Francis Mem'l Hosp.*
  3 Cal. App. 5th 1200 (2016) ..........................................................................................15

*Satchell v. Fed. Express Corp.*
  2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ..............................................................14

*Schuchard v. Law Office of Rory W. Clark*
  2016 WL 232435 (N.D. Cal. Jan. 20, 2016) .................................................................15

*Staton v. Boeing Co.*
  327 F.3d 938 (9th Cir. 2003) ...........................................................................................9

*Torres v. Mercer Canyons Inc.*
  835 F.3d 1125 (9th Cir. 2016) .........................................................................................9

*Torrisi v. Tucson Elec. Power Co.*
  8 F.3d 1370 (9th Cir. 1993) ...........................................................................................16

*Touhey v. United States*
  2011 WL 3179036 (C.D. Cal. July 25, 2011) ...............................................................16

*Valentino v. Carter-Wallace, Inc.*
  97 F.3d 1227 (9th Cir. 1996) .........................................................................................13

*Wal-Mart Stores, Inc. v. Dukes*
  564 U.S. 338 (2011) .........................................................................................................8

*Washington Mutual Bank, FA v. Superior Court*
  24 Cal. 4th 906 (2001) ...................................................................................................12

**Statutes**

Cal. Bus. & Prof. Code § 22947 *et seq.* .........................................................................10

Cal. Penal Code § 502 *et seq.* ........................................................................................10

Cal. Penal Code § 630 *et seq.* ........................................................................................10

v

**Other Authorities**

Federal Judicial Center, Manual for Complex Litigation § 21.63 (4th ed. 2004)....................................8

**PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENTS**                    **4:15-md-02624-HSG**

1

## NOTICE OF MOTION AND MOTION

2

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3

    **PLEASE TAKE NOTICE** that on September 20, 2018, at 2:00 p.m., or as soon thereafter as

4

the matter may be heard before the Honorable Haywood S. Gilliam, Jr., United States District Judge for

5

the Northern District of California, plaintiffs Jessica Bennett, Richard Krause, Robert Ravencamp, and

6

John Whittle ("Plaintiffs), will and hereby do move the Court, pursuant to Federal Rule of Civil

7

Procedure 23, for an Order:

8

        a)        Granting preliminary approval of the proposed Settlement Agreement with Defendant

9

                Superfish Inc. ("Superfish") (the "Superfish Settlement") and the proposed Settlement

10

                Agreement with Defendant Lenovo (United States) Inc. ("Lenovo") (the "Lenovo

11

                Settlement") (collectively, the "Settlement");

12

        b)        Provisionally certifying the Settlement Class as defined in the Settlement and below;

13

        c)        Appointing Plaintiffs as Class Representatives for the proposed Settlement Class;

14

        d)        Appointing Pritzker Levine LLP, Girard Gibbs LLP, and Cotchett, Pitre & McCarthy,

15

                LLP as Settlement Class Counsel for the proposed Settlement Class;

16

        e)        Approving the proposed notice program, including the proposed forms of notice set

17

                forth in the Settlement, and directing that notice be disseminated in accordance with this

18

                program;

19

        f)        Appointing Angeion Group as Claims Administrator and directing it to carry out the

20

                duties and responsibilities of the Claims Administrator stated in the Settlement; and

21

        g)        Setting a Final Approval Hearing and certain other dates in connection with the

22

                settlement approval process.

23

    This motion is based on this notice of motion and motion, the accompanying memorandum of

24

points and authorities, the Settlement, including all exhibits thereto, the Joint Declaration of Jonathan

25

K. Levine, Elizabeth A. Kramer, and Stephanie D. Biehl ("Joint Decl."), the Declaration of Steven

26

Weisbrot ("Weisbrot Decl."), all papers and records on file in this matter, and such other matters as the

27

Court may consider.

28

**PLAINTIFFS' MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENTS**        **4:15-md-02624-HSG**

Dated: July 11, 2018

Respectfully submitted,

**PRITZKER LEVINE LLP**

/s/ *Jonathan K. Levine*

Jonathan K. Levine (SBN 220289)
Elizabeth C. Pritzker (SBN 146267)
Bethany Caracuzzo (SBN 190687)
180 Grand Avenue, Suite 1390
Oakland, California 94612
Tel.: (415) 692-0772
jkl@pritkzkerlevine.com
ecp@pritzkerlevine.com
bc@pritzkerlevine.com

**GIRARD GIBBS LLP**

/s/ *Elizabeth A. Kramer*

Daniel C. Girard (SBN 114826)
Elizabeth A. Kramer (SBN 293129)
Andre M. Mura (SBN 298541)
601 California Street, Suite 1400
San Francisco, CA 94104
Tel.: (415) 981-4800
dcg@girardgibbs.com
eak@girardgibbs.com
amm@classlawgroup.com

**COTCHETT, PITRE & McCARTHY, LLP**

/s/ *Stephanie D. Biehl*

Stephanie D. Biehl (SBN 306777)
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel.: (650) 697-6000
sbiehl@cpmlegal.com

*Class Counsel*

**PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENTS**                    **4:15-md-02624-HSG**

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiffs seek preliminary approval of settlement agreements providing for an $8.3 million fund that would bring this litigation to an end.  None of this money will revert to Defendants.  The agreements were reached under the supervision of two experienced mediators and follow three years of litigation that included wide-ranging discovery and certification of a nationwide class under California law.

Plaintiffs now request that the Court enter a preliminary approval order to begin the settlement approval process.  The proposed order, agreed upon by the parties, provides for an aggressive notice program tailored to this case and designed to maximize the number of claims.  Online publication notice will be paired with direct notice to the approximately 500,000 class members with contact information in Lenovo or third-party records.  Plaintiffs further ask the Court to modify the order certifying a nationwide class of indirect purchasers, to include all purchasers (not for resale) of the subject computers in the United States during the relevant time period.  California law governs the settled claims, consistent with Judge Whyte's class certification order.  The claims process will allow each participating class member to choose between (1) completing a short online claim form to recover an estimated $40 cash payment for every purchased computer, or (2) submitting receipts or other documentation to recover sums actually expended as a result of VisualDiscovery software being on the computer, up to $750.  The proposed claim form and plan of allocation are Exhibits 2 and 3 to the Lenovo Settlement Agreement.

The Settlement and its connected procedures conform to all Northern District class settlement guidelines and should be preliminarily approved.  The agreement with Lenovo was negotiated at length under the supervision of a judicial officer, delivers a favorable result to the class, and will avoid protracted litigation in this nationwide consumer case.  Based on Plaintiffs' expert report, Class Counsel estimate a maximum, best case $35 million recovery at trial, had Plaintiffs prevailed.  The recovery of $8,300,000 represents approximately 24% of Plaintiffs' estimated recoverable damages.  Class Counsel will separately apply for attorneys' fees proportionate to this common fund and not to exceed the value of their hours expended in prosecuting and resolving these claims.

## II.   OVERVIEW OF THE LITIGATION

In early 2014, Lenovo and Superfish entered into a business partnership to install Superfish software called VisualDiscovery on 28 of Lenovo's laptop models.  VisualDiscovery was not disclosed to consumers.  Plaintiffs alleged that it intercepted web traffic, giving Superfish access to users' communications while jeopardizing the security of their information, and degraded computers' performance.  The software operated continuously in the background of the computers on which it was installed, analyzing and injecting ads into visited webpages, Plaintiffs alleged.

VisualDiscovery was installed on nearly 800,000 Lenovo laptops sold in the United States between September 1, 2014 and February 28, 2015.  On January 18, 2015, in response to mounting complaints about the effects of VisualDiscovery, Lenovo instructed Superfish to turn it off at the server level.  Dkt. No. 31-2, Ex. 35.  On February 15, 2015, the *New York Times* and other publications reported on the privacy, security, and performance problems associated with VisualDiscovery.  Lenovo soon ended its relationship with Superfish and had the software removed.[1]

### A.   Procedural History

After the news reports about VisualDiscovery appeared, 27 class actions were filed in federal courts around the country.  In June 2015, the Judicial Panel on Multidistrict Litigation transferred the actions to this District for coordinated pretrial proceedings.  Dkt. Nos. 1, 2, 8.  In July 2015, the Court appointed Pritzker Levine LLP, Girard Gibbs LLP, and Cotchett, Pitre & McCarthy, LLP as Interim Lead Class Counsel.  Dkt. No. 44.

#### 1.   Settlement with Superfish

In October 2015, the parties participated in a mediation before Judge Edward A. Infante (Ret.) of JAMS.  Dkt. No. 92.  The mediation led to a $1,000,000 settlement agreement with Superfish.  The Superfish Settlement—attached as Exhibit A to the Joint Declaration ("Joint Decl.") filed concurrently herewith—was reached after prolonged negotiations, exchange of confidential information regarding liability and damages, and disclosure of details regarding Superfish's financial condition and insurance

---

[1] Lenovo Security Advisory, *Superfish Vulnerability*, LENOVO, https://support.lenovo.com/us/en/product_security/superfish (visited May 16, 2018).

coverage.  Had the Superfish Settlement not been reached in 2016, Superfish likely would have been bankrupt by the time the case reached trial.  Joint Decl., ¶ 8.  Superfish has since been dissolved.  *Id.*

The Superfish Settlement obligated Superfish to cooperate with Plaintiffs in their continued litigation against Lenovo.  Superfish provided this cooperation by producing data and documents, providing technical assistance on various issues, and producing Superfish executives and employees for interviews.[2]  Joint Decl., ¶ 7.

### 2.      Continued Litigation Against Lenovo

Plaintiffs filed their Consolidated Class Action Complaint in November 2015.  The core allegations were: Defendants preinstalled VisualDiscovery, and this software functioned uniformly and in an unlawful manner.  Dkt. No. 96.  VisualDiscovery secretly intercepted information from web-browsing activities to deliver targeted advertisements, inhibited computer performance, and created significant security risks.  And consumers such as Plaintiffs overpaid for laptops with the undisclosed VisualDiscovery software.

Lenovo moved to dismiss in January 2016.  Dkt. No. 98.  After oral argument in April 2016, the Court took the motion under submission.  While Lenovo's motion was pending, Plaintiffs moved for class certification (Dkt. No. 131), and the Court heard argument on that motion in September 2016.

In October 2016, the Court granted in part and denied in part Lenovo's motion to dismiss and Plaintiffs' motion for class certification.  Dkt. No. 153.  Plaintiffs filed a Consolidated Amended Complaint on December 7, 2016.  Dkt. No. 162.

### 3.      Class Certification and Subsequent Litigation

In its order of October 27, 2016, the Court certified the following classes:

> **Indirect Purchaser Class** (represented by Jessica Bennett, John Whittle, and Rhonda Estrella[3]): All persons who purchased one or more Lenovo computer models, on which VisualDiscovery was installed, in the United States from someone other than Lenovo.

---

[2] In January 2016, the Court entered an Order staying all deadlines as to Superfish in view of the proposed Superfish Settlement.  Dkt. No. 102.

[3] Plaintiff Estrella subsequently withdrew from the litigation.

**PLAINTIFFS' MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENTS**                    **4:15-md-02624-HSG**

**California Class** (represented by Jessica Bennett and Rhonda Estrella): All persons who purchased one or more Lenovo computer models, on which VisualDiscovery was installed, in California.

Dkt. No. 153.  The Court appointed Pritzker Levine, Girard Gibbs, and Cotchett, Pitre & McCarthy as Class Counsel.  *Id.*

In the class certification order, Judge Whyte accepted Plaintiffs' argument that California law applies to the claims of indirect purchasers nationally "because indirect purchasers are intended third-party beneficiaries of the Lenovo-Superfish Business Partnership Agreement, which includes a California choice-of-law provision."  Dkt. No. 153 at 38.  The Court further concluded that "differences in state law do not create a management obstacle for the class of indirect purchasers at this time."  *Id.*

Although Plaintiffs separately moved under New York law to certify a nationwide class of persons who purchased directly from Lenovo, the Court did not reach that class certification issue because it dismissed the New York claims on the pleadings.  After Plaintiffs repleaded their consumer protection claim under New York law, the Court dismissed the claim with leave to amend.  Dkt. No. 210.

### 4.    Settlement with Lenovo

Plaintiffs and Lenovo participated in a series of settlement conferences before Magistrate Judge Jacqueline Scott Corley, with the third and final conference on March 28, 2018.  Plaintiffs and Lenovo reached an agreement in principle in mid-April 2018, and memorialized the key terms of that agreement in a Term Sheet signed on April 27, 2018.  Joint Decl., ¶ 17.  Plaintiffs and Lenovo then engaged in painstaking negotiations regarding the precise terms of their agreement and worked together, with Superfish as appropriate, to develop a comprehensive set of settlement documents, including the Lenovo Agreement, the proposed notices, the plan of allocation, the claim form, and proposed orders for preliminary and final approval.  Joint Decl., ¶ 18.  The Lenovo Agreement was signed on July 11, 2018; a copy is attached as Exhibit B to the Joint Declaration.

## III.    THE PROPOSED SETTLEMENT AND SCHEDULE OF EVENTS

### A.    Settlement Terms and Conditions

Under the Settlement, Lenovo will make a $7,300,000 non-reversionary payment that will be added to the $1,000,000 non-reversionary payment Superfish previously made.  The two payments will

4

constitute the Settlement Fund from which any class member may make a claim.  Joint Decl., Ex. A at ¶¶ 1.13, 4.1 & Ex. B at ¶¶ 1.30, 2.1.

Lenovo has separately entered into a consent decree with the Federal Trade Commission and 32 attorneys general.  The consent decree forbids Lenovo from misrepresenting any features of software preloaded on laptops to inject advertising into browsing sessions or to transmit sensitive consumer information to third parties.  Joint Decl., ¶¶ 19-20.  If Lenovo preinstalls such software, it must obtain consumers' affirmative consent before the software runs on their laptops, and Lenovo also must implement a comprehensive security program for 20 years for most consumer software preloaded on its laptops.  Joint Decl., ¶ 20.  Lenovo acknowledges that the filing and prosecution of the present Action—filed before the FTC proceeding—was a factor in Lenovo agreeing to the injunctive relief in the FTC Consent Decree.  *Id.*

The Settlement Class is defined as:

All Persons who purchased one or more of the following computers, not for resale, within the United States between September 1, 2014 and February 28, 2015:

- G Series: G410, G510, G710, G40-70, G50-70, G40-30, G50-30, G50-45
- U Series: U430P, U430Touch, U530Touch
- Y Series: Y40-70, Y50-70
- Z Series: Z50-75, Z40-70, Z50-70
- Flex Series: Flex2 14D, Flex2 15D, Flex2 14, Flex2 15, Flex2 15(BTM), Flex 10
- MIIX Series: MIIX2-10, MIIX2-11
- YOGA Series: YOGA2Pro-13, YOGA2-13, YOGA2-11BTM, YOGA2-11HSW

*Id.* ¶ 1.3.  Excluded from the Class are Defendants, the officers, directors, and affiliates of Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.  *Id.*  If the Court approves the Settlement, class members will release all claims that were or could have been asserted against Defendants in this action.  Joint Decl., Ex. A at ¶ 1.8 & Ex. B at ¶ 1.24; *see also* Joint Decl., Ex. B at Ex. 5 ([Proposed] Final Order and Judgment).

### B.    Notice and Settlement Administration

Plaintiffs propose several methods for notifying the class members of the Settlement and their rights.  First, Plaintiffs' notice program relies on both mailing and emailing notice of the Settlement to

**PLAINTIFFS' MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENTS**                    **4:15-md-02624-HSG**

class members whose mailing and email addresses exist in the records of Lenovo or of third-party retailers Plaintiffs subpoenaed.  Declaration of Steven Weisbrot, ¶¶ 11-15 ("Weisbrot Decl.").  Class members who purchased a computer through Amazon will receive notice via an email directly from Amazon, followed by mailed notice where emails bounce back.  Weisbrot Decl., ¶ 12.  The emailed and mailed notices describe the terms of the Settlement, class members' rights and options and other required information, and contain prominent links to the online claim form.  Weisbrot Decl., ¶¶ 36-39.  Approximately 500,000 class members will receive direct notice.  Weisbrot Decl., ¶¶ 11-15; Joint Decl., ¶ 42.  Second, an online publication notice campaign geared toward reaching Lenovo laptop purchasers will employ banner ads on heavily visited websites, such as Facebook and Twitter, and will make use of algorithms to optimize the campaign based on which ads trigger the most "clicks" to the claim form and Settlement website.  Weisbrot Decl., ¶¶ 21-30.[4]

The proposed notice is annexed to the Lenovo Settlement Agreement.  *See* Joint Decl., Ex. B at Ex. 1-A.  This notice comports with all Northern District guidelines, available at https://www.cand.uscourts.gov/ClassActionSettlementGuidance.  Using plain language, the notice advises class members of the pendency and nature of the case, basic settlement terms, and their right to share in the recovery, to opt out of the Class, to object to the Settlement, and to appear before the Court at the Final Approval Hearing.  The notice includes Class Counsel's contact information, the address of the Settlement website, how to access the case docket, and the date, time, and place of the Final Approval Hearing, and alerts class members that the hearing date may change without further notice but that class members should monitor the Settlement website for updates.  The notice further states that class members who wish to opt out should send a letter only to the Claims Administrator with their name, address, signature, and statement that they wish to opt out, and that class members who wish to object should submit written objections only to the Court.  The notice also makes clear that the Court can only approve or deny the Settlement, not change its terms.  Finally, the notice provides details regarding the plan of allocation and Class Counsel's anticipated motion for attorneys' fees and reimbursement of litigation expenses and for service awards to Plaintiffs.

---

[4] Additionally, Defendants will be providing notice of the Settlement to the appropriate federal and state authorities pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.  Joint Decl., ¶ 48.

**PLAINTIFFS' MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENTS**                    **4:15-md-02624-HSG**

Class members can choose one of two options to make a claim. Under the first option, class members can click boxes to verify their contact information and purchase of one of the listed computers. These class members will receive an estimated cash payment of $40. The estimated recovery under the first claim option is conservative in that it assumes a 15% claims rate, which is unlikely; a more typical claims rate of 5-10% will yield a higher recovery to class members. Joint Decl., ¶ 24. Class members also may submit an itemized claim for reasonable out-of-pocket losses— e.g., for credit monitoring or technical support services—reasonably attributable to VisualDiscovery. Claims submitted under this second option are capped at $750, and $300,000 is set aside for such claims. Joint Decl., ¶ 25.

Exact payments to claimants will be calculated based upon the total number and amount of valid claims. If excess funds remain after the Claims Administrator processes all claims, those funds will be distributed equally to all claimants in a supplemental distribution. Joint Decl., Ex. B at Ex. 3 § III.B.4. If the supplemental distribution would exceed $500 per computer, Class Counsel will propose additional means of reaching non-participating class members. Joint Decl., Ex. B at Ex. 3 § III.B.6. No funds will revert to Lenovo or Superfish. Joint Decl., Ex. A, ¶¶ 2.9, 6.8; Joint Decl., Ex. B, ¶ 2.16.

The proposed Claims Administrator, Angeion, has the expertise to efficiently handle all Settlement-related notice and administration tasks. Weisbrot Decl., ¶¶ 1-6. Class Counsel selected Angeion as Claims Administrator after a competitive bidding process that involved bids from several other firms. Joint Decl., ¶ 48. In addition to managing the notice program and receiving and processing claims, Angeion will maintain a dedicated settlement website containing links to the notice, claim form, and all other relevant settlement documents. Weisbrot Decl., ¶ 7. The estimated cost of notice and administration is $300,000, which represents a relatively small percentage of the overall fund and is a reasonable sum where the direct notice campaign contemplates mailed notice (with associated postage costs) to several hundred thousand class members, undeliverable mailings will be processed and remailed, the publication notice campaign has been designed to target 70% of the class, and claims will be processed and audited. Joint Decl., ¶ 49.

Consistent with the Settlement and the proposed Preliminary Approval Order, Appendix A hereto shows Plaintiffs' proposed schedule for upcoming case deadlines and events.

7

IV.    **LEGAL ARGUMENT**

The procedure for judicial approval of a proposed class action settlement under Rule 23(e) involves the following three steps:

(1)    Certification of a settlement class and preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval.

(2)    Dissemination of notice of the proposed settlement to the class members.

(3)    A hearing at which evidence and argument concerning the fairness, adequacy, and reasonableness of the proposed settlement may be presented.

*See* Federal Judicial Center, Manual for Complex Litigation § 21.63 (4th ed. 2004).  Plaintiffs here respectfully request that the Court take the first step in this process by granting preliminary approval of the proposed Settlement, provisionally certifying the proposed Class, and directing that notice be provided.

A.    **Certification of the Proposed Settlement Class Is Appropriate.**

For all the reasons laid out in the prior certification order in this case (Dkt. No. 153), certification of the proposed Settlement Class under Rules 23(a) and (b)(3) is appropriate

1.    **Rule 23(a) Is Satisfied.**

(a)    **The Class Members Are Too Numerous to Be Joined.**

The proposed Class is so numerous that joinder of all members is impracticable.  *See* Fed. R. Civ. P. 23(a)(1).  Approximately 797,000 Lenovo laptops containing VisualDiscovery were sold in the United States between September 1, 2014 and February 28, 2015.  *E.g.,* Joint Decl., Ex. A, p. 1.

(b)    **The Action Involves Common Questions of Law or Fact.**

Under Rule 23(a)(2)'s requirement that there be "questions of law or fact common to the class," the claims "must depend upon a common contention" such that "determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  *Id.* (internal citation omitted).  In this case, commonality is satisfied because the "circumstances of each particular class member . . . retain a

8

common core of factual or legal issues with the rest of the class[.]" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (citations and quotations omitted).

Plaintiffs' claims center on whether Defendants preinstalled VisualDiscovery on Lenovo computers without disclosing that they had done so or that VisualDiscovery would cause privacy, security, and performance problems.  Because the core issue of Defendants' nondisclosure is common to the claims, Plaintiffs have met their "minimal" burden of demonstrating commonality.  *Astiana v. Kashi Co.*, 291 F.R.D. 493, 502 (C.D. Cal. 2013).

### (c)      Plaintiffs' Claims Are Typical of Those of the Class.

"[R]epresentative claims are 'typical' [under Rule 23(a)(3)] if they are reasonably coextensive with those of absent class members."  *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016).  "Measures of typicality include 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured in the same course of conduct.'"  *Id.* (citation omitted).

Here, the claims of Plaintiffs and all class members arise out of the same course of conduct—the undisclosed installation of VisualDiscovery—and assert the same theories of liability.  As a result, the typicality requirement is satisfied.

### (d)      Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of Class Members.

The test for evaluating adequacy of representation under Rule 23(a)(4) is: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  Both prongs are met here.

There is no conflict between Plaintiffs and the Settlement Class members.  Plaintiffs were allegedly harmed in the same way as all class members by being misled into buying Lenovo laptop computers preinstalled with VisualDiscovery malware.  The common point-of-purchase injury incurred by Plaintiffs and class members gives Plaintiffs every incentive to vigorously pursue the class claims.  And in fact, each Plaintiff made important contributions to the case, including by preparing and sitting for deposition.  Each Plaintiff has agreed to undertake the responsibilities of serving as a class

**PLAINTIFFS' MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENTS**                                                **4:15-md-02624-HSG**

representative, and each has testified that he or she will continue to act in the class members' best interests.  *See generally* Dkt. No. 153.

Class Counsel likewise are well qualified to continue representing the Class.  *See* Dkt. No. 153 at 40 (appointing each of the lead firms as Class Counsel for the certified litigation classes); *see also* Joint Decl., ¶¶ 40-41.  Class Counsel are experienced class actions attorneys who have litigated and favorably resolved many cases for the benefit of consumers.  *Id*.  Their track record in obtaining multi-million-dollar recoveries for injured purchasers, as in this case, demonstrates that they possess the necessary skill and expertise to ably represent the Settlement Class.  *Id*.

### 2.    Rule 23(b)(3) Is Satisfied.

#### (a)    Common Questions of Fact and Law Predominate.

Predominance analysis under Rule 23(b)(3) "focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive . . . ."  *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 894-95 (N.D. Cal. 2015) (quoting *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 964 (9th Cir. 2013)).  "When a proposed class challenges a uniform policy, the validity of that policy tends to be the predominant issue in the litigation."  *Nicholson v. UTI Worldwide, Inc.*, No. 3:09-cv-722-JPG-DGW, 2011 WL 1775726, at *7 (N.D. Ill. May 10, 2011) (citation omitted); *see also Bias v. Wells Fargo & Co.*, 312 F.R.D. 528 (N.D. Cal. 2015).  Further, when a settlement class is proposed, the manageability criteria of Rule 23(b)(3) do not apply.  *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

This case involves an alleged uniform policy on the part of Defendants to equip computers with invasive software without disclosing it to the consuming public.  The common thread running through Plaintiffs' statutory claims—under California's Computer Crime Law, Penal Code § 502, California's Computer Spyware Act, Business and Professions Code § 22947 *et seq.*, and California's Invasion of Privacy Act, Penal Code § 630 *et seq.* ("CIPA")—is that Defendants' agreement to preinstall VisualDiscovery resulted in the class members' private communications and data being intercepted, and their computers' performance being compromised, but that Defendants did not inform them that this would happen.  *See*, *e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 817 n.1, 823 (9th Cir. 2012) (concluding that the Computer Fraud and Abuse Act and California's Computer Crime Law are

**PLAINTIFFS' MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENTS**                    **4:15-md-02624-HSG**

"similar privacy statutes" and that claims under them "depend[ed] on the same basic legal theories and factual issues"). In short, Plaintiffs allege that Defendants engaged in identical conduct in relation to each class member; proof of that common conduct would determine each class member's entitlement to recover under the privacy statutes in question. *See, e.g.*, *Ades v. Omni Hotels Mgt. Corp.*, No. 3-CV-02468, 2014 WL 4627271 (C.D. Cal. Sept. 8, 2014) (certifying a CIPA class).

Moreover, as the Court previously found, the trespass claims at common law are susceptible to common proof because they require a showing that by installing VisualDiscovery Defendants wrongfully interfered with the class members' use of their computers and caused harm in the form of diminished operating performance and exposure to privacy and security breaches. These claims depend entirely on whether Defendants' installation of VisualDiscovery effected a wrongful and injurious interference with the class members' chattels. These issues do not vary among purchasers.

Plaintiffs' consumer protections claims also uniformly turn on whether Defendants failed to disclose information about VisualDiscovery that would have been important to an ordinary consumer in deciding whether to buy one of these computers. *See, e.g.*, *Ehret*, 148 F. Supp. 3d at 895; *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993); *Day v. AT & T Corp.*, 63 Cal. App. 4th 325, 332-33 (1998). The key issues of deception and materiality would be proved or disproved using solely common evidence. *See generally* Dkt. No. 131 (in moving for class certification, Plaintiffs catalogued numerous items of common evidence relating to Lenovo's allegedly misleading conduct concerning VisualDiscovery). Thus, common issues in the application of California law predominate.

A contractual choice-of-law analysis under *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 465-66 (1992), demonstrates that the claims of the Settlement Class fall within the scope of an enforceable California choice-of-law provision in the Lenovo-Superfish Business Partnership Agreement (BPA).[5]  *See In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679 (9th Cir. 2018); Dkt. No.

_____

[5] The contractual analysis is one of "two different analyses [under California law] for selecting which law should be applied in an action." *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 710 (9th Cir. 2018) (Nguyen, J., dissenting). The Court need not consider the separate governmental interests test, but if it did, the same conclusion would follow because, for example, state fraudulent concealment laws do not materially differ. *See, e.g.*, *Allapattah Servs., Inc. v. Exxon Corp.*, 188 F.R.D. 667, 673 (S.D. Fla. 1999), *aff'd*, 333 F.3d 1248 (11th Cir. 2003), *aff'd*, 545 U.S. 546 (2005) ("[F]actual disputes arising from the fraudulent concealment doctrine can be properly resolved on a class-wide basis . . .

130-5 (BPA § 12.3) ("This Agreement will be governed by the laws of the State of California.  The Parties agree that any action to enforce any provision of this Agreement or arising out of or based upon this Agreement shall be brought in a state or federal court of competent jurisdiction in the State of California.").  This choice-of-law provision is substantially related to the contracting parties and their transactions giving rise to the settled claims.  Superfish was headquartered in California, and it was in California that Lenovo and Superfish devised their plan to install VisualDiscovery on computers sold throughout the United States.  *E.g.*, Dkt. No. 136-10, ¶¶ 2-3; Dkt. No. 143-1, ¶¶ 2-3.  Their choice-of-law provision is enforceable and applies here.  *See Washington Mutual Bank, FA v. Superior Court*, 24 Cal. 4th 906, 916 (2001) (contractual choice of law is generally enforceable, provided that "the chosen state has a substantial relationship to the parties or their transaction, or that a reasonable basis otherwise exists for the choice of law").

When this Court certified a nationwide Indirect Purchaser Class under California law, it accepted Plaintiffs' position that indirect purchasers are intended third-party beneficiaries of the BPA. Dkt. No. 153 at 38-39; *see Cargill, Inc. v. Souza*, 201 Cal. App. 4th 962, 967 (2011) (a third-party beneficiary need not be named in the contract and has rights where "he or she is a member of a class for whose benefit the contract was made").  Lenovo now concedes that direct purchasers are also intended third-party beneficiaries of the BPA, which obligated Lenovo and Superfish to "protect the privacy and legal rights" of all end-users.  Joint Decl., Ex. B, ¶ 3.5; Dkt. No. 130-5 (BPA § 7.6).  Consequently, the Court's statement that "the choice-of-law question may be resolved on a class-wide basis," Dkt. No. 153 at 38, should apply equally to direct purchasers who were end-users.

Plaintiffs' expert evidence confirms that their claims involve common questions of point-of-purchase injury and damages.  Plaintiffs previously submitted a declaration of their expert Bruce McFarlane, who developed economic methodologies for calculating classwide damages and restitution. Dkt. No. 130-11; Joint Decl., Ex. C.  Plaintiffs also proffered the expert testimony of Steven Gaskin, who developed and tested a survey for use in a conjoint analysis to measure how disclosure of

---

notwithstanding slight variations in state law as to how certain of the elements are described."); *In re Lumber Liquidators Chinese-Mfd. Flooring Durability Mktg. & Sales Practice Litig.*, No. MDL 2743, 2017 WL 2911681, at *7 (E.D. Va. July 7, 2017) (recognizing duty to disclose is well-nigh universal).

**PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENTS**                    **4:15-md-02624-HSG**

VisualDiscovery would have affected the price of the underlying computers. *See* Dkt. No. 131 at 21-23. These experts' models calculate the economic loss to class members as the difference between the price paid for, and the true market value of, the computers. *Id.* at 22. The Court assessed these models in granting certification, holding that "Lenovo's challenge . . . based on plaintiffs' damages models is unavailing." Dkt. No. 153 at 36-38.

> **(b)** **A Class Action Is the Superior Method for Resolving These Claims.**

A class action is superior under Rule 23(b)(3) because it represents the only realistic means through which purchasers of laptops containing Visual Discovery may obtain relief. *See, e.g.*, *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1235 (9th Cir. 1996) (explaining that a class action may be superior where "classwide litigation of common issues will reduce litigation costs and promote greater efficiency"). Class members lack incentive to bring their own cases given the small potential recovery for each individual laptop purchaser. "Cases, such as this, 'where litigation costs dwarf potential recovery' are paradigmatic examples of those well-suited for classwide prosecution." *Mullins v. Premier Nutrition Corp.*, No. 13-CV-01271-RS, 2016 WL 1535057, at *8 (N.D. Cal. Apr. 15, 2016) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998)).

Given the foregoing, Plaintiffs respectfully submit that the Settlement Class should be provisionally certified.

## B.   Preliminary Approval of the Settlement Is Warranted.

There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Before approving a class settlement under Rule 23(e), the court must be satisfied that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008). The court considers whether the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). The proposed Settlement merits preliminary approval under these factors.

1

**1.     The Settlement Resulted from Informed, Arm's-Length Negotiations.**

The first factor looks to the circumstances in which the parties settled. *Mendez v. C-Two Grp.,
Inc.*, No. 13-CV-05914-HSG, 2017 WL 1133371, at *4 (N.D. Cal. Mar. 27, 2017). "An initial
presumption of fairness is usually involved if the settlement is recommended by class counsel after
arm's-length bargaining." *Id.* (quoting *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL
1627973, at *8 (N.D. Cal. Apr. 29, 2011)); *see also Linney v. Cellular Alaska P'ship*, Nos. C-96-3008
DLJ *et al.*, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998)
("The involvement of experienced class action counsel and the fact that the settlement agreement was
reached in arm's length negotiations, after relevant discovery had taken place create a presumption that
the agreement is fair.").

The Settlement here was reached at a fairly advanced stage of the litigation and reflects the
parties' informed knowledge of the strength, weaknesses, and value of the claims. Joint Decl., ¶ 17.
Plaintiffs largely overcame successive motions to dismiss, and secured an order certifying the bulk of
the Class's claims under California law.  Before arriving at the Settlement, Class Counsel had
thoroughly researched the law and the facts, reviewed and analyzed tens of thousands of pages of
documents produced by Defendants, deposed Lenovo witnesses, interviewed Superfish witnesses,
retained experts who provided expert analysis and reports on technical and class damages issues, and
produced each Plaintiff for a deposition.  Joint Decl., ¶ 12.  Class Counsel thereby developed an
understanding of the strengths and weaknesses of the claims and defenses.  Joint Decl., ¶ 17.  While the
Superfish Settlement occurred earlier in the litigation due to Superfish's deteriorating financial
condition, Plaintiffs faced formidable opposition from Lenovo throughout the case.  All parties were
represented by seasoned counsel who pursued their clients' interests.  Joint Decl., ¶ 6.  The settlement
agreements before the Court are the product of intensive negotiations before two highly respected
mediators.  *See Satchell v. Fed. Express Corp.*, No. 03-cv-2659-SI, 2007 WL 1114010, at *4 (N.D. Cal.
Apr. 13, 2007).  This factor accordingly supports preliminary approval.

**2.     The Settlement Treats the Class Members Fairly and Equally.**

The second factor is whether the proposed Settlement provides preferential treatment to any
class member, *see Mendez*, 2017 WL 1133371, at *4, which it does not.  The class definition is

14

objective, comports with the limited release of liability, aligns with the operative facts and claims, and makes it easy for all class members to self-identify.  *See Nicodemus v. Saint Francis Mem'l Hosp.*, 3 Cal. App. 5th 1200, 1212 (2016) (a class definition should "use terminology that will convey sufficient meaning to enable persons hearing it to determine whether they are members of the class") (internal quotation marks and citations omitted).  The proposed claim form has been designed for ease of use, allowing class members to submit claims online or by mail by checking a few boxes to confirm their contact information and computer purchase.  *See* Joint Decl., Ex. B at Ex. 2.  Those who paid out of pocket for credit monitoring, technical support, or other costs reasonably attributable to VisualDiscovery may submit receipts or other documentation to recover their actual losses.  With regard to settlement benefits, the plan of allocation does not differentiate between direct and indirect purchasers and does not favor any segment of computer purchasers over any other.  The Settlement places all class members on equal footing, supporting its approval.

### 3.    The Settlement Falls Within the Range of Possible Approval.

Third, "[t]o determine whether a settlement 'falls within the range of possible approval,' courts focus on 'substantive fairness and adequacy' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.'"  *Schuchard v. Law Office of Rory W. Clark*, No. 15 cv-01329-JSC, 2016 WL 232435, at *10 (N.D. Cal. Jan. 20, 2016) (quoting *Tableware*, 484 F. Supp. 2d at 1080).  "Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly litigation."  *In re LinkedIn User Privacy Litig.*, No. 5:12-cv-03088-EJD, 2015 U.S. Dist. LEXIS 123130, at *22 (N.D. Cal. Sept. 15, 2015); *see also In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993).

The proposed Settlement in this case creates a cash fund of $8,300,000, which under Plaintiff's expert's calculations represents approximately 24% of the recoverable classwide damages.  Joint Decl., ¶¶ 30-32.  After payment of notice and administration costs and any approved award of attorneys' fees, costs, and/or service awards, all funds remaining in the Net Settlement Fund will be distributed to the Class.  Joint Decl., Ex. B, ¶¶ 1.21, 2.16 & Ex. 3 § III.B.  Assuming a 15% claims rate—above average

**PLAINTIFFS' MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENTS**                    **4:15-md-02624-HSG**

for a consumer class action[6]—Plaintiffs estimate that recoveries under the short form claim option will be $40 per computer.  Given that Plaintiffs' expert estimated that average damages per computer range from $16.67 to $100.02, the $40 that Class Counsel anticipate as a minimum Settlement cash payment represents a favorable recovery on a per-computer basis.  And, under the proposed plan of allocation, payment amounts and the method of allocating the Net Settlement Fund align with the value of individual claims and with Plaintiffs' proffered bases for damages.  In contrast to these immediate cash benefits, continued litigation and any trial and appeal would entail an uncertain outcome and further delay.

Superfish no longer exists.  Joint Decl., ¶ 8.  Had Plaintiffs not reached a settlement with it in 2016, there was a significant risk of Superfish declaring bankruptcy, which would have resulted in no class recovery from Superfish, no additional discovery from Superfish, and no ongoing cooperation from its executives and employees.  Joint Decl., ¶¶ 7-8.  Particularly under these circumstances, the Superfish Settlement constitutes a favorable result.  *See, e.g.*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (defendant's precarious financial condition, resulting in bankruptcy, was primary factor demonstrating settlement fairness).

Lenovo has vigorously denied Plaintiffs' allegations of wrongdoing.  Absent settlement, Plaintiffs anticipate Lenovo would aggressively defend this action, including through a renewed motion to dismiss, a decertification motion, and a motion for summary judgment.  Lenovo denies that the class members suffered any injury from VisualDiscovery being on their computers and has argued that the software has long since been deactivated.  Although Plaintiffs dispute Lenovo's arguments, the class members might recover nothing without a settlement.  Resolution of their claims against Lenovo ensures a favorable recovery and avoids substantial litigation risks, expenses, and delay.

The Settlement provides immediate cash relief tied to the value of the settled claims and falls within the range of reasonableness.

---

[6] *See, e.g.*, *Gascho v. Global Fitness Holdings, LLC*, No. 2:11-cv-436, 2014 WL 1350509, at *30 (S.D. Ohio Apr. 4, 2014) (crediting evidence "that response rates in class actions generally range from one to 12 percent"); *In re Packaged Ice Antitrust Litig.*, No. MDL 1952, 2011 WL 6209188, at *14 (E.D. Mich. Dec. 13, 2011); *Touhey v. United States*, No. EDCV 08-01418-VAP (RCx), 2011 WL 3179036, at *7–8 (C.D. Cal. July 25, 2011) (approving settlement where only 2% of class members responded).

16

### 4. Experienced Counsel Recommend Approval.

Finally, the Settlement has no material deficiencies and is supported by Plaintiffs and Class Counsel as fair, reasonable, and adequate. Joint Decl., ¶ 38. Experienced counsel's judgment in this respect carries considerable weight. *See Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)); *Bellinghausen v. Tractor Supply Co.*, No. 13-cv-02377-JSC, 2014 WL 1289342, at *8 (N.D. Cal. Mar. 20, 2015) ("The trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties.").

### C. The Proposed Notice and Notice Program Should Be Approved.

The proposed notice and notice program conform to the Northern District guidelines and the mandates of Rule 23 and due process. *See* Fed. R. Civ. P. 23(c)(2) (requiring "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."). The notice includes all the information required under Rule 23(c)(2)(B): the nature of the action, the class definition, a summary of the class claims, that a class member may enter an appearance through an attorney, that the Court will grant timely exclusion requests, the time and manner for requesting exclusion, and the binding effect of final approval. *See* Joint Decl., Ex. B at Ex. 1-A. The notice includes all information necessary for class members to make informed decisions relating to the Settlement, and all information called for under the Northern District guidelines. *See* Section III.B, *supra*.

While direct notice is not required, *see Briseno v. ConAgra Foods, Inc*, 844 F.3d 1121, 1129 (9th Cir. 2017), here it is the best notice practicable for the approximately 500,000 class members with known contact information. Class Counsel have obtained email and/or physical addresses for these class members from Lenovo and from responses to subpoenas issued to several major retailers, such as Amazon and Best Buy, which sold Lenovo laptops with preinstalled VisualDiscovery. Joint Decl., ¶ 42. These class members will therefore receive direct notice. Specifically, persons with known contact information who did not purchase through Amazon will receive a postcard in the mail and/or an email notifying them of the Settlement. Weisbrot Decl., ¶¶ 11-15; Joint Decl., ¶¶ 43-45. Under a protocol

17

negotiated with Amazon after Amazon objected to Plaintiffs' subpoena, class members who purchased their computers through Amazon will receive email notice directly from Amazon, followed by postcard notice to the Amazon subgroup whose email addresses generate bounce-back messages.  Weisbrot Decl., ¶ 13; Joint Decl., ¶¶ 43-45.  These procedures satisfy due process.  *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 941, 946 (9th Cir. 2015) (notice was first emailed to 35 million class members and then sent via U.S. mail to over 9 million class members whose email addresses generated bounce-back messages); *McCrary v. Elations Co.*, No. EDCV 13-0242 JGB (SPx), 2016 WL 769703, at *7 (C.D. Cal. Feb. 25, 2016) (notice was sent via U.S. mail and email); *In re Magsafe Apple Power Adapter Litig.*, No. 5:091-cv-01911-EJD, 2015 WL 428105, at *10 (N.D. Cal. Jan. 30, 2015) (emails, the primary notice vehicle, were sent to 5,523,878 class members).

Additionally, as outlined in the proposed notice provider's declaration, the publication element of the notice program has been tailored to maximize reach to this Class.  Weisbrot Decl., ¶¶ 21-30. Notice will be posted not just on the dedicated Settlement website but also on websites that Lenovo laptop purchasers, in particular, are likely to visit, and algorithms will refine the notice placements as class members respond with their clicks.  *Id.*; *Briseno*, 844 F.3d at 1129 ("[N]otice by publication . . . on a website . . . is sufficient to satisfy due process.").

In sum, the proposed notices and notice program have been carefully crafted and should be approved by the Court.

### D.    Class Counsel Should Be Appointed as Settlement Class Counsel.

Rule 23(g)(1) requires a court certifying a class to appoint class counsel.  In deciding whom to appoint, the court considers: (1) the work counsel has done in identifying or investigating claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

The Court appointed the undersigned to serve as Interim Class Counsel and as Class Counsel. Class Counsel are experienced class action litigators with knowledge of the facts and claims in this case.  They have undertaken significant investigation and prosecution of the claims, have committed substantial resources on behalf of the Class, and should be appointed as Settlement Class Counsel.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order, thereby:

(1)    preliminarily approving the proposed Settlement;

(2)    provisionally certifying the proposed Settlement Class;

(3)    appointing Plaintiffs as Class Representatives;

(4)    appointing Class Counsel as Settlement Class Counsel;

(5)    approving Plaintiffs' proposed notice program and directing that the notice be carried out under that program;

(6)    appointing Angeion as Claims Administrator and directing it to carry out the duties and responsibilities of the Claims Administrator stated in the Settlement; and

(7)    setting a Final Approval Hearing and certain other dates in connection with the settlement approval process.

Dated:  July 11, 2018                                Respectfully submitted,

**PRITZKER LEVINE LLP**

*/s/ Jonathan K. Levine*
Jonathan K. Levine (SBN 220289)
Elizabeth C. Pritzker (SBN 146267)
Bethany Caracuzzo (SBN 190687)
180 Grand Avenue, Suite 1390
Oakland, CA 94612
Telephone: (415) 692-0772
Facsimile: (415) 366-6110
jkl@pritzkerlevine.com
ecp@pritzkerlevine.com
bc@pritzkerlevine.com

**GIRARD GIBBS LLP**

*/s/ Elizabeth A. Kramer*
Daniel C. Girard (SBN 114826)
Elizabeth A. Kramer (SBN 293129)
Andre M. Mura (SBN 298541)
601 California Street, Suite 1400
San Francisco, CA 94104
Telephone:  (415) 981-4800

19

Facsimile:  (415) 981-4846
dcg@girardgibbs.com
eak@girardgibbs.com
amm@classlawgroup.com

**COTCHETT, PITRE & McCARTHY, LLP**

/s/ *Stephanie D. Biehl*
Stephanie D. Biehl (SBN 306777)
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
sbiehl@cpmlegal.com

*Class Counsel*

**PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENTS**                    **4:15-md-02624-HSG**

## **APPENDIX A**

Plaintiffs propose the following schedule of events in connection with the proposed approval of the Settlement:

| Date | Event |
|---|---|
| Ten (10) days after entry of Preliminary Approval Order | Deadline to provide notice to federal or state officials under 28 U.S.C. § 1715 |
| Fourteen (14) business days after entry of Preliminary Approval Order | Lenovo to make the First Settlement Installment Payment |
| Thirty (30) days after entry of Preliminary Approval Order | Claims Administrator (and Amazon.com) to provide Notice; Claims Administrator to establish Settlement Website |
| Sixty (60) days after entry of Preliminary Approval Order | Claims Administrator to provide Notice by first-class mail to Class Members to whom Amazon.com sent email notices that bounced back |
| Sixty-one (61) days after entry of Preliminary Approval Order | Class Counsel to move for final Settlement approval and apply for attorneys' fees and reimbursement of litigation costs and for service awards to Plaintiffs |
| Seventy-five (75) days after entry of Preliminary Approval Order | Deadline for Class Members to opt out or object |
| Ninety (90) days after entry of Preliminary Approval Order | Lenovo to make the Second Settlement Installment Payment |
| One hundred five (105) days after entry of Preliminary Approval Order | Claims administrator to provide affidavit reporting on notice and claims processes and results |
| 14 days before Final Approval Hearing | Class Counsel to submit reply papers in support of their motion for final Settlement approval and application for attorneys' fees and reimbursement of litigation costs and for service awards to Plaintiffs |
| One hundred twenty (120) days after entry of Preliminary Approval Order | Deadline for Class Members to submit claims |
| At least one hundred twenty (120) days after entry of Preliminary Approval Order | Final Approval Hearing |

**PLAINTIFFS' MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENTS**                    **4:15-md-02624-HSG**