UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: LENOVO ADWARE LITIGATION<br><br>This Document Relates to All Cases | Case No. 15-md-02624-HSG<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 230 |

Pending before the Court is the unopposed motion for preliminary approval of class action settlement filed by Plaintiffs Jessica Bennett, Richard Krause, Robert Ravencamp, and John Whittle. Dkt. Nos. 230, 237. The parties have reached a settlement regarding Plaintiffs' claims and now seek the required court approval. For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement.

## I. BACKGROUND

### A. Factual Background

Plaintiffs bring this consumer class action against Defendants Lenovo, Inc. and Superfish, Inc., asserting claims under federal, California, and New York law. *See* Dkt. No. 162 (Amended Complaint). Plaintiffs allege that Superfish's VisualDiscovery software, which Lenovo had preinstalled on its laptops, created performance, privacy, and security issues. *Id.* Plaintiffs allege several causes of action against Superfish and Lenovo for violations of: (1) the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 *et seq.*; (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (3) California's Consumer Legal Remedies Act, §§ 1750 *et seq.*; (4) California's Computer Crime Law, Cal. Penal Code § 502; (5) California's Invasion of Privacy Act, Cal. Penal Code §§ 630 *et seq.*; (6) trespass to chattels under California law; (7) New York's

Deceptive Acts and Practices Statute, N.Y. Gen. Bus. Law § 349; and (8) trespass to chattels under New York law. *Id.* ¶¶ 131–152, 167–235. Plaintiffs also allege a violation of the Wiretap Act, 18 U.S.C. §§ 2510 *et seq.*, against Superfish. *Id.* ¶¶ 153–66.

On January 21, 2016, Defendant filed a motion to dismiss Plaintiffs' claims for lack of standing and failure to state a claim. *See* Dkt. No. 98. On July 22, 2016, Plaintiffs filed a motion for class certification. *See* Dkt. No. 131. On October 27, 2016, the Court[1] granted Defendant's motion to dismiss in part, holding that Plaintiffs failed to state a claim for relief under New York's Deceptive Acts and Practices Statute. *See* Dkt. No. 153 at 17–18. The Court also granted Plaintiffs' motion for class certification in part, certifying an indirect purchaser class and California class. *See* Dkt. No. 153 at 24–40. The "Indirect Purchaser Class" includes:

> All persons who purchased one or more Lenovo computer models, on which VisualDiscovery was installed, in the United States from someone other than Lenovo.

*See id.* at 40. And the "California Class" includes:

> All persons who purchased one or more Lenovo computer models, on which VisualDiscovery was installed in California.

*Id.* The Court denied Plaintiffs' motion to certify a direct purchaser class because the Court had held that "[P]laintiffs have not demonstrated that class certification is appropriate for any of their claims under New York or federal law." *Id* at 39. In response, Plaintiffs filed an amended consolidated class action complaint ("ACCAC") on December 7, 2016. *See* Dkt. No. 162. On January 17, 2017, Lenovo moved to dismiss only Plaintiffs' realleged claim under New York's Deceptive Acts and Practices Statute, N.Y. Gen. Bus. Law § 349. *See* Dkt. No. 175. On January 30, 2018, the Court granted Lenovo's partial motion to dismiss. Dkt. No. 210.

Plaintiffs initially reached a settlement with Superfish and filed a motion for preliminary approval of class action settlement as to Superfish on December 9, 2016. *See* Dkt. No. 163. The parties agreed to hold the motion for preliminary approval of that partial settlement in abeyance until the Court ruled on further motions regarding class certification. *See* Dkt. No. 199; *see also*

---

[1] This action was reassigned on November 2, 2017, from the Honorable Ronald M. Whyte to the Honorable Haywood S. Gilliam, Jr. *See* Dkt. No. 156.

1 Dkt. No. 206 at 31–33. Plaintiffs withdrew their motion for preliminary approval of the Superfish settlement when the currently pending motion for preliminary approval, which covers settlements with both Superfish and Lenovo, was filed. Dkt. No. 235.

**B.     Settlement Agreement**

    **i.     Superfish Settlement**

Following extensive formal discovery and with the assistance of a mediator, Plaintiffs and Superfish entered into a settlement agreement in October 2015. Dkt. No. 230 at 2; Dkt. No. 163 at 3; Dkt. No. 231-1 ("Superfish SA"). Superfish has since been dissolved. Dkt. No. 230 at 3; Dkt. No. 231 ¶ 8.

The key terms of the Superfish settlement are as follows:

<u>Class Definition</u>: The Settlement Class is defined as all persons who purchased a Lenovo computer in the United States on which VisualDiscovery was installed by Lenovo. Superfish SA ¶ 1.12.

<u>Settlement Benefits</u>: Superfish agreed to pay $1,000,000 (the "Superfish Settlement Fund") to settle the claims against it. Superfish SA ¶ 1.13. Superfish agreed to provide substantial cooperation to Plaintiffs, including producing additional documents and discovery relevant to the litigation, providing assistance to establish the authenticity and admissibility of documents, making knowledgeable persons then-employed by Superfish available for interviews, responding to requests for assistance in understanding the facts at issue, producing at trial in person, by deposition or affidavit, representatives to testify, and assisting in seeking certification of the Settlement Class. *Id.* ¶¶ 2.5, 4.3.

The Settlement Fund will be used to: (i) pay all necessary expenses associated with the Escrow Account; (ii) pay all necessary expenses to administer the Settlement, including the cost of a settlement administrator and notice costs; (iii) pay any award to Class Counsel of attorneys' fees and reimbursement of litigation expenses; (iv) pay class members pursuant to a plan of allocation; (v) pay any cy pres recipients; and (vi) pay any taxes and tax expenses, which are treated as costs of administration of the Settlement Fund. Dkt. No. 163 at 8. Unless the Settlement does not become final, no portion of the Settlement Fund shall revert to Superfish. Superfish SA ¶ 6.4.

Release: Class members release any and all claims arising out of the installation and operation of Superfish VisualDiscovery software on certain laptop computers as alleged in the litigation. Superfish SA ¶ 1.8.

Class Notice, Opt-Out: Class notice will be provided in accordance with the Lenovo Settlement Agreement. *See* Dkt. No. 163 at 10–11 and n.4.

Incentive Award, Attorneys' Fees and Costs: The Superfish Settlement Agreement does not limit the potential amount sought for an incentive award, or for attorneys' fees.

### ii. Lenovo Settlement

Plaintiffs and Lenovo, also after extensive discovery and with the assistance of a mediator, entered into a settlement agreement on April 27, 2018. Dkt. No. 230 at 4; Dkt. No. 231-2 ("Lenovo SA").

The key terms are as follows:

Class Definition: The Settlement Class is defined as:

All Persons who purchased one or more of the following computers, not for resale, within the United States between September 1, 2014 and February 28, 2015:

- G Series: G410, G510, G710, G40-70, G50-70, G40-30, G50-30, G50-45
- U Series: U430P, U430Touch, U530Touch
- Y Series: Y40-70, Y50-70 • Z Series: Z50-75, Z40-70, Z50-70
- Flex Series: Flex2 14D, Flex2 15D, Flex2 14, Flex2 15, Flex2 15(BTM), Flex 10
- MIIX Series: MIIX2-10, MIIX2-11
- YOGA Series: YOGA2Pro-13, YOGA2-13, YOGA2-11BTM, YOGA2-11HSW

Lenovo SA ¶¶ 1.6, 1.7.

Excluded from the Class are Defendants, the officers, directors, and affiliates of Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest. *Id.* ¶ 1.6

Settlement Benefits: Lenovo will make a $7,300,000 non-reversionary payment that will be added to the $1,000,000 non-reversionary payment Superfish previously made. The two

4

payments will constitute the Settlement Fund ("Total Settlement Fund") from which any class member may make a claim. Superfish SA ¶¶ 1.13, 4.1; Lenovo SA ¶¶ 1.34, 1.35, 2.1.

Lenovo has separately entered into a consent decree with the Federal Trade Commission and 32 attorneys general. The consent decree forbids Lenovo from misrepresenting any features of software preloaded on laptops to inject advertising into browsing sessions or to transmit sensitive consumer information to third parties. Dkt. No. 231 ¶¶ 19–20. If Lenovo preinstalls such software, it must obtain consumers' affirmative consent before the software runs on their laptops, and Lenovo also must implement a comprehensive security program for 20 years for most consumer software preloaded on its laptops. *Id.* ¶ 20.

Release: All settlement class members will release:

> any and all claims, rights, causes of action, liabilities, actions, suits, damages, or demands of any kind whatsoever, known or unknown, matured or unmatured, at law or in equity, existing under federal or state law, that relate to the installation of VisualDiscovery on a Class Computer between September 1, 2014, and February 28, 2015 and that were or could have been alleged in the Litigation against Defendant, including Unknown Claims as defined in ¶ 1.39 herein. "Released Claims" does not include claims relating to the enforcement of the settlement.

Lenovo SA ¶ 1.30.

Class Notice: A third-party settlement administrator will send class notices via U.S. mail and/or email based on lists provided by Lenovo and third parties. Lenovo SA ¶ 1.22, Ex. 1; Dkt. No. 240-1; Dkt. No. 232 ¶ 11. The settlement administrator will also implement a digital media campaign targeting approximately 3,410,000 Lenovo users. Dkt. No. 232 at 21–26. The notice will include: the nature of the action, a summary of the settlement terms, and instructions on how to object to and opt out of the settlement, including relevant deadlines. Lenovo SA ¶ 1.22, Ex. 1; Dkt. No. 240-1.

Opt-Out Procedure: The parties initially proposed that any putative class member who does not wish to participate in the settlement must submit a request for exclusion from the class no later than 75 days after entry of the Preliminary Approval Order. Lenovo SA ¶ 1.25. The parties agreed at hearing that the deadline for a putative class member to submit a request for exclusion would be 75 days after the mailing of class notice.

Incentive Award: Although the Lenovo Settlement Agreement does not include a limit on the incentive awards that the Named Plaintiffs may seek, the exemplar notice forms indicate that each of the Named Plaintiffs will apply for an incentive award of $5,000. Lenovo SA, Ex. 1-A at 6; Dkt. No. 240-1 at 6.

Attorneys' Fees and Costs: Neither settlement agreement includes a limit on attorneys' fees and costs. *See* Lenovo SA ¶¶ 6.1–6.7. One exemplar notice form indicates that attorneys' fees will not exceed 30% of the Settlement Fund, and Plaintiffs' counsel confirmed at hearing that counsel will not seek attorneys fees beyond 30% of the Settlement Fund. Lenovo SA, Ex. 1-A at 6.

## II. PROVISIONAL CLASS CERTIFICATION

Because the proposed Settlement Class is different from the previously-certified classes, the Court first considers whether provisional class certification is appropriate because it is a prerequisite to preliminary approval of a class action settlement.

### A. Legal Standard

Plaintiffs bear the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–351 (2011). Class certification is a two-step process. First, a plaintiff must establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality, typicality, and adequacy of representation. *Id.* at 349. Second, she must establish that at least one of the bases for certification under Rule 23(b) is met. Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3), she must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### B. Analysis

To determine whether provisional certification is appropriate, the Court considers whether the requirements of Rule 23(a) and Rule 23(b)(3) have been met. As discussed in more detail below, the Court finds those requirements have been met in this case.

### iii. Rule 23(a) Certification

#### a. Numerosity

Rule 23(a)(1) requires that the putative class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Court finds that numerosity is satisfied here because joinder of the approximately 797,000 potential class members would be impracticable. *See* Dkt. No. 230 at 8.

#### b. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A contention is sufficiently common where "it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S at 350. Commonality exists where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008). "What matters to class certification . . . is not the raising of common 'questions'―even in droves—but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S at 350. Even a single common question is sufficient to meet this requirement. *Id.* at 359.

"In this case, all class members were exposed to the same disclosure—that is no disclosure at all—and purchased the allegedly defective product." Dkt. No. 153 at 27. Common questions of law and fact in this action stem from this non-disclosure, and involve resulting privacy, security, and performance issues. Dkt. No 230 at 8–9. Accordingly, the Court finds that the commonality requirement is met in this case.

#### c. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)

7

1 (internal quotation marks omitted). That said, under the "permissive standards" of Rule 23(a)(3), the claims "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Plaintiffs' claims are both factually and legally similar to those of the putative class because Defendant's alleged nondisclosure affects Plaintiffs and all settlement class members in the same way. Dkt. No. 230 at 9. This is sufficient to satisfy the typicality requirement.

#### d. Adequacy of Representation

Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must address two legal questions: (1) whether the named Plaintiffs and their counsel have any conflicts of interest with other class members, and (2) whether the named Plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). This inquiry "tend[s] to merge" with the commonality and typicality criteria. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). In part, these requirements determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

The Court is unaware of any actual conflicts of interest in this matter and no evidence in the record suggests that either Plaintiffs or proposed class counsel have a conflict with other class members. Dkt. No. 230 at 9–10. The Court previously appointed Plaintiffs' counsel as class counsel in this action. Dkt. No. 153 at 40. The Court finds that proposed class counsel and Plaintiffs have prosecuted this action vigorously on behalf of the class to date, and will continue to do so. The adequacy of representation requirement is therefore satisfied.

#### iv. Rule 23(b)(3) Certification

To certify a class, Plaintiffs must also satisfy the two requirements of Rule 23(b)(3). First, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). And second, "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* The Court finds that both are met in this case.

8

### a. Predominance

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks omitted). The Supreme Court has defined an individual question as "one where members of a proposed class will need to present evidence that varies from member to member . . . ." *Id.* (internal quotation marks omitted). A common question, on the other hand, "is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (internal quotation marks omitted).

Here, the Court finds for purposes of settlement that the common questions raised by Plaintiffs' claims predominate over questions affecting only individual members of the proposed class. Plaintiffs allege that Defendant's nondisclosure affected all Class Members in the same way through the same set of actions and decisions. *See* Dkt. No. 162 ¶¶ 131–235.

1. Multistate Law Analysis[2]

Plaintiffs allege claims under federal law, as well as California and New York state laws. *See* Dkt. No. 162. Here, the Court need not choose one state's law to apply to the entire class. The application of the laws of two different states to Defendant's alleged violations does potentially weigh against a finding of predominance, as variations in state law could individualize the questions that otherwise would have been common among the class members. For the purposes of settlement, given the high-level similarities in the laws of New York and California as to the asserted claims, and because Defendant's procedures were uniform as to all class members, the Court finds the predominance requirement is satisfied for purposes of provisional class certification.

### b. Superiority

The superiority requirement tests whether "a class action is superior to other available

---

[2] The most recent guidance from the Ninth Circuit, which held that when evaluating certification in a putative multi-state class action, a federal court must "undertake a choice of law analysis" even in the context of preliminary settlement approval, is pending rehearing en banc. *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 702 (9th Cir. 2018), *reh'g en banc granted sub nom. In re Hyundai And Kia Fuel Econ. Litig.*, No. 15-56014, 2018 WL 3597310 (9th Cir. July 27, 2018). Nonetheless, the Court will consider the issue preliminarily at this stage, and may undertake further analysis at the final approval stage depending on developments in *In re Hyundai*.

methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id.*

Here, because common legal and factual questions predominate over individual ones, and taking into account the large size of the proposed class, the Court finds that the judicial economy achieved through common adjudication renders class action a superior method for adjudicating the claims of the proposed class.

### v. Class Representative and Class Counsel

Because the Court finds that Plaintiffs meet the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiffs as class representatives. When a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). Factors that courts should consider when making that decision include:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

The Court previously appointed Pritzer Levine, Girard Gibbs, and Cotchett, Pitre & McCarthy as Class Counsel. Dkt. No. 153. Given Plaintiffs' counsel's diligence in prosecuting this action to date, the Court appoints Pritzer Levine, Girard Gibbs, and Cotchett, Pitre & McCarthy as Class Counsel for the purpose of settlement.

## III. PRELIMINARY SETTLEMENT APPROVAL

### A. Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a

certified class—or a class proposed to be certified for purposes of settlement— may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks omitted). In those situations, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

Courts may preliminarily approve a settlement and direct notice to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not grant improper preferential treatment to class representatives or other segments of the class; and (4) falls within the range of possible approval. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026.

**B. Analysis**

**i. Settlement Process**

The first factor the Court considers is the means by which the parties settled the action. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).

Here, class counsel believes, based on significant discovery, that the settlement is fair, adequate, and reasonable. Dkt. No. 230 at 14, 17. The Court consequently finds that this factor

11

weighs in favor of preliminary approval.

### ii. Preferential Treatment

The Court next considers whether the settlement agreement provides preferential treatment to any class member. The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth.*, 654 F.3d at 947. For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives." *Tableware*, 484 F. Supp. 2d at 1079.

Although the proposed notice plan attached to the Lenovo Settlement Agreement authorizes each Named Plaintiff to seek an incentive award of $5,000 for his or her role as named plaintiffs in this lawsuit, *see* Lenovo SA, Ex. 1-A at 6; Dkt. No. 240-1 at 6, the Court will ultimately determine whether each Named Plaintiff is entitled to such an award and the reasonableness of the amounts requested. Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Plaintiffs must provide sufficient evidence to allow the Court to evaluate each Named Plaintiff's award "individually, using relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (internal quotation marks omitted). The Court will consider the evidence presented at the final fairness hearing and evaluate the reasonableness of any incentive award request. Nevertheless, because incentive awards are not per se unreasonable, the Court finds that this factor still weighs in favor of preliminary approval. *See Rodriguez,* 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action cases" and "are discretionary") (emphasis omitted).

### iii. Settlement within Range of Possible Approval

The third factor that the Court considers is whether the settlement is within the range of

1 possible approval. To evaluate whether the settlement amount is adequate, "courts primarily

2 consider plaintiffs' expected recovery balanced against the value of the settlement offer."

3 *Tableware*, 484 F. Supp. 2d at 1080. This requires the Court to evaluate the strength of Plaintiffs'

4 case.

5 Here, assuming a 15% claims rate, Plaintiffs estimate that recoveries under the short form

6 claim option will be approximately $40 per computer, and the total settlement amount constitutes

7 approximately 24% of Plaintiffs' maximum possible recovery at trial. Dkt. No. 230 at 15–16.

8 There is substantial risk Plaintiffs would face in litigating the case given the nature of the asserted

9 claims. *Id.* at 15–16. Plaintiffs acknowledge, for example, that Plaintiffs and the class members

10 would face risks in proceeding past the motion to dismiss phase, as well as a risk of class

11 decertification. *See id.* The Court finds that the settlement amount, given this risk, weighs in

12 favor of granting preliminary approval.

### iv. Obvious Deficiencies

The fourth and final factor that the Court considers is whether there are obvious deficiencies in the settlement agreement. The Court finds no obvious deficiencies, and therefore finds that this factor weighs in favor of preliminary approval.

\*   \*   \*

Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval.

## IV. MOTION FOR FINAL SETTLEMENT APROVAL AND ATTORNEYS' FEES

The Court **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval.

## V. PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct notice to the class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

    (i)    the nature of the action;
    (ii)   the definition of the class certified;
    (iii)  the class claims, issues, or defenses;
    (iv)  that a class member may enter an appearance through an attorney if the member so desires;
    (v)   that the court will exclude from the class any member who requests exclusion;
    (vi)  the time and manner for requesting exclusion; and
    (vii) the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B).

The Court finds that the proposed notice, Dkt. No. 240-1, is the best practicable form of notice under the circumstances.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement. The parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this Order:

| Event | Date |
| --- | --- |
| Deadline for Settlement Administrator to mail notice to all putative class members | |
| Filing Deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for class members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive payment | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan.

**IT IS SO ORDERED.**

Dated: 11/21/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge

14