JONATHAN K. LEVINE (SBN 220289)
jkl@pritzkerlevine.com
ELIZABETH C. PRITZKER (SBN 146267)
ecp@pritzkerlevine.com
PRITZKER LEVINE LLP
180 Grand Avenue, Suite 1390
Oakland, CA 94612
Telephone: (415) 692-0772
Facsimile: (415) 366-6110

DANIEL C. GIRARD (SBN 114826)
dgirard@girardsharp.com
ELIZABETH A. KRAMER (SBN 293129)
ekramer@girardsharp.com
ANDRE M. MURA (SBN 298541)
amm@classlawgroup.com
GIRARD SHARP LLP
601 California Street, Suite 1400
San Francisco, CA 94104
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

ERIC J. BUESCHER (SBN 271323)
ebuescher@cpmlegal.com
COTCHETT, PITRE & McCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Class Counsel*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTHERN CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| IN RE: LENOVO ADWARE LITIGATION | Case No. 4:15-md-02624-HSG |
| This Document Relates to All Cases | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Date: April 18, 2019 |
| | Time: 2:00 p.m. |
| | Hon. Haywood S. Gilliam, Jr. |
| | Courtroom 2, Fourth Floor |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ............................................................................................V

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................................1

I.       INTRODUCTION ..................................................................................................................1

II.      OVERVIEW OF THE LITIGATION ....................................................................................1

         A.       Procedural History ....................................................................................................2

                  1.       Settlement with Superfish ...........................................................................2

                  2.       Continued Litigation Against Lenovo .........................................................3

                  3.       Class Certification and Subsequent Litigation.............................................3

                  4.       Settlement with Lenovo ...............................................................................4

                  5.       Preliminary Approval of the Settlement ......................................................4

III.     ARGUMENT ..........................................................................................................................5

         A.       Legal Standard for Final Approval of Class Settlements............................................5

         B.       The Settlement Is Fair, Reasonable, and Adequate and Should Be Approved................6

                  1.       The Settlement Provides Considerable Relief to Class Members .........................6

                  2.       Class Member's Positive Reaction Favors Final Approval ...............................7

                  3.       The Settlement Eliminates Significant Risk to the Class....................................8

                  4.       The Stage of the Proceedings and Extent of Discovery Supports Final
                           Approval ......................................................................................................9

                  5.       The Settlement Was Negotiated at Arm's-length and Is Based on the
                           Recommendations of Experienced Counsel ........................................................10

         C.       The Court-Approved Notice Program Satisfies Due Process and Adequately
                  Provided Notice to Class Members....................................................................................11

                  1.       The Court Approved Plaintiffs' Notice Plan ...............................................12

                  2.       The Notice Program Satisfies Due Process .........................................................12

         D.       The Plan of Allocation is Fair, Reasonable and Adequate and Should Be Approved....14

IV.      CONCLUSION........................................................................................................................15

i

1

2

**TABLE OF AUTHORITIES**

**Cases**

*Bellinghausen v. Tractor Supply Co.*
2014 WL 1289342 (N.D. Cal. Mar. 20, 2015)...................................................................11

*Churchill Vill., LLC v. Gen. Elec.*
361 F.3d 566 (9th Cir. 2004)................................................................................................6, 7

*Class Plaintiffs v. City of Seattle*
955 F.2d 1268 (9th Cir. 1992)............................................................................................6, 10

*Four in One Co. v. S.K. Foods, L.P.*
2014 WL 4078232 (E.D. Cal. Aug. 14, 2014)..................................................................14

*Garner v. State Farm Mut. Auto. Ins. Co.*
2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)...............................................................6, 11

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998)............................................................................................6, 7

*In re Citric Acid Antitrust Litig.*
145 F. Supp. 2d 1152 (N.D. Cal. 2001)............................................................................14

*In re Fleet/Norstar Sec. Litig.*
935 F. Supp. 99 (D.R.I. 1996)..............................................................................................7

*In re Magsafe Apple Power Adapter Litig.*
2015 WL 428105 (N.D. Cal. Jan. 30, 2015)....................................................................13

*In re Omnivision Technologies, Inc.*
559 F. Supp. 2d 1036 (N.D. Cal. 2008)............................................................................14

*In re Online DVD-Rental Antitrust Litig.*
779 F.3d 934 (9th Cir. 2015)........................................................................................1, 6, 13

*In re Painewebber Ltd. P'ships Litig.*
171 F.R.D. 104 (S.D.N.Y. 1997)........................................................................................11

*Jaffe v. Morgan Stanley & Co.*
2008 WL 346417 (N.D. Cal. Feb. 7, 2008).......................................................................9

*Lane v. Facebook, Inc.*
696 F.3d 811 (9th Cir. 2012)..............................................................................................12

*McCrary v. Elations Co.*
2016 WL 769703 (C.D. Cal. Feb. 25, 2016).....................................................................13

iii

*Mullins v. Direct Digital, LLC*
    795 F.3d 654 (7th Cir. 2015) ...................................................................................13

*Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*
    221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................7, 10, 11

*Officers for Justice v. Civil Serv. Com'n of City and Cty. of San Francisco*
    688 F.2d 615 (9th Cir. 1982) ...................................................................................11

*Phillips Petroleum Co. v. Shutts*
    472 U.S. 797 (1985)..........................................................................................11, 12

*Rodriguez v. West Publishing Corp.*
    563 F.3d 948 (9th Cir. 2009) ........................................................................9, 10, 12

*Torrisi v. Tucson Elec. Power Co.*
    8 F.3d 1370 (9th Cir. 1993) .......................................................................................8

*Vasquez v. Coast Valley Roofing*
    670 F. Supp. 2d 1114 (E.D. Cal. 2009) .....................................................................5

*Wright v. Linkus Enterprises*
    259 F.R.D. 468 (E.D. Cal. 2009) ...............................................................................8

**Other Authorities**

*Manual for Complex Litigation*, Fourth (Fed. Judicial Center 2004) § 23.63 .........................5

William B. Rubenstein, Albert Conte & Herbert Newberg, 4 Newberg on Class Actions § 13:39
    (5th ed. 2014)...........................................................................................................5

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 18, 2019, at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Haywood S. Gilliam, Jr., United States District Judge for the Northern District of California, plaintiffs Jessica Bennett, Richard Krause, Robert Ravencamp, and John Whittle ("Plaintiffs), will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23, for an Order:

    a)    Granting final approval of the proposed Settlement with Defendant Superfish Inc. ("Superfish") (the "Superfish Settlement") and the proposed Settlement with Defendant Lenovo (United States) Inc. ("Lenovo") (the "Lenovo Settlement") (collectively, the "Settlement");

    b)    Finally approving Plaintiffs' Plan of Allocation; and

    c)    Dismissing with prejudice Plaintiffs' claims against Defendants.

The grounds for the motion are as follows:  (a) the Settlement is fair, reasonable, and adequate and satisfied Federal Rule of Civil Procedure 23(e); (b) the Settlement is a product of arm's-length negotiations; (c) the Court-approved notice program satisfies due process and Rule 23; and (d) the Plan of Allocation is fair, reasonable, and adequate.

This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the Settlement, including all exhibits thereto, the Joint Declaration of Jonathan K. Levine, Elizabeth A. Kramer, and Eric J. Buescher ("Joint Decl."), the Declaration of Steven Weisbrot ("Weisbrot Decl."), the Declaration of Brian Buckley, ("Buckley Decl."), the declarations of Jessica Bennett ("Bennett Decl."), Richard Krause ("Krause Decl."), Robert Ravencamp ("Ravencamp Decl."), and John Whittle ("Whittle Decl."), all papers and records on file in this matter, and such other matters and argument as the Court may consider.

///

///

///

**PLAINTIFFS' MOTION FOR FINAL**
**APPROVAL OF CLASS ACTION SETTLEMENT**        **4:15-md-02624-HSG**

1

Dated: February 14, 2019

Respectfully submitted,

2

**GIRARD SHARP LLP**

3

/s/ *Elizabeth A. Kramer*

4

Daniel C. Girard (SBN 114826)
Elizabeth A. Kramer (SBN 293129)

5

Andre M. Mura (SBN 298541)
601 California Street, Suite 1400

6

San Francisco, CA 94104
Tel.: (415) 981-4800

7

dgirard@girardsharp.com

8

ekramer@girardsharp.com
amm@classlawgroup.com

9

10

**PRITZKER LEVINE LLP**

11

/s/ *Jonathan K. Levine*

12

Jonathan K. Levine (SBN 220289)
Elizabeth C. Pritzker (SBN 146267)

13

180 Grand Avenue, Suite 1390
Oakland, California 94612

14

Tel: (415) 692-0772
jkl@pritkzkerlevine.com

15

ecp@pritzkerlevine.com

16

17

**COTCHETT, PITRE & McCARTHY, LLP**

18

/s/ *Eric J. Buescher*

19

Eric J. Buescher (SBN 271323)
San Francisco Airport Office Center

20

840 Malcolm Road, Suite 200
Burlingame, CA 94010

21

Tel.: (650) 697-6000
ebuescher@cpmlegal.com

22

*Class Counsel*

23

24

25

26

27

28

vi

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.   <u>INTRODUCTION</u>**

Pursuant to Federal Rule of Civil Procedure 23(e) and the Court's Order granting settlement class certification, preliminary approval of the proposed Settlement, and the plan for providing class notice to potential class members, Plaintiffs submit this memorandum in support of final approval of the Settlement with Defendants Lenovo and Superfish.

The Settlement is "fair, reasonable, and adequate," and represents a substantial recovery for the Class.   *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 945 (9th Cir. 2015).  The Settlement provides for a cumulative Settlement Fund of $8,300,000.  The Settlement delivers considerable relief to the Settlement Class, whose members would otherwise face substantial uncertainty and delay waiting for a successful result in this litigation.  Despite the strength of Plaintiffs' claims, the Class continues to face significant litigation risk in the form of potential decertification of the certified classes, motions for summary judgment, expert discovery, trial, and potential appeals.

The Settlement and its related procedures conform to all Northern District class settlement guidelines and should be finally approved.  The Settlement with Lenovo was negotiated at length under the supervision of Magistrate Judge Jacqueline Scott Corley, delivers a favorable result to the Settlement Class, and will avoid protracted litigation in this nationwide consumer case.  Based on Plaintiffs' expert report, Class Counsel estimate a maximum, best case $35 million recovery at trial, had Plaintiffs prevailed.  The Settlement of $8,300,000 represents approximately 24% of Plaintiffs' estimated recoverable damages. Although the deadline for opt-outs and objections has not passed, to date the reaction of Class members is highly positive, as measured by the fact that only 43 have requested exclusion and none have objected.  Weisbrot Decl. ¶¶ 22-23.

**II.   <u>OVERVIEW OF THE LITIGATION</u>[1]**

In 2014, Lenovo and Superfish entered into a business partnership to install software called VisualDiscovery on various models of Lenovo laptops.  Joint Decl. ¶ 4.  VisualDiscovery was not

---

[1] Given the Court's familiarity with this litigation, the procedural history is recounted briefly here and is more fully described in the Joint Declaration.

1

disclosed to consumers.  *Id.*   Plaintiffs alleged that the software intercepted web traffic, giving

Superfish access to users' communications while jeopardizing the security of their information, and

degraded their computers' performance.  Dkt. No. 96.  Plaintiffs also alleged and discovery confirmed

that VisualDiscovery operated continuously in the background of computers, analyzing and injecting

ads into visited webpages.  *Id.*

VisualDiscovery was installed on nearly 800,000 Lenovo laptops sold in the United States

between September 1, 2014 and February 28, 2015.  Dkt. No. 96.  On January 18, 2015, in response to

mounting complaints about the effects of VisualDiscovery, Lenovo instructed Superfish to turn the

software off at the server level.  Dkt. No. 31-2, Ex. 35.  On February 15, 2015, various news outlets

reported on the privacy, security, and performance problems associated with VisualDiscovery.  Lenovo

soon ended its relationship with Superfish and had the software removed.[2]  Dkt. No. 96.

### A.      Procedural History

After the public learned of VisualDiscovery issues, 27 class actions were filed in federal courts

around the country.  Joint Decl. ¶ 5.  In June 2015, the Judicial Panel on Multidistrict Litigation

transferred the actions to this District for coordinated pretrial proceedings.  Dkt. Nos. 1, 2, 8.  In July

2015, the Court appointed Pritzker Levine LLP, Girard Gibbs LLP, and Cotchett, Pitre & McCarthy,

LLP as Interim Lead Class Counsel.  Dkt. No. 44.

### 1.      Settlement with Superfish

In October 2015, the parties participated in a mediation before Judge Edward A. Infante (Ret.)

of JAMS.  Dkt. No. 92.  That mediation ultimately led to a $1,000,000 settlement agreement with

Superfish.  Joint Decl. ¶ 6.  The Superfish Settlement negotiations entailed the exchange of confidential

information regarding liability and damages, and disclosure of details regarding Superfish's financial

condition and insurance coverage.  *Id.*  Had the Superfish Settlement not been reached in 2016,

Superfish likely would have been bankrupt by the time the case reached trial.  *Id.* at ¶ 8.  Superfish has

since been dissolved.  *Id.*

---

[2] Lenovo Security Advisory, *Superfish Vulnerability*, LENOVO, https://support.lenovo.com/us/en/
product_security/superfish (visited May 16, 2018).

**PLAINTIFFS' MOTION FOR FINAL**
**APPROVAL OF CLASS ACTION SETTLEMENTS**                    **4:15-md-02624-HSG**

The Superfish Settlement required Superfish to cooperate with Plaintiffs in their continued litigation against Lenovo, and in doing so, Superfish produced to Plaintiffs data and documents, provided information and assistance on various issues during discovery, including the technical aspects of VisualDiscovery and Superfish's early negotiations with Lenovo, and made Superfish executives and employees available for interviews.[3]  Joint Decl. ¶ 7.

### 2. Continued Litigation Against Lenovo

Plaintiffs filed their Consolidated Class Action Complaint in November 2015.  Joint Decl. ¶ 9. Plaintiffs alleged that Defendants preinstalled on Lenovo laptops a software called VisualDiscovery that secretly intercepted information from web-browsing activities to deliver targeted advertisements, inhibited computer performance, and created significant security and privacy risks.  Plaintiffs further alleged that VisualDiscovery functioned uniformly and in an unlawful manner and that they and similarly-situated consumers had overpaid for the Lenovo laptops on which the undisclosed software was installed.  Dkt. No. 96.

Lenovo moved to dismiss in January 2016.  Dkt. No. 98.  After oral argument in April 2016, the Court took the motion under submission.  Joint Decl. ¶ 11.  While Lenovo's motion was pending, Plaintiffs moved for class certification (Dkt. No. 131), and the Court heard argument on that motion in September 2016.  Joint Decl. ¶ 11.

In October 2016, the Court granted in part and denied in part Lenovo's motion to dismiss and Plaintiffs' motion for class certification.  Dkt. No. 153.  Plaintiffs filed a Consolidated Amended Complaint on December 7, 2016.  Dkt. No. 162.

### 3. Class Certification and Subsequent Litigation

On October 27, 2016, the Court certified the following classes:

> **Indirect Purchaser Class** (represented by Jessica Bennett, John Whittle, and Rhonda Estrella[4]): All persons who purchased one or more Lenovo computer models, on which VisualDiscovery was installed, in the United States from someone other than Lenovo.

---

[3] In January 2016, the Court entered an Order staying all deadlines as to Superfish in view of the proposed Superfish Settlement.  Dkt. No. 102.

[4] Plaintiff Estrella subsequently withdrew from the litigation.

1
2

> **California Class** (represented by Jessica Bennett and Rhonda Estrella): All persons who purchased one or more Lenovo computer models, on which VisualDiscovery was installed, in California.

3
4

Dkt. No. 153.  The Court appointed Pritzker Levine, Girard Gibbs, and Cotchett, Pitre & McCarthy as Class Counsel.  *Id.*

5
6
7
8
9

In the class certification order, Judge Whyte accepted Plaintiffs' argument that California law applies to the claims of indirect purchasers nationally "because indirect purchasers are intended third-party beneficiaries of the Lenovo-Superfish Business Partnership Agreement, which includes a California choice-of-law provision."  Dkt. No. 153 at 38.  The Court further concluded that "differences in state law do not create a management obstacle for the class of indirect purchasers at this time."  *Id.*

10
11
12
13
14

Although Plaintiffs separately moved under New York law to certify a nationwide class of persons who purchased directly from Lenovo, the Court did not reach that class certification issue because it dismissed the New York claims on the pleadings.  Dkt. No. 153.  After Plaintiffs replead their consumer protection claim under New York law, the Court dismissed the claim with leave to amend.  Dkt. No. 210.

15

### 4.    Settlement with Lenovo

16
17
18
19
20
21
22
23
24

Plaintiffs and Lenovo participated in a series of settlement conferences before Magistrate Judge Jacqueline Scott Corley, with the last conference on March 28, 2018.  Joint Decl. ¶ 19.  Plaintiffs and Lenovo reached an agreement in principle in mid-April 2018, and memorialized the key terms of that agreement in a Term Sheet signed on April 27, 2018.  *Id.*  Thereafter, Plaintiffs and Lenovo engaged in arduous negotiations regarding the precise terms of their agreement and worked together, with Superfish where necessary, to finalize the remainder of the settlement documents, including the Lenovo Settlement Agreement, the proposed notices, the plan of allocation, the claim form, and proposed orders for preliminary and final approval.  *Id.* at ¶ 20.  The Lenovo Settlement Agreement was signed on July 11, 2018.

25

### 5.    Preliminary Approval of the Settlement

26
27
28

On July 11, 2018, Plaintiffs filed their motion for preliminary approval of the Settlement.  Joint Decl. ¶ 39.  The parties attended the preliminary approval hearing in September 2018.  *Id.*  On November 21, 2018 the Court granted Plaintiffs' motion for preliminary approval, provisionally

4

1  certified the nationwide settlement Class, and directed notice to be issued to Class members pursuant to
2  the Settlement and preliminary approval motion.  Dkt. No. 243.

3  **III.**    **ARGUMENT**

4      **A.**    **Legal Standard for Final Approval of Class Settlements**

5      A class action may not be dismissed, compromised, or settled without approval of the Court.
6  Fed. R. Civ. P. 23(e).  The Settlement approval procedure includes three steps:  (1) certification of a
7  settlement class and preliminary approval of the proposed settlement; (2) dissemination of notice to
8  class members; and (3) a formal fairness hearing, also known as a final approval hearing, at which class
9  members may be heard regarding the settlement, and at which counsel may present argument
10 concerning the fairness, adequacy, and reasonableness of the settlements.  *Vasquez v. Coast Valley
11 Roofing*, 670 F. Supp. 2d 1114, 1124–25 (E.D. Cal. 2009); *see also* Manual for Complex Litigation,
12 Fourth (Fed. Judicial Center 2004) § 23.63.  This procedure safeguards class members' due process
13 rights and enables the Court to fulfill its role as the guardian of class interests.  *See* William B.
14 Rubenstein, Albert Conte & Herbert Newberg, 4 Newberg on Class Actions §§ 13:39–40 (5th ed.
15 2014).

16     The Court completed the first two steps when it granted preliminary approval of the Settlement,
17 certified the Settlement Class, and approved Plaintiffs' notice program.  Dkt No. 243.  The notice
18 program was extensive, thorough, and utilized Class member information obtained from Lenovo, third-
19 party retailers, and robust publication notice.  Joint Decl. ¶¶ 41-44.  In particular, the notice program
20 entailed posting notice online at the class action website, directly emailing and mailing notice to
21 approximately 500,000 class members, and creating and publishing banner ads on websites advertising
22 notice of the Settlement.  *See* Joint Decl. ¶¶ 41-44; Weisbrot Decl. ¶¶ 5-19; Buckley Decl. ¶¶ 3-4.

23     The notice program was successful.  The Settlement Administrator has confirmed that notice
24 was successfully delivered to 192,947 people via direct mail, 440,275 people via e-mail, and recorded
25 7,192,779 views of the online "banner" ads.  Weisbrot Decl. ¶¶ 5-11, 13.  Additionally, Amazon which
26 agreed to provide notice via email to Class members who purchased their laptops through the Amazon
27 website, confirmed successful delivery to all 15,860 individuals.  Buckley Decl. ¶¶ 3-4 .  The current
28 claims rate also shows that the notice plan was effective, as 87,873 Class members filed claim forms as

5

of February 10, 2019.  Weisbrot Decl. ¶ 21.  Therefore the notice program fully complied with Rule 23 and due process.  *Id*. at ¶ 25.

### B.  The Settlement Is Fair, Reasonable, and Adequate and Should Be Approved

FRCP 23(e) requires the district court to determine whether a proposed settlement is "fair, reasonable, and adequate."  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 944.  To assess the fairness of a class settlement, the Ninth Circuit requires district courts to consider a number of factors, including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of future litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*Online DVD-Rental*, 779 F.3d at 944 (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

The law favors settlements of class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  If the proposed settlement is "the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with the presumption that the settlement is fair and reasonable."  *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010).  Nonetheless, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions and proof."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (internal quotation marks omitted).

### 1.  The Settlement Provides Considerable Relief to Class Members

As found by the Court, the recovery obtained for the Class was adequate for preliminary approval purposes.  *See* Dkt. No. 243 at 13 (evaluating the risks of continued litigation, the Court preliminary approved the Settlement assuming a 15% claims rate, each Class member's receipt of approximately $40 and the total settlement being roughly 24% of Plaintiffs' maximum recovery at

1    trial).  Because the estimated Settlement shares for Class members remains the same (if not higher)[5],

2    the Settlement provides considerable relief to Class members and should be finally approved.

3                    **2.      Class Member's Positive Reaction Favors Final Approval**

4              The Court should consider the reaction of class members to the proposed settlement when

5    determining the settlement's fairness.  *Churchill Vill.*, 361 F.3d at 575; *Hanlon*, 150 F.3d at 1026.  "It is

6    established that the absence of a large number of objections to a proposed class action settlement raises

7    a strong presumption that the terms of a proposed class action are favorable to the class members."

8    *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (collecting

9    cases); *see also In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 107 (D.R.I. 1996).  The Notice Date

10   was January 7, 2019 and the deadline to object to the Settlement is March 25, 2019.  To date, no Class

11   member has filed an objection, indicating that most Class members are reacting positively to the

12   Settlement.  Should any objections be lodged by March 25, Class Counsel will address the objections in

13   a reply brief.  And while the claims period remains open until March 25, 2019, the minimal number of

14   requests for exclusions is also an indicator that Class members approve of the Settlement.  To date, only

15   43 class members have requested exclusion, a tiny fraction of the more than 500,000 Class members

16   who received direct notice. *See* Wesibrot Decl. ¶ 22.

17             Finally, the number of claims not only supports the adequacy of the Court-approved notice

18   program, but it also illustrates Class members' support of the settlement.  As of the February 10, 2019,

19   87,873 claims have been submitted, including 86,922 short form claims and 951 long form claims.

20   Weisbrot Decl. ¶ 21.  Class members' level of participation and the fact they are utilizing both options

21   to make claims shows that they believe the settlement is valuable.  Class Counsel expect that more

22   claims will be filed before the March 25 deadline.  Thus, to date, the Class's reaction to the Settlement

23   has been overwhelmingly favorable and weighs in favor of final approval. Additionally, each Class

24   Representative has submitted a declaration expressing their support for the settlement. *See generally*

25   Bennett Decl.; Krause Decl.; Ravencamp Decl.; Whittle Decl.

26

27   [5] The exact distribution to each Class member will be presented on reply to this motion, as not all
claims have been received and not all long-form claims have been assessed.    If the claims rate remains

28   consistent with what it is now, Class members will receive more than $40 for each computer claimed.

**PLAINTIFFS' MOTION FOR FINAL**
**APPROVAL OF CLASS ACTION SETTLEMENTS**                                      **4:15-md-02624-HSG**

1

### 3.     The Settlement Eliminates Significant Risk to the Class

As detailed at the preliminary approval stage, the Settlement in this case allows for a cash fund of $8,300,000 and represents approximately 24% of the anticipated class-wide damages.  Joint Decl. ¶¶ 31-33.  After payment of settlement administration costs and any approved award of attorneys' fees, expenses, and/or service awards, all funds remaining in the Net Settlement Fund will be distributed to the Class.  With respect to individual recoveries, Class Counsel estimated at preliminary approval that participating class members would receive a $40 payment per computer.  Dkt. 231 at 5.  As of February 10, 2019, 87,873 claims have been filed. The claims period will remain open until March 25, and claims are subject to verification and audit by the Claims Administrator.  Using the currently available data, however, and assuming all claims are valid, a present distribution of the Settlement Fund would pay almost all claimants about $55 per computer.[6]  Such a payment would be substantial considering Plaintiff's expert estimated damages ranging from $16.67 to $100.02 per laptop, depending on how long it was affected by VisualDiscovery.  Joint Decl. ¶ 31; Dkt. 231 at 6-7.  In contrast to the immediate cash benefit, continued litigation, trial, and appeal would result in an uncertain outcome and further delay.

Proceeding in litigation against Superfish and Lenovo would have presented considerable litigation risk.  First, Superfish no longer exists.  Joint Decl. ¶ 8.  Had Plaintiffs not reached a settlement with it in 2016, there was a significant risk of Superfish declaring bankruptcy, which would have resulted in no class recovery from Superfish, no additional discovery from Superfish, and no ongoing cooperation from its executives and employees.  Particularly under these circumstances, the Superfish Settlement constitutes a favorable result.  *See, e.g.*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (defendant's precarious financial condition, resulting in bankruptcy, was primary factor demonstrating settlement fairness); *Wright v. Linkus Enterprises*, 259 F.R.D. 468, 476 (E.D. Cal. 2009).

---

[6] A small percentage of claimants have filed long form claims that may entitle those claimants, once their claims are verified and audited, to an even greater recovery under the Plan of Allocation.

**PLAINTIFFS' MOTION FOR FINAL**
**APPROVAL OF CLASS ACTION SETTLEMENTS**                    **4:15-md-02624-HSG**

Second, Lenovo has vigorously denied Plaintiffs' allegations from the outset of this case. Absent this resolution via settlement, Lenovo would have continued to aggressively defend this action, including through a renewed motion to dismiss, a decertification motion, and a motion for summary judgment.  *See* Dkt. No. 243 at 13 (Preliminary Approval Order noting the same risks).  Previously in this litigation, Lenovo has been steadfast in its denial that class members suffered any injury from VisualDiscovery being on their computers, and argued that any possible injury would be *de minimus* since the software was deactivated, and affected the laptops, at most, for only six months.  Although Plaintiffs dispute Lenovo's positions, Class members might recover nothing in further protracted litigation, whereas resolution of their claims through the Settlement, if approved, ensures a favorable recovery that would be paid out as early as May of this year.  Accordingly, the Settlement's considerable cash recovery eliminates risks of Class members receiving no relief, and thus, it should be finally approved.

### 4.    The Stage of the Proceedings and Extent of Discovery Supports Final Approval

Class settlements are more likely fair if negotiated and agreed to following extensive discovery. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009); *see also Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 TEH, 2008 WL 346417, at *9 (N.D. Cal. Feb. 7, 2008).  When parties have "a good grasp on the merits of [the] case before settlement talks beg[i]n," negotiations are more likely to achieve fair results.  *Rodriguez*, 563 F.3d at 967.

As recounted in the Motion for Preliminary Approval (Dkt. No. 230), the Motion for Attorneys' Fees, Expenses and Service Awards, and the Joint Declaration submitted herewith, Plaintiffs engaged in extensive factual and legal research to implement several amendments to the complaint and to oppose and survive several motions to dismiss.  Additionally, Plaintiffs received, processed, analyzed, and reviewed over 100,000 pages of documents produced by Lenovo and Superfish.  Plaintiffs also prepared for and deposed eight Lenovo employees, prepared for and defended all four class representative depositions, prepared for and conducted four interviews of senior executives at Superfish, and engaged three experts who each submitted multiple reports in connection with Plaintiffs' successful motion for class certification.

9

1   As the foregoing demonstrates, the status of the proceedings and the substantial discovery that

2   has taken place militate in favor of approving the Settlement.  The Settlement was achieved well into

3   discovery, and thus, Class Counsel is well-versed in the liability and damages evidence and the

4   attendant risks to the certified classes should litigation proceed.  Class Counsel's well-informed

5   approach and the stage of the litigation lead to reaching fair, adequate, and reasonable agreements with

6   Defendants.  *Rodriguez*, 563 F.3d at 967.

7        **5.      The Settlement Was Negotiated at Arm's-length and Is Based on the**
                   **Recommendations of Experienced Counsel**

8

9        When evaluating class action settlements, "the district court must reach a reasoned judgment

10   that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the

11   negotiating parties. . . ."  *City of Seattle*, 955 F.2d 1290 (internal quotation marks omitted).

12       As previously noted, this action has been vigorously litigated.  The parties have constantly

13   disputed pleadings, motions, and discovery.  That same zealous advocacy was applied in reaching the

14   Settlement.  Negotiations of the Settlement took place over many months (as to both Superfish and

15   Lenovo) and involved numerous exchanges of confidential information and settlement proposals and

16   sessions with both current and former judicial officers.  *See* Joint Decl. ¶¶ 6-8, 19-20.  The process

17   Plaintiffs and Defendants endured (in addition to engaging two separate neutrals to assist in that

18   process) in reaching the Settlement demonstrates that it was the product of arms'-length negotiations

19   and not collusion.  In sum, the Settlement was contested, fair, and conducted in good faith.

20       Counsel's judgment on the fairness of settlements is also entitled to "great weight."  *See Nat'l*

21   *Rural Telecomms.*, 221 F.R.D. at 528.  This Court has recognized Class Counsel's extensive experience

22   in handling complex class actions by appointing them as settlement class counsel, and their expertise is

23   also reflected in Judge Whyte's appointment of the firms as interim Class Counsel and then Class

24   Counsel.  *See* Dkt. Nos. 44, 153, and 243 at p. 10.  Class Counsel's extensive experience litigating large

25   consumer class actions shows that it has the relevant experience to fairly evaluate the Class' claims, the

26   defenses, and the fairness and adequacy of settlements.

27       In recommending this case for final approval, Class Counsel does so with full knowledge of the

28   strengths and weaknesses of the claims and defenses.  For instance, Plaintiffs largely overcame

successive motions to dismiss, and secured an order certifying the bulk of the Class's claims under California law.  As discussed above, before arriving at the Settlement, Class Counsel had conducted thorough factual and legal research, discovery, and expert analysis.  And although the Superfish Settlement occurred earlier in the litigation due to Superfish's deteriorating financial condition, Plaintiffs faced formidable opposition from Lenovo throughout the case.  All parties were represented by seasoned counsel who pursued their clients' interests.  While Plaintiffs believe that they have meritorious claims, Lenovo has all asserted that it has strong defenses that would serve to eliminate its liability or damage exposure.  Entering into Settlement then, as recommended by Class Counsel, eliminates the burden, expense, and risks of further litigation to all parties.

Because the Settlement is the product of arms'-length negotiations and was conducted by experienced counsel, who reached terms all sides find beneficial to their respective parties, the Court should find the proposed settlements to be fair, adequate, and reasonable.  *See Garner*, 2010 WL 1687832, at *13; *see also Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)); *Bellinghausen v. Tractor Supply Co.*, No. 13-cv-02377-JSC, 2014 WL 1289342, at *8 (N.D. Cal. Mar. 20, 2015) ("The trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties.").

### C.   The Court-Approved Notice Program Satisfies Due Process and Adequately Provided Notice to Class Members

Before final approval of a class action settlement, the Court must find that class members were notified in a reasonable manner. Fed. R. Civ. P. 23(e)(1).  When a settlement class is certified under Rule 23(b)(3), class members must receive "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(b)(3); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).  The notice program cannot "systematically leave any group without notice."  *Officers for Justice v. Civil Serv. Com'n of City and Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982).  Settlement notice must describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir.

11

2012).  The notice plan must ultimately comport with due process requirements. *Rodriguez*, 563 F.3d at 963.

Here, the court-approved notice plan implemented by Plaintiffs comports with due process and was the best practicable under the circumstances.  *See generally* Weisbrot Decl. and Dkt. No. 243 at pp. 13-14.

### 1.    The Court Approved Plaintiffs' Notice Plan

The notice program proposed by Plaintiffs in their motion for preliminary approval of the Settlement (Dkt. Nos. 230-232), and approved by the Court in the preliminary approval order (Dkt. No. 243) has been implemented by Angeion Group, the claims administrator.  As set forth in the accompanying Weisbrot Declaration, since the entry of the preliminary approval order, Angeion has (i) mailed 204,186 copies of the notice to potential class members, (ii) emailed 686,112 copies of the notice to potential class members, (iii) implemented an extensive media plan to publish notice of the Settlement on Facebook, Twitter, and other websites, and (iv) created and managed the settlement website, lenovoadwaresettlement.com.  *See* Weisbrot Decl. at ¶¶ 5-19.

The settlement website provides information to potential class members about the litigation and the settlement, contains links to important settlement documents, and allows class members to file a claim electronically.  To date, there have been almost 600,000 page views of the settlement website and more than 7.1 million views of the internet banner ads.  *See* Weisbrot Decl. at ¶¶ 12-13, 16-17.

In addition to the work done by Angeion, as part of the notice program approved by the Court, one retailer, Amazon.com, Inc., has provided direct email notice to 15,860 class members who purchased their Lenovo computers through the Amazon.com website.  *See* January 31, 2019 Declaration of Amazon.com, Inc. Custodian of Records (Brian Buckley), filed concurrently herewith.

### 2.    The Notice Program Satisfies Due Process

Due process requires the best notice that is practicable under the circumstances.  *See Shutts*, 472 U.S. at 812.  It does not require actual notice to each and every class member.  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) ("neither Rule 23 nor the Due Process Clause requires actual notice to each individual class member").  Courts recognize that "it might be *impossible* to

12

identify some class members for purposes of actual notice." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015) (emphasis in original).

Here, the notices include all the information required under Rule 23(c)(2)(B):  The nature of the action, the class definition, a summary of the class claims, that a class member may enter an appearance through an attorney, that the Court will grant timely exclusion requests, the time and manner for requesting exclusion, and the binding effect of final approval.  *See* Dkt. No. 232.   The notice further conveys all information necessary for class members to make informed decisions relating to the Settlement, and all information called for under the Northern District guidelines.  *Id.*

As the Court found in its assessment that Plaintiffs' notice plan was the best practicable notice (Dkt. No. 243), direct notice is not always required but was implemented here because the parties obtained contact information for Class members who purchased their computers directly from Lenovo or from other retailers like Best Buy or Amazon.  *See* Weisbrot Decl. ¶ 5; *see also Briseno v. ConAgra Foods, Inc*, 844 F.3d 1121, 1129 (9th Cir. 2017).  Class members with known contact information who did not purchase through Amazon received a postcard in the mail and/or an email notifying them of the Settlement.  Weisbrot Decl. ¶¶ 5-10.  The Settlement administrator successfully reached 192,947 people via mail and 440,275 via email.  Pursuant to the Court-approved process for the subgroup of Class members who purchased computers from Amazon, Amazon successfully delivered notice via email to 15,860 unique email addresses with none being returned as undeliverable.  Buckley Decl., ¶¶ 3-4.

The procedures implemented above satisfy due process.  *See, e.g.*, *Online DVD-Rental Antitrust Litig.*, 779 F.3d at 941, 946 (notice was first emailed to 35 million class members and then sent via U.S. mail to over 9 million class members whose email addresses generated bounce-back messages); *McCrary v. Elations Co.*, No. EDCV 13-0242 JGB (SPx), 2016 WL 769703, at *7 (C.D. Cal. Feb. 25, 2016) (notice was sent via U.S. mail and email); *In re Magsafe Apple Power Adapter Litig.*, No. 5:091-cv-01911-EJD, 2015 WL 428105, at *10 (N.D. Cal. Jan. 30, 2015) (emails, the primary notice vehicle, were sent to 5,523,878 class members).

Additionally, the publication element of the notice program was tailored to maximize reach to this Class.  Weisbrot Decl. ¶¶ 12-19.  Notice was not only posted not on the dedicated Settlement

13

1   website but also on websites that Lenovo laptop purchasers, in particular, were likely to visit.  *Id.*; *see*

2   *also Briseno*, 844 F.3d at 1129 ("[N]otice by publication . . . on a website . . . is sufficient to satisfy due

3   process.").

4         **D.**      **The Plan of Allocation is Fair, Reasonable and Adequate and Should Be Approved**

5   "Approval of a plan for the allocation of a class settlement fund is governed by the same legal

6   standards that are applicable to approval of the settlement; the distribution plan must be 'fair,

7   reasonable and adequate.'"  *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal.

8   2001) (internal citations omitted).  When allocating funds, "[i]t is reasonable to allocate the settlement

9   funds to class members based on the extent of their injuries or the strength of their claims on the

10   merits." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1045-46 (N.D. Cal. 2008) (internal

11   citations omitted) (approving securities class action settlement allocation on a "per-share basis"); *Four

12   in One Co. v. S.K. Foods, L.P.*, 2:08-CV-3017 KJM EFC, 2014 WL 4078232, at * 15 (E.D. Cal. Aug.

13   14, 2014) (approving "plan of allocation providing for a pro rata distribution of the net settlement fund

14   based on verified claimants' volume of qualifying purchases" as "fair, adequate, and reasonable").

15   The plan of allocation proposed in connection with the Settlement is the same as submitted at

16   preliminary approval.  Dkt. No. 231-2 at 48.  The Court provisionally found this Plan of Allocation fair,

17   reasonable and adequate.  *See* Dkt. No. 243 (Preliminary Approval Order).  The Settlement creates a

18   non-reversionary cash fund of $8,300,000.  After payment of notice and administration costs and any

19   approved award of attorneys' fees, costs, and/or service awards, all funds remaining will be distributed

20   to the Class.  First, each long form claim for out-of-pocket losses will be paid in full, subject to a $750

21   cap per laptop, and $300,000 of the net settlement fund is set aside to pay long form claims.  The short

22   form claims will then be paid, with any amount remaining in the net settlement fund distributed pro rata

23   to *all* eligible claimants (long form or short form) on a per-laptop basis.  The Settlement Administrator

24   will complete all necessary calculations under the Plan of Allocation and pay eligible claimants in a

25   single installment. No Class members will receive preferential treatment; the only distinguishing

26   feature of Class members' recovery is which type of claim they opted to submit.

27   At preliminary approval, Plaintiffs estimated that a 15% claims rate would yield recoveries

28   under the short form claim option that are approximately $40 per computer.  Joint Decl. ¶ 26.   An

14

approximation of $40 per computer is consistent with Plaintiffs' expert estimate of the average

damages per computer, as the expert calculated a range of $16.67 to $100.02 in possible recovery.

Joint Decl. ¶ 31.  Thus, the method of allocating the net settlement fund align with the value of

individual claims and with Plaintiffs' proffered bases for damages and is fair, reasonable, and adequate.

No Class member has objected to the Plan of Allocation, and Plaintiffs respectfully ask the Court to

finally approve it. In accordance with the Northern District's Class Settlement Guidelines, Plaintiffs

will submit a detailed accounting to the Court within 21 days after distribution.

## IV.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request the Court grant final approval of the

Settlement with Defendants Lenovo and Superfish, enter final judgment dismissing Plaintiffs' claims,

and approve Plaintiffs' plan of allocation.

Dated:  February 14, 2019                          Respectfully submitted,

**GIRARD SHARP LLP**

/s/ *Elizabeth A. Kramer*
Daniel C. Girard (SBN 114826)
Elizabeth A. Kramer (SBN 293129)
Andre M. Mura (SBN 298541)
601 California Street, Suite 1400
San Francisco, CA 94104
Tel.:  (415) 981-4800
dgirard@girardsharp.com
ekramer@girardsharp.com
amm@classlawgroup.com

**PRITZKER LEVINE LLP**

/s/ *Jonathan K. Levine*
Jonathan K. Levine (SBN 220289)
Elizabeth C. Pritzker (SBN 146267)
180 Grand Avenue, Suite 1390
Oakland, California 94612
Tel.: (415) 692-0772
jkl@pritkzkerlevine.com
ecp@pritzkerlevine.com

15

**PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENTS**                          **4:15-md-02624-HSG**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        **COTCHETT, PITRE & McCARTHY, LLP**

                                        */s/ Eric J. Buescher*
                                        Eric J. Buescher (SBN 271323)
                                        San Francisco Airport Office Center
                                        840 Malcolm Road, Suite 200
                                        Burlingame, CA 94010
                                        Tel.: (650) 697-6000
                                        ebuescher@cpmlegal.com

                                        *Class Counsel*


                          **ATTESTATION STATEMENT**

        I, Elizabeth A. Kramer, am the ECF User whose identification and password are being used to

file Plaintiffs' Motion for Final Approval of Class Action Settlement pursuant to Civil L.R. 5-1(i)(3).  I

attest under penalty of perjury that all counsel has concurred in this filing.


DATED:  February 14, 2019                 */s/ Elizabeth A. Kramer*

**PLAINTIFFS' MOTION FOR FINAL**
**APPROVAL OF CLASS ACTION SETTLEMENTS**                              **4:15-md-02624-HSG**