UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE LENOVO ADWARE LITIGATION<br><br>This Document Relates To:<br>ALL ACTIONS | Case No. 15-md-02624-HSG<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**<br><br>Re: Dkt. Nos. 248, 249 |

Pending before the Court are the unopposed motions for final approval of the class action settlements and for attorneys' fees, expenses, and service awards, filed by Plaintiffs Jessica Bennett, Richard Krause, Robert Ravencamp, and John Whittle. Dkt. Nos. 248, 249. The Court held a final fairness hearing on April 18, 2019. Dkt. No. 256. For the reasons set forth below, the Court **GRANTS** final approval. The Court also **GRANTS** Plaintiffs' motion for attorneys' fees, expenses, and services awards.

## I. BACKGROUND

### A. Factual Background

Plaintiffs bring this consumer class action against Defendants Lenovo (United States), Inc. ("Lenovo") and Superfish, Inc. ("Superfish"), asserting claims under federal, California, and New York law. *See* Dkt. No. 162 (Amended Consolidated Class Action Complaint ("ACCAC")). Plaintiffs allege that Superfish's VisualDiscovery software, which Lenovo had preinstalled on its laptops, created performance, privacy, and security issues. *Id.* Plaintiffs allege several causes of action against Superfish and Lenovo for violations of: (1) the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 *et seq.*; (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (3) California's Consumer Legal Remedies Act, §§ 1750 *et seq.*; (4) California's Computer Crime Law, Cal. Penal Code § 502; (5) California's Invasion of Privacy Act, Cal. Penal

Code §§ 630 *et seq.*; (6) trespass to chattels under California law; (7) New York's Deceptive Acts and Practices Statute, N.Y. Gen. Bus. Law § 349; and (8) trespass to chattels under New York law. *Id.* ¶¶ 131–152, 167–235. Plaintiffs also allege a violation of the Wiretap Act, 18 U.S.C. §§ 2510 *et seq.*, against Superfish. *Id.* ¶¶ 153–66.

On January 21, 2016, Defendant Lenovo filed a motion to dismiss Plaintiffs' claims for lack of standing and failure to state a claim. *See* Dkt. No. 98. On July 22, 2016, Plaintiffs filed a motion for class certification. *See* Dkt. No. 131. The Court granted Defendant's motion to dismiss in part on October 27, 2016, holding that Plaintiffs failed to state a claim for relief under New York's Deceptive Acts and Practices Statute.[1] *See* Dkt. No. 153 at 17–18. The Court also granted Plaintiffs' motion for class certification in part, certifying an indirect purchaser class and California class. *See* Dkt. No. 153 at 24–40. The "Indirect Purchaser Class" includes:

> All persons who purchased one or more Lenovo computer models, on which VisualDiscovery was installed, in the United States from someone other than Lenovo.

*See id.* at 40. And the "California Class" includes:

> All persons who purchased one or more Lenovo computer models, on which VisualDiscovery was installed in California.

*Id.* The Court denied Plaintiffs' motion to certify a direct purchaser class because the Court had held that "[P]laintiffs have not demonstrated that class certification is appropriate for any of their claims under New York or federal law." *Id* at 39. In response, Plaintiffs filed their ACCAC on December 7, 2016. *See* ACCAC. On January 17, 2017, Lenovo moved to dismiss only Plaintiffs' realleged claim under New York's Deceptive Acts and Practices Statute, N.Y. Gen. Bus. Law § 349. *See* Dkt. No. 175. The Court granted Lenovo's partial motion to dismiss on January 30, 2018. Dkt. No. 210.

Plaintiffs initially reached a settlement with Superfish and filed a motion for preliminary approval of class action settlement as to Superfish on December 9, 2016. *See* Dkt. No. 163. The parties agreed to hold the motion for preliminary approval of that partial settlement in abeyance

---

[1] This action was reassigned on November 2, 2017, from the Honorable Ronald M. Whyte to the Honorable Haywood S. Gilliam, Jr. *See* Dkt. No. 156.

until the Court ruled on further motions regarding class certification. *See* Dkt. No. 199; *see also* Dkt. No. 206 at 31–33. Plaintiffs withdrew their motion for preliminary approval of the Superfish settlement when the motion for preliminary approval covering settlements with both Superfish and Lenovo was filed on July 11, 2018. Dkt. Nos. 230, 235. The Court granted the motion for preliminary approval of the settlements on November 21, 2018. Dkt. No. 243.

### B. Settlement Agreement

#### i. Superfish Settlement

Following extensive formal discovery and with the assistance of a mediator, Plaintiffs and Superfish entered into a settlement agreement in October 2015. Dkt. No. 250 ¶ 6; Dkt. No. 250-1 ("Superfish SA"). Superfish has since been dissolved. Dkt. No. 248 at 2; Dkt. No. 250 ¶ 8. The key terms of the Superfish settlement are as follows:

Class Definition: The Settlement Class is defined as all persons who purchased a Lenovo computer in the United States on which VisualDiscovery was installed by Lenovo. Superfish SA ¶ 1.12.

Settlement Benefits: Superfish agreed to pay $1,000,000 to settle the claims against it. *Id.* ¶ 1.13. Superfish agreed to provide substantial cooperation to Plaintiffs, including producing additional documents and discovery relevant to the litigation, providing assistance to establish the authenticity and admissibility of documents, making knowledgeable persons then employed by Superfish available for interviews, responding to requests for assistance in understanding the facts at issue, producing representatives to testify at trial (in person, by deposition or affidavit), and assisting in seeking certification of the Settlement Class. *Id.* ¶¶ 2.5, 4.3.

The Settlement Fund will be used to: (i) pay all necessary expenses associated with the Escrow Account; (ii) pay all necessary expenses to administer the Settlement, including the cost of a settlement administrator and notice costs; (iii) pay any award to Class Counsel of attorneys' fees and reimbursement of litigation expenses; (iv) pay class members pursuant to a plan of allocation; (v) pay any cy pres recipients; and (vi) pay any taxes and tax expenses, which are treated as costs of administration of the Settlement Fund. Dkt. No. 163 at 8. Unless the Settlement does not become final, no portion of the Settlement Fund shall revert to Superfish. Superfish SA ¶ 6.4.

1     Release: Class members release any and all claims arising out of the installation and operation of Superfish VisualDiscovery software on certain laptop computers as alleged in the litigation. *Id*. ¶ 1.8.

    Class Notice, Opt-Out: Class notice will be provided in accordance with the Lenovo Settlement Agreement. *See* Dkt. No. 163 at 10–11 and n.4.

    Incentive Award, Attorneys' Fees and Costs: The Superfish Settlement Agreement does not limit the potential amount sought for an incentive award, or for attorneys' fees.

### ii. Lenovo Settlement

    Plaintiffs and Lenovo, also after extensive discovery and with the assistance of Magistrate Judge Jacqueline S. Corley, entered into a settlement agreement on April 27, 2018. Dkt. No. 250 ¶ 19; Dkt. No. 250-2 ("Lenovo SA"). The key terms of the Lenovo settlement are as follows:

    Class Definition: The Settlement Class is defined as:

    All Persons who purchased one or more of the following computers ("Class Computers"), not for resale, within the United States between September 1, 2014 and February 28, 2015:

- G Series: G410, G510, G710, G40-70, G50-70, G40-30, G50-30, G50-45
- U Series: U430P, U430Touch, U530Touch
- Y Series: Y40-70, Y50-70
- Z Series: Z50-75, Z40-70, Z50-70
- Flex Series: Flex2 14D, Flex2 15D, Flex2 14, Flex2 15, Flex2 15(BTM), Flex 10
- MIIX Series: MIIX2-10, MIIX2-11
- YOGA Series: YOGA2Pro-13, YOGA2-13, YOGA2-11BTM, YOGA2-11HSW

Lenovo SA ¶¶ 1.6, 1.7.

    Excluded from the Class are Defendants, the officers, directors, and affiliates of Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest. *Id.* ¶ 1.6

    Settlement Benefits: Lenovo will make a $7,300,000 non-reversionary payment that will be added to the $1,000,000 non-reversionary payment Superfish previously made. The two

4

payments will constitute the Settlement Fund from which any class member may make a claim. Lenovo SA ¶¶ 1.34, 1.35, 2.1; Superfish SA ¶¶ 1.13, 4.1.

Lenovo has separately entered into a consent decree with the Federal Trade Commission and 32 state attorneys general. Dkt. No. 250 ¶ 21. The consent decree forbids Lenovo from misrepresenting any features of software preloaded on laptops to inject advertising into browsing sessions or to transmit sensitive consumer information to third parties. *Id.* ¶ 22. If Lenovo preinstalls such software, it must obtain consumers' affirmative consent before the software runs on their laptops, and Lenovo also must implement a comprehensive security program for 20 years for most consumer software preloaded on its laptops. *Id.*

Release: All settlement class members will release:

> any and all claims, rights, causes of action, liabilities, actions, suits, damages, or demands of any kind whatsoever, known or unknown, matured or unmatured, at law or in equity, existing under federal or state law, that relate to the installation of VisualDiscovery on a Class Computer between September 1, 2014, and February 28, 2015 and that were or could have been alleged in the Litigation against Defendant, including Unknown Claims as defined in ¶ 1.39 herein. "Released Claims" does not include claims relating to the enforcement of the settlement.

Lenovo SA ¶ 1.30.

Incentive Award: Although the Lenovo Settlement Agreement does not include a limit on the incentive awards that the Named Plaintiffs may seek, the exemplar notice forms indicate that each of them will apply for an incentive award of $5,000. Dkt. No. 248-1, Ex. I at 6.

Attorneys' Fees and Costs: Neither settlement agreement includes a limit on attorneys' fees and costs. *See* Lenovo SA ¶¶ 6.1–6.7. One exemplar notice form indicates that attorneys' fees will not exceed 30% of the Settlement Fund, and Plaintiffs' counsel confirmed at the September 20, 2018 preliminary approval hearing that counsel will not seek attorneys' fees beyond 30% of the Settlement Fund. Dkt. No. 248-1, Ex. I at 6 ("Class Counsel's attorneys' fee request will not exceed 30% of the Settlement Fund, substantially less than the value of the time Class Counsel have devoted to this case.")

## II. ANALYSIS

### A. Final Settlement Approval

#### i. Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because no facts that would affect these requirements have changed since the Court preliminarily approved the class on November 21, 2018, this Order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval. *See* Dkt. No 243 at 6–10.

#### ii. The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("The district court's role in evaluating a proposed settlement must be tailored to fulfill the objectives outlined above. In other words, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . "). To assess whether a proposed settlement comports with Rule 23(e), the Court "may consider some or all" of the following factors: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor" is case specific. *Officers for Justice*, 688 F.2d at 625.

In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. As discussed below, the Court finds that the proposed settlements are fair, adequate, and reasonable, and that Class Members received adequate notice.

### a. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The Court finds that the notice and notice plan previously approved by the Court was implemented and complies with Rule 23(c)(2)(B). *See* Dkt. No. 243 at 5, 13–14. The Court ordered that the third-party settlement administrator, Angeion Group, LLC ("Angeion") send class notice via email and U.S. mail based on Class Member data lists Lenovo and third parties provided. *Id*. at 5. The settlement administrator was also ordered to implement a digital media campaign that was estimated to target approximately 3,410,000 Lenovo users. *Id*.

Angeion represents that class notice was provided as directed. Dkt. No. 248-1 ¶¶ 5–11. Prior to sending class notice, Angeion reviewed the Class Member data list and identified 204,186 records with mailing information. *Id*. ¶ 5. Angeion also verified the mailing addresses with the National Change of Address Database and performed an address verification search for any returned Notice Packets that did not have a forwarding address. *Id*. ¶¶ 7–8. As of March 25, 2019, a total of 25,101 Notice Packets were returned as undeliverable. Dkt. No. 253-1 ¶ 3. 432 were re-mailed to a forwarding address and 13,143 were re-mailed with updated addresses through Angeion's address verification search. *Id*. ¶¶ 4–5. It appears that notices were successfully

7

delivered to approximately 192,660 people via direct mail.[2] Angeion also identified 686,112 records with email addresses. Dkt. No. 241-1 ¶ 5. Although 245,837 of the email addresses were undeliverable, Angeion successfully sent Notices via email to 440,275 email address. Dkt. No. 248-1 ¶ 10. Amazon.com, Inc.'s declaration states that it sent email notices to 15,860 Amazon customers who made valid purchases of the Class Computers, and it received no undeliverable messages. Dkt. No. 248-2 ¶¶ 2–4. Finally, Angeion implemented the approved comprehensive media notice program, including running internet banner ad notices for four consecutive weeks, which resulted in 7,192,779 impressions served. Dkt. No. 248-1 ¶¶ 12–13. In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the Class Members.

### b. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

#### 1. Strength of Plaintiff's Case and Litigation Risk

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez*, 563 F.3d at 966. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4

---

[2] Plaintiffs' motion for final approval states that notices were successfully delivered to 192,947 people via direct mail. Dkt. No. 249 at 5. This appears to have been calculated based on data as of February 10, 2019 from the Declaration of Steven Weisbrot, Esq. (Angeion). *See* Dkt. No. 248-1 ¶¶ 5–8. The Court considered the updated data as of March 25, 2019 to calculate the final number of notices successfully delivered via direct mail. *See* Dkt. No. 253-1 ¶¶ 3–5. For purposes of determining the adequacy of the notice plan, the Court finds that any disparity is not material.

(N.D. Cal. June 27, 2014) (quotations omitted).

The Court finds that the amount offered in settlement is reasonable in light of the complexity and length of this litigation, and the substantial risk Plaintiffs would face in litigating the case given the nature of the asserted claims. *See* Dkt. No. 248 at 9; *see also* Dkt. No. 230 at 13. Given Lenovo's willingness to vigorously defend against this action, Plaintiffs would not be guaranteed a favorable result. Dkt. No. 248 at 9 ("Lenovo would have continued to aggressively defend this action, including through a renewed motion to dismiss, a decertification motion, and a motion for summary judgment"). Further, Superfish has since been dissolved, and had Plaintiffs not reached a settlement with Superfish in 2016, there was a significant risk of Superfish declaring bankruptcy and Plaintiffs receiving nothing from Superfish. *Id*. at 8. In reaching a settlement, Plaintiffs have ensured a favorable recovery for the class. *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement). Accordingly, these factors weigh in favor of approving the settlement. *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

### 2. Risk of Maintaining Class Action Status

In considering this factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed. Certifying a class encompassing approximately 797,000 purchasers of the Lenovo computer models at issue presents complex issues that could undermine certification. *See* Dkt. No. 230 at 8. Accordingly, this factor also weighs in favor of settlement.

### 3. Settlement Amount

The amount offered in the settlement is another factor that weighs in favor of approval. Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the $8,300,000 settlement amount, which represents 24% of Plaintiffs' estimated recoverable damages, falls well "within the range of reasonableness" in light of the risks and costs of litigation. *See* Dkt. No. 250 ¶¶ 24, 31–33; *see, e.g.*, *Hendricks v. Starkist Co.*, No. 13-CV-00729-HSG, 2016 WL 5462423, at *12 (N.D. Cal. Sept. 29, 2016), *aff'd sub nom*. *Hendricks v. Ference*, 754 F. App'x 510 (9th Cir. 2018); *Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2016 WL 1070523 *4 (N.D. Cal. March 18, 2016) (citing cases); *Stovall-Gusman v.*

*Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval of a net settlement amount representing 7.3% of the plaintiffs' potential recovery at trial). The parties have estimated that the recovery of each individual Class Member will be a minimum of $45 (for those filing "short form claims"). Dkt. No. 253-1 at 4. Class Members who have a documented proof of loss (presented in "long form claims") will recover all of their out-of-pocket expenses, up to $750. *Id.* This factor therefore weighs in favor of approval.

#### 4. Extent of Discovery Completed and Stage of Proceedings

The Court finds that Class Counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Here, Plaintiffs were able to reach this settlement only after Plaintiffs conducted extensive discovery, with the assistance of Superfish, including reviewing over 100,000 pages of documents and deposing eight Lenovo employees. Dkt. No. 248 at 9. Both sides fully briefed and argued Defendants' motion to dismiss and Plaintiffs' motion for class certification. Dkt. Nos. 98, 106, 108, 131, 136, 142. The Court finds that the parties have received, examined, and analyzed information, documents, and materials that sufficiently enabled them to assess the likelihood of success on the merits. This factor weighs in favor of approval.

#### 5. Experience and Views of Counsel

The Court next considers the experience and views of counsel, and finds that this factor also weighs in favor of approval. "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (quotations omitted). Accordingly, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). The Court has previously evaluated Class Counsel's qualifications and experience and concluded that Class Counsel is qualified to represent the Class Members' interests in this action. *See* Dkt. No. 44 at 3–4. As discussed, Class Counsel initiated settlement discussions only after assessing the risks of continuing the litigation. The Court recognizes, however, that courts have diverged on the weight to assign counsel's opinions. *Compare Carter v. Anderson Merch.*, LP, 2010 WL 1946784, at *8

10

(C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements. . . ."). This factor's impact is therefore modest, but favors approval.

### 6. Reaction of Class Members

The reaction of the Class Members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

Class notice, which was served on each Class Member in accordance with the methods approved by the Court, advised the class of the requirements to object or opt out of the settlement. The deadline to submit a claim was on March 25, 2019. Dkt. No. 253-1 ¶ 7; Dkt. No. 248-1, Ex. B. Angeion received 130,058 claim form submissions, 1 objection, and 77 opt-outs. *See* Dkt. No. 253-1 ¶¶ 7, 14; Dkt. No. 254. The one objection received took issue with the settlement amount ("I feel a more just settlement would be [the] full replacement cost of the computer"), but did not articulate any other reason why the settlement should be denied. Dkt. No. 254. The individual objecting did not appear at the hearing. *See* Dkt. No. 256. For the reasons discussed above, the Court finds that the objection does not affect its conclusion that the settlement is fair and reasonable. The Court finds that the small number of objections and opt-outs in comparison to the large size of the class indicate overwhelming support among the Class Members and weigh in favor of approval. *See*, *e.g.*, *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members objected); *Rodriguez v. West Publ. Corp.*, Case No. CV05–3222 R, 2007 WL 2827379, at *10 (C.D. Cal. Sept. 10, 2007) (finding favorable class reaction where 54 of 376,301 class members objected).

\* \* \*

After considering and weighing the above factors, the Court finds that the settlement agreements are fair, adequate, and reasonable, and that the settlement Class Members received

11

1  adequate notice. Accordingly, Plaintiffs' motion for final approval of the class action settlements
2  is **GRANTED**.

### B. Attorneys' Fees and Costs, Settlement Administrator Costs, and Incentive Award

In its unopposed motion, Class Counsel asks the Court to approve an award of $2,490,000 in attorneys' fees and $340,798.70 in costs. Dkt. No. 249. Class Counsel also seeks $5,000 service awards for each of the four Named Plaintiffs Dkt. No. 249 at 1.

#### i. Attorneys' Fees

##### a. Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Court has discretion in a common fund case to choose either (1) the lodestar method or (2) the percentage-of-the-fund when calculating reasonable attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Under the percentage-of-recovery method, twenty-five percent of a common fund is the benchmark for attorneys' fees awards. *See*, *e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941(*citing Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and
12

reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quotations omitted). Generally, "the relevant community is the forum in which the district court sits." *Id*. (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Typically, "affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "In addition to affidavits from the fee applicant, other evidence of prevailing market rates may include affidavits from other area attorneys or examples of rates awarded to counsel in previous cases." *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 687 (N.D. Cal. 2016).

Although "the choice between lodestar and percentage calculation depends on the circumstances, [ ] either method may [ ] have its place in determining what would be reasonable compensation for creating a common fund." *Six Mexican Workers*, 904 F.2d at 1311 (quotations omitted). To guard against an unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any calculations done in one method against those of another method. *Vizcaino*, 290 F.3d at 1050–51.

### b. Discussion

Class Counsel here seeks $2,490,000 in fees, or 30% of the settlement amount. *See* Dkt. No. 249 at 1. That is higher than the benchmark for a reasonable fee award under the percentage-of-recovery method, but still within the "usual range" of 20–30%. *See Vizcaino*, 290 F.3d at 1047. The Court considers the reasonableness of the percentage requested in light of the factors endorsed by the Ninth Circuit, with the 25% award as a starting point. The Ninth Circuit has identified several factors a court should consider to determine whether to adjust a fee award from the benchmark: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. See *Vizcaino*, 290 F.3d at 1048–50.

Although this request is 5% higher than the benchmark, the Court finds the requested award appropriate given the circumstances of this multi-district litigation ("MDL") proceeding. Having reviewed the time Class Counsel spent litigating this action, the Court notes that counsel

13

worked efficiently and diligently to reach this result. *See* Dkt. No. 248 8–13; Dkt. No. 250-3. This MDL has been actively litigated for the past four years, and required complex legal and factual research and analysis by Class Counsel. *See* Dkt. No. 249 at 9–12. Class Counsel obtained significant results for the class: under the settlement agreement, individual Class Members will receive at least approximately $45 for short form claims and up to $750 for long form claims. Dkt. No. 253-1 at 4. Defense counsel were highly skilled law firms with substantial resources and vigorously litigated the case on behalf of Defendants, denying liability and challenging standing, the sufficiency of the complaint to state a claim for relief, and the appropriateness of class certification. Dkt. No. 249 at 9–13. Class Counsel, therefore, assumed substantial risk in litigating this action on a contingency fee basis.

Further, in appointing lead counsel, the Court selected Class Counsel from a group of eight highly qualified law firms, based in part on their presence in this district, but also because of the "extensive support garnered by [ ] the other plaintiffs and attorneys involved in this case." Dkt. No. 44 at 3. This reflected a "broad, nationwide level of support" and plaintiffs' belief that Class Counsel would advocate in their best interests. *Id*. at 3–4. Further, no Class Member has objected to the Class Counsel's requested fee award. Dkt. No. 253 at 3; *see* Dkt. No. 254 (objection only to settlement amount). The Court finds that the percentage requested is consistent with other awards in this district in comparable cases. *See Hendricks*, 2016 WL 5462423, at *12 (finding 30% upward departure appropriate given the "favorable settlement, the substantial risks of litigation, and the financial burden assumed."); *Valentine v. NebuAd Inc.*, No. C 08-05113 TEH (LB), 2011 WL 13244509, at *2 (N.D. Cal. Nov. 21, 2011) (report and recommendation finding 30% attorneys' fees was warranted in a privacy and consumer data case).

The fee amount requested is significantly less than Class Counsel's fees would be if calculated using the lodestar method. In calculating its lodestar, Class Counsel contends that it expended a combined total of 8,446.1 hours. Dkt. No. 249 at 9. With respect to hourly rates, the rates requested are between $150 and $225 per hour for paralegals and $365 to $950 per hour for

attorneys. Dkt. No. 250-3. According to Class Counsel, this yields a lodestar of $4,860,099.[3] Dkt. No. 249 at 16. Class Counsel thus is seeking fees approximately 51% lower than their lodestar. *Id*. The Court finds that the billing rates used by Class Counsel to calculate the lodestar are reasonable and in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates, and $245 to $350 for paralegals were reasonable); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals reasonable "given the complexities of this case and the extraordinary result achieved for the Class.")

The Court finds that Class Counsel's requested fees are reasonable in light of the results achieved for the class, the work performed, and the complexity of this MDL, and finds that the requested award is appropriate. The Court accordingly **GRANTS** Class Counsel's motion for attorneys' fees in the amount of $2,490,000.

### ii. Attorneys' Costs

Class Counsel seeks reimbursement of $340,798.70 in out-of-pocket costs, with $293,299.49 for Class Counsel and $47,499.21 for other plaintiffs' law firms. *See* Dkt. No. 249 at 17. Class Counsel is entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted).

Plaintiffs have submitted exhibits to their joint declaration summarizing the costs and expenses incurred. Dkt. No. 250-4. These expenses include professional service fees (experts, investigators, accountants), travel fees, and discovery-related fees. Dkt. No. 250-4. Given the

---

[3] Per Class Counsel, this lodestar is not based on any of the hours expended by Class Counsel prior to their appointment as lead counsel and does not include work performed by other plaintiffs' counsel that assisted in this litigation. Dkt. No. 249 at 16 n.5. Class Counsel contends that the lodestar and negative multiplier would be even higher if work performed by other plaintiffs' counsel, approximately $505,000, was factored into the calculation. *Id*. Class Counsel represents that it intends to compensate the other plaintiffs' law firms from any attorneys' fees awarded. *Id*.

15

length and complexity of the case, the Court is satisfied that these costs were reasonably incurred and **GRANTS** the motion for costs in the amount of $340,798.70.

### iii. Incentive Award

Class Counsel requests a service award of $5,000 for each Named Plaintiff. "[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977; *Rodriguez*, 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases."). They are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quotations omitted). This is particularly true where "the proposed service fees greatly exceed the payments to absent class members." *Id.* The district court must evaluate an incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Id.* at 977.

The Court finds that a $5,000 service award is reasonable to compensate Plaintiffs given their contributions to this case. Plaintiffs were closely involved in the case: they actively monitored the litigation, communicated frequently with Class Counsel, searched for and produced responsive documents, worked with Class Counsel to respond to interrogatories, prepared for and attended depositions, reviewed documents, and participated in the settlement process. Dkt. No. 250-1 ¶¶ 62–65. Moreover, a $5,000 incentive award is not unduly disproportionate to Class Members' anticipated recovery. Based on the facts presented, including the named Plaintiffs' substantial contributions to the class, Class Counsel's request for an incentive award is **GRANTED** in the amount of $5,000 for each of the Named Plaintiffs.

## III. CONCLUSION

For the foregoing reasons it is hereby ordered that:

1. Plaintiffs' Motion for Final Approval of Class Action Settlements is hereby **GRANTED**.

2. Plaintiffs' Motion for Class Counsel's Attorneys' Fees, Expenses, and Service Awards is hereby **GRANTED**.

3. The Court approves the settlement amount of $8,300,000, including payments of attorneys' fees in the amount of $2,490,000; costs in the amount of $340,798.70; and an incentive fee for the four Named Plaintiffs in the amount of $5,000 each, for a total of $20,000.

The parties and settlement administrator are directed to implement this Final Order and the settlement agreement in accordance with the terms of the settlement agreement. The parties are further directed to file a stipulated final judgment within 21 days from the date of this Order.

**IT IS SO ORDERED.**

Dated: 4/24/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge